Teri T. Pham (SBN 193383)
ENENSTEIN PHAM GLASS & RABBAT LLP
3200 Bristol Street, Suite 500
Costa Mesa, CA 92626
Phone: (714)-292-0262
Email: tpham@epgrlawyers.com

Jesse D. Heibel, Esq.(NM161922) *(pro hac vice* pending)
BARNHOUSE KEEGAN SOLIMON & WEST LLP
7424 4th Street NW
Los Ranchos de Albuquerque, NM  87107
Phone: (505) 842-6123
Email: jheibel@indiancountrylaw.com

*Counsel for Plaintiff Twenty-Nine Palms Band of Mission Indians*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| TWENTY-NINE PALMS BAND OF MISSION INDIANS, a Federally Recognized Indian Tribe, dba TWENTY-NINE PALMS DISTRIBUTION,<br><br>Plaintiff,<br><br>v.<br><br>MERRICK GARLAND, Attorney General of the United States, in his official capacity; UNITED STATES DEPARTMENT OF JUSTICE; STEVEN DETTELBACH, Director, U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives, in his official capacity; UNITED STATES BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,<br><br>Defendants. | Case No.<br><br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff Twenty-Nine Palms Band of Mission Indians by and through its counsel, and for its claims against Defendants, states and alleges as follows:

## PARTIES

1.     The Twenty-Nine Palms Band of Mission Indians ("Twenty-Nine Palms" or "Tribe") is a federally recognized Indian Tribe.   Indian Entities Recognized by and Eligible to Receive Services From the United States Bureau of Indian Affairs, 89 Fed. Reg. 944, 946 (Jan. 8, 2024).

2.     Defendant Merrick Garland is the Attorney General of the United States ("Attorney General"), with offices located at U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530.   He is sued in his official capacity.

3.     Defendant United States Department of Justice ("DOJ") is an executive agency of the United States, with offices located at 950 Pennsylvania Avenue, NW, Washington, DC 20530.

4.     Defendant Steven Dettelbach is the Director of the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives, a bureau within the U.S. Department of Justice, with offices located at 99 New York Avenue, NE, Washington, DC 20226. He is sued in his official capacity.

5.     Defendant United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF" of the "Agency") is a bureau within the U.S. Department of Justice, with offices located at 99 New York Avenue, NE, Washington, DC 20226.

## JURISDICTION AND VENUE

6.     This action arises under the Administrative Procedures Act, 5 U.S.C. §§ 701-06, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1337, and 1361.

7.     Venue is proper under 28 U.S.C. § 1391(e)(1)(A) and (B) because Twenty-Nine Palms resides in this district and a substantial part of the events or

omissions giving rise to the claims occurred in this district.

**STATEMENT OF FACTS**

**I.    THE PACT ACT**

8.    On March 31, 2010, the Prevent All Cigarette Trafficking Act (the "PACT Act"), Pub. L. No. 111-154, 124 Stat. 1088, was signed into law and by its terms became effective on June 29, 2010.  Pub. L. No. 111-154, § 6(a), 124 Stat. 1110, 15 U.S.C. § 375 note.

9.    ATF is the federal agency within DOJ charged with the authority and responsibility of administering the PACT Act. *See*, e.g., 15 U.S.C. § 378(b); 28 C.F.R. §§ 0.130.

10.    The stated purpose of the PACT Act was to address remote or delivery sales of cigarettes and smokeless tobacco and "to help States enforce their laws" in the face of increased online sales of tobacco products.  Pub. L. No. 11-154, §8, 124 Stat. 1109.

**A. Reporting Requirements**

11.    One of the key provisions in the PACT Act requires anyone who "sells, transfers, or ships for profit cigarettes in interstate commerce" to file monthly memoranda or invoices with the state tax administrator and chief law enforcement officers of the state, local government, and/or Indian tribe where any shipments of cigarettes are made.  15 U.S.C. § 376(a); *see id.* § 376(a)(2)-(3).

12.    15 U.S.C. § 376(a)(2) requires each memorandum or invoice to be organized by city or town and by zip code and to include:

- The name and address of the recipient of the cigarettes;
- The brand and quantity of the cigarettes; and
- The name, address, and phone number of the person delivering the shipment to the recipient.

13.    The information contained in the reports to state tobacco tax administrators and chief law enforcement officers are to be used "solely for the

purposes of the enforcement this [Act] and the collection of any taxes owed on related sales of cigarettes and smokeless tobacco." 15 U.S.C. § 376(c).

**B. Delivery Sales / Delivery Sellers**

14.     The PACT Act defines a "delivery seller" as "a person who makes a "delivery sale," 15 U.S.C. § 375(6), which is, in turn, defined as any sale to a "consumer," if:

> (A) the consumer submits the order for the sale by means of a telephone or other method of voice transmission, the mails, the Internet or other online service, or the seller is otherwise not in the physical presence of the buyer when the request for purchase or order is made; or
>
> (B) the cigarettes or smokeless tobacco are delivered to the buyer by common carrier, private delivery service, or other method of remote delivery, or the seller is not in the physical presence of the buyer when the buyer obtains possession of the cigarettes or smokeless tobacco.

15 U.S.C. § 375(5).

15.     The PACT Act's definition of "consumer" expressly excludes "any person lawfully operating as a manufacturer, distributor, wholesaler, or retailer of cigarettes or smokeless tobacco." 15 U.S.C. § 375(4)(B).

16.     The PACT Act regulates delivery sales by requiring, in part, that all "delivery sellers" comply with "all State, local, tribal, and other laws" applicable to sales of tobacco products, including "excise taxes," "licensing requirements," "tax-stamping requirements," "restrictions on sales to minors," and any applicable "other payment obligations or legal requirements." 15 U.S.C. § 376a(a)(3).

17.     The PACT Act also requires all delivery sellers comply with any state, local, or tribal laws establishing a pre-sale collection and delivery of a tax if required by the state, local, or tribal government "in which the cigarettes or smokeless tobacco are to be delivered." 15 U.S.C. § 376a(d)(1)(A)-(B); *see id.* § 376a(a)(4).

//

### C. The Non-Compliant List

18.     The PACT Act mandates that the Attorney General create a list of delivery sellers who either fail to register under Section 376(a) of the Act, or "are otherwise not in compliance with" the Act (the "Non-Compliant List").  15 U.S.C. § 376a(e)(1).  The Attorney General must distribute the Non-Compliant List to every state's attorney general, common carriers, and other persons that deliver small packages to consumers in interstate commerce, and any other person the Attorney General deems can "promote the effective enforcement" of the Act.  15 U.S.C. § 376a(e)(1)(A)(i).

19.     Because a delivery seller's compliance with the Act, including but not limited to Section 376a(a), involves interpretation and application of state, local, and/or tribal law, Section 376a(e)(6)(A) authorizes state, local, and Indian tribal governments to add delivery sellers who do not comply with their applicable laws to the Non-Compliant List.

20.     15 U.S.C. § 376a(e)(6)(A)(i) requires states, local governments, and Indian tribes to nominate to the Attorney General any delivery seller that either "has failed to register with or make reports to the respective tax administrator as required by [the Act]," or "has been found in a legal proceeding to have otherwise failed to comply with [the Act]."

21.     On information and belief, until this case, the Attorney General has never placed a delivery seller on the Non-Compliant List for violations of 15 U.S.C. § 376a(a) without a nomination request from a state, local government, or Indian tribe under 15 U.S.C. § 376a(e)(6)(A)(i).

22.     The Act also explicitly authorizes a state, local government, or Indian tribe that assesses a tax on tobacco products sold in their jurisdiction to bring an action in United States district court for violations of the Act.  15 U.S.C. § 378(c)(1)(A).

23.     The Act charges the United States Attorney General with administration

and enforcement and allows the United States Attorney General or a United States' Attorney to bring enforcement actions for violations of the Act upon the recommendation of a state, local government, or Indian tribe and evidence of a violation by a person not subject to that government's actions. 15 U.S.C. § 378(b), (c)(2).

24.    All persons who receive the Non-Compliant List or deliver cigarettes to consumers are prohibited under the PACT Act from "knowingly complet[ing], causing to be completed, or complet[ing]" any part of a delivery of cigarettes for any person appearing on the list, unless "the delivery is made to a person lawfully engaged in the business of manufacturing, distributing, or selling cigarettes …"15 U.S.C. § 376a(e)(2)(A).

25.    In preparing or updating the Non-Compliant List, the Attorney General is required to "use reasonable procedures to ensure maximum possible accuracy and completeness of the records and information relied on for the purpose of determining that a delivery seller is not in compliance." 15 U.S.C. § 376a(e)(1)(E)(i).

26.    The Attorney General is required to make a "reasonable attempt to send notice to the delivery seller … that the delivery seller is being placed on the [L]ist" "not later than 14 days before including a delivery seller on the [L]ist. 15 U.S.C. § 376a(e)(1)(E)(i), (ii). Such notice must also "cite … the specific reasons for which the delivery seller is being placed on the list." *Id.* § 376(a)(e)(1)(E)(ii).

27.    The PACT Act requires the Attorney General to "provide an opportunity to the delivery seller to challenge  placement on the [L]ist," 15 U.S.C. § 376a(e)(1)(E)(iii), and to investigate each delivery seller's challenge by "contacting the relevant Federal, State, tribal and local law enforcement officials" and providing "the specific findings and results of the investigation to the delivery seller not later than 30 days after the date on which the challenge was made." 15 U.S.C. § 376a(e)(1)(E)(iv).

28.    If during such investigation, the Attorney General determines that the

basis for including the delivery seller on the Non-Compliant List is inaccurate, based on incomplete information, or cannot be verified, then the PACT Act requires the Attorney General to "promptly remove the delivery seller from the [L]ist" and notify the appropriate government authorities.  15 U.S.C. § 376a(e)(1)(E)(v).

**D. Tribal Protections**

29.    The PACT Act expressly leaves unchanged existing federal law controlling sovereign and regulatory relations between tribal, state, and local governments.

30.    Section 5(a) of the PACT Act, titled "EXCLUSIONS REGARDING INDIAN TRIBES AND TRIBAL MATTERS," establishes,

> Nothing in this Act … shall be construed to amend, modify, or otherwise affect—
>
> (3) any limitations under Federal or State law, including Federal common law and treaties, on State, local, and tribal tax and regulatory authority with respect to the sale, use, or distribution of cigarettes and smokeless tobacco by or to Indian tribes, tribal members, tribal enterprises, or in Indian country;
>
> (4) Federal law, including Federal common law and treaties, regarding State jurisdiction, or lack thereof, over any tribe, tribal members, tribal enterprises, tribal reservations, or other lands held by the United States in trust for one or more Indian tribes.

Pub. L. No. 111-154, § 5(a), 124 Stat. 1110; *see also* 15 U.S.C. § 375 note.

31.    Section 5(e) of the PACT Act provides that "[a]ny ambiguity between the language of this section or its application and any other provision of this Act shall be resolved in favor of this section [i.e., Section 5]."  Pub. L. No.111-154, § 5(e), 124 Stat. 1110; *see also* 15 U.S.C. § 375 note.

//

//

Complaint for Declaratory and Injunctive Relief

## II.    TWENTY-NINE PALMS' TOBACCO OPERATIONS

32.    As part of its endeavors to diversify its economic development to support the Tribe's governmental functions, grow inter-tribal commerce, and provide for its current and future members, Twenty-Nine Palms engages in the wholesaling of Native manufactured tobacco products.

33.    Twenty-Nine Palms exclusively purchases tobacco products manufactured by Grand River Enterprises Six Nations Ltd. ("Grand River"), an indigenous-owned Canadian tobacco product manufacturing business headquartered on the Six Nations of the Grand River Territory in Ontario, Canada.

34.    Twenty-Nine Palms sells Grand River tobacco products exclusively to entities owned and operated by federally recognized Indian tribes located in Indian country within the exterior boundaries of the State of California, including tribal gaming facilities ("Native Nation Customers").

35.    In November of 2018, Grand River and the State of California entered into a settlement agreement to resolve disputes regarding the applicability of California's Reserve Fund Statute (Cal. Health & Safety Code §§ 104555-104558), Escrow Release Statute (Cal. Health & Safety Code § 104557.1), and Complementary Statute (Cal. Rev. & Tax. Code § 30165.1).[1]

36.    Under the settlement agreement, Grand River pays escrow deposits on all its tobacco products sold in the State of California in satisfaction of the Reserve Fund and Escrow Release Statutes and Grand River products are listed on the California Tobacco Directory as developed and published by the California Attorney

---

[1] Settlement Agreement Between the People of the State of California and Grant River Enterprises Six Nations, Ltd., *People v. Grant River Enters. Six Nations Ltd.*, No. 34-2017-00215131 (Cal. Super. Ct. Nov. 27, 2018), https://oag.ca.gov/sites/all/files/agweb/pdfs/tobacco/settlement-agreement-ca-gre.pdf.

General pursuant to Section 30165.1(c) of the Complementary Statute.[2]

37.    Twenty-Nine Palms purchases Grand River-manufactured tobacco products exclusively from Shinnecock Sovereign Distribution ("SSD"), an entity owned and operated by the Shinnecock Indian Nation, a federally recognized Indian tribe.

38.    SSD is in compliance with 15 U.S.C. § 376 as to its sales to Twenty-Nine Palms. It submits monthly reports to the State of California, which provide the State an itemized list of tobacco products purchased by Twenty-Nine Palms.  The list includes the brand and style names, the date on which Twenty-Nine Palms purchased tobacco products, and the method by which the tobacco products were transported to Twenty-Nine Palms.

39.     Twenty-Nine Palms is in compliance with 15 U.S.C. § 376 as to its sales to Native Nation Customers because it submits monthly reports to the State of California, which provide the State an itemized list of tobacco products purchased by its customers.  The list includes the brand and style names, the name and address of purchasing customers, the date on which the customers purchased tobacco products, and the method by which the products were transported by the customer.

40.    The State of California uses the information in the reports submitted under Section 376 by SSD and Twenty-Nine Palms to enforce the PACT Act and collect applicable taxes.  *See* 15 U.S.C. § 376(c).

41.    The Grand River-manufactured tobacco products purchased and received by Twenty-Nine Palms do not bear any California tax stamps.

42.    Twenty-Nine Palms' receipt and possession of tobacco products that do not bear a California tax stamp do not violate California law, which the California Department of Justice ("California DOJ") has confirmed.

---

[2] Off. of the Att'y Gen., Dep't of Just., State of Cal., *California Tobacco Directory* (last visited Feb. 8, 2024), https://oag.ca.gov/tobacco/directory.

43.     Immediately upon receipt, Twenty-Nine Palms applies serialized stamps to each pack of cigarettes.  The stamps account for any applicable tax assessed by a tribal jurisdiction in which a Native Nation Customer is located and allow for track and trace functionality through a scannable quick response ("QR") code.  The QR code contains information about the product, including the unique Universal Product Code, which is also listed on the monthly PACT Act reports filed by SSD and Twenty-Nine Palms pursuant to Section 376.

44.     Title to and risk of loss for all tobacco products sold by Twenty-Nine Palms transfer to buyers on the Twenty-Nine Palms Reservation, either upon the Native Nation Customers' pickup of the products or upon placement of the products into the possession of a common carrier.

45.     All sales of tobacco products by Twenty-Nine Palms are deemed placed and accepted on the Twenty-Nine Palms Reservation.

46.     As a condition of sale, all Native Nation Customers who purchase tobacco products from Twenty-Nine Palms must confirm that they are authorized to purchase and receive tobacco products in the jurisdiction in which they are located and warrant that they are in compliance with all applicable laws.

### III.     CALIFORNIA'S PACT ACT NOMINATION, WITHDRAWAL, AND GOVERNMENT-TO-GOVERNMENT ENGAGEMENT WITH TWENTY-NINE PALMS

47.     On July 28, 2022, California DOJ sent correspondence to ATF ("2022 Nomination Letter") requesting that ATF place Twenty-Nine Palms on the PACT Act Non-Compliant List for allegedly violating 15 U.S.C. § 376a(e)(6)(A)(i)(II) by failing to register and report its sales activities to its Native Nation Customers. A true and correct copy of the DOJ's July 28, 2022 correspondence is attached hereto as **Exhibit A.**

48.     On August 15, 2022, ATF notified Twenty-Nine Palms it was considering placing the Tribe on the PACT Act Non-Compliant List based on

California DOJ's nomination, stating that based on information provided to it by California DOJ, Twenty-Nine Palms was "delivering tobacco to non-tribal members on a reservation elsewhere in California without registering[…]or filing PACT Act reports with the State of California[]" and thus violating 15 U.S.C. § 376(a)(1) and (2). A true and correct copy of ATF's August 15, 2022 notification is attached hereto as **Exhibit B.**

49. In response, Twenty-Nine Palms notified ATF that it would engage in government-to-government consultation with California DOJ to determine whether the parties could amicably resolve the issues raised in the 2022 Nomination Letter without the involvement of ATF. A true and correct copy of Twenty-Nine Palms' notification is attached hereto as **Exhibit C.**

50. As a result of those efforts, Twenty-Nine Palms and California DOJ agreed that Twenty-Nine Palms would, under protest, register and file PACT Act reports as requested by California DOJ, and in return California DOJ would withdraw its 2022 Nomination Letter.

51. Twenty-Nine Palms fulfilled its commitments to California DOJ, and on April 26, 2023, California DOJ withdrew its 2022 Nomination Letter requesting the Tribe be placed on the Non-Compliant List.  A true and correct copy of the DOJ's April 26, 2023 withdrawal is attached hereto as **Exhibit D.**

52. After receiving California DOJ's request to withdraw its 2022 Nomination Letter, ATF took no further action based on California's nomination.

53. Since the 2022 Nomination Letter, Twenty-Nine Palms and California DOJ have worked cooperatively to address any questions California DOJ has raised as to the details of Twenty-Nine Palms' tobacco operations and sales to its Native Nation Customers.

54. Through these efforts, Twenty-Nine Palms has spent significant time and resources working on a government-to-government basis with California DOJ to ensure that the Tribe's operations comply with applicable state laws, and it has

provided all information requested by California DOJ to facilitate their efforts to combat trafficking of illicit tobacco products.

55.     Twenty-Nine Palms has discussed its use of serialized stamps with California DOJ to help establish a chain of custody to be used for the purpose of tracking the collection of applicable state taxes through distribution systems.

56.     Prior to, at the time of, and throughout the almost year-and-a-half since the 2022 Nomination Letter, the State of California, including California DOJ, has never communicated to Twenty-Nine Palms any issue with its operations, nor claimed that its sales to its Native Nation Customers violated the PACT Act or any state law.

## IV.   ATF'S UNILATERAL NON-COMPLIANT DETERMINATION

57.     Despite both the ongoing government-to-government dialogue regarding compliance with California's tobacco laws and the lack of state referral for non-compliance, on June 5, 2023, ATF issued a notice to Twenty-Nine Palms that it was placing Twenty-Nine Palms on the Non-Compliant List ("Notice Letter").  A true and correct copy of ATF's June 5, 2023 notice is attached hereto as **Exhibit E**.

58.     As the basis for listing Twenty-Nine Palms, ATF's Notice Letter alleged:

- Twenty-Nine Palms' Native Nation Customers are "unlicensed by the State of California" and therefore not lawfully operating, rendering them consumers as defined by 15 U.S.C. § 375(4)(B), Ex. E at 2;

- Twenty-Nine Palms sales to its Native Nation Customers fail to "comply with payment obligations and legal regulatory requirements relating to the sale or delivery of the cigarettes and smokeless tobacco in violation of 15 U.S.C. § 376a(a)(3) and (4)," Ex. E at 1 and;

- Twenty-Nine Palms and its Native Nation Customers' possession of more than 10,000 cigarettes without the California tax stamp violate the Contraband Cigarette Trafficking Act, 18 U.S.C. § 2341 *et seq*., ("CCTA"),

and Twenty-Nine Palms sale of such cigarettes constitutes "sales to 'consumers' under the PACT Act." Ex. E at 3-4.

59.   ATF's allegations in the Notice Letter relied exclusively on the Agency's own interpretation and application of California law.

60.   Twenty-Nine Palms timely submitted its challenge to ATF's 2023 Notice Letter on October 2, 2023 ("Challenge Letter").  A true and correct copy of Twenty-Nine Palms' Challenge Letter is attached hereto as **Exhibit F.**

61.   In its Challenge Letter, Twenty-Nine Palms challenged the assertions in the ATF's Notice Letter, informing ATF that:

- The Tribe and California DOJ continue to work collaboratively on a government-to-government basis to address concerns raised by California DOJ as to the Tribe's tobacco operations and compliance with applicable state law; Ex. F at 2-3, 5;

- ATF's 2023 Notice Letter did not cite any specific California law ATF alleged Twenty-Nine Palms or its Native Nation Customers of violating, rendering the Tribe unable to fully challenge ATF's allegations; Ex. F at 4;

- ATF's interpretation of California law violated Section 5 of the PACT Act, Ex. F at 5-7;

- Twenty-Nine Palms' Native Nation Customers cannot be required to possess a state license in order to be lawfully operating, Ex. F at 5-7;

- Twenty-Nine Palms' sale of tobacco products does not violate the tax collection or stamping elements of 15 U.S.C. § 376a(a)(3) and (4) because the state's excise tax does not apply to the sales under Cal. Rev. & Tax. Code § 30108(a) and the tobacco products are not delivered into California; Ex. F at 10-11;

- Guidance from the California Department of Tax and Revenue confirms the ability of Indian Tribes and Tribal retailers to possess and sell untaxed cigarettes without a California tax stamp; Ex. F at 11-13; and

Complaint for Declaratory and Injunctive Relief

- Pursuant to 15 U.S.C. § 376a(e)(E)(iv), ATF must investigate the claims raised in the Challenge Letter with the relevant State law enforcement officials and provide the specific results and findings of that investigation that support ATF's determination so that the Tribe may fully respond to ATF's allegations. Ex. F at 5.

62.   On or about October 19, 2023, ATF sent Twenty-Nine Palms correspondence ("Decision Letter") that rejected the information and arguments in the Challenge Letter and informed the Tribe that ATF was placing it on the Non-Complaint List.  A true and correct copy of ATF's Decision Letter is attached hereto as **Exhibit G.**

63.   The Decision Letter acknowledges that, under California law, certain purchasers "may not be obligated to pay the [excise] tax at the time of sale" and, "[i]n the case of Native American distributors," the tax is due "on the first non-tax-exempt transaction." Ex. G at 7.

64.   However, in the Decision Letter, ATF alleged for the first time that Twenty-Nine Palms' Native Nation Customers were not "lawfully operating under California law" because they failed to collect the state tax at the point of sale on tobacco sales to non-Native Americans.  Ex. G at 6, 11.

65.   The Decision Letter did not provide any documentation, findings, or evidence from the State of California, to support the allegation that Twenty-Nine Palms' Native Nation Customers conducted any taxable transactions or failed to collect any applicable taxes.

66.   Prior to, at the time of, and throughout the almost year-and-a-half since the 2022 Nomination Letter, the State of California, including California DOJ, has never informed Twenty-Nine Palms that its Native Nation Customers failed to collect or remit any applicable state tobacco tax.

67.   ATF also alleged for the first time in the Decision Letter that, under its interpretation of California law, Twenty-Nine Palms' Native Nation Customers

Complaint for Declaratory and Injunctive Relief

qualify both as "distributors" and "retailers" and must possess three state-issued licenses: retailer and distributor licenses under the California Business and Professions Code, and a distributor license under the California Revenue and Tax Code. *See* Ex. G at 6-7.

68.     All three of these licenses require annual fees, impose recordkeeping and reporting requirements, and mandate compliance with State audit efforts that include allowing physical entry to business premises and carry civil and criminal penalties for non-compliance.

69.     Prior to, at the time of, and throughout the almost year-and-a-half since the 2022 Nomination Letter, the State of California, including California DOJ, has never informed Twenty-Nine Palms that it, or its Native Nation Customers, are required to possess any state-issued license to engage in the purchase and sale of tobacco products.

70.     The Decision Letter did not explain the process by which ATF investigated the claims raised in the Challenge Letter with California DOJ, nor did it provide the results and findings of any investigation in support of ATF's allegations and interpretations of California law as required by 15 U.S.C. § 376a(e)(E)(iv).

71.     The Decision Letter did not provide Twenty-Nine Palms with the ability to challenge ATF's new allegations and assertions prior to being listed on the Non-Compliant List.

72.     Following the Decision Letter, Twenty-Nine Palms advised ATF that it would file suit to challenge its placement on the List, and after further negotiations ATF agreed that if Twenty-Nine Palms filed suit and moved for preliminary injunctive relief, ATF would not place Twenty-Nine Palms on the List until this Court rules on the motion for preliminary relief.

//

//

//

# FIRST CLAIM FOR RELIEF

## VIOLATION OF PACT ACT

73.     Twenty-Nine Palms incorporates by reference and realleges the previous averments of this Complaint as if fully set forth herein.

74.     Defendants failed to "use reasonable procedures to ensure maximum possible accuracy and completeness of the records and information relied on" concluding that Twenty-Nine Palms' Native Nation Customers are "consumers" under the PACT Act, Twenty-Nine Palms is a "delivery seller" under the PACT Act, and that Twenty-Nine Palms' sales are not in compliance with California law.  15 U.S.C. § 376a(e)(1)(E)(i).

75.     Defendants failed to "cite … the specific reasons for which" Twenty-Nine Palms was being placed on the Non-Complaint List (i.e., specific alleged violations of California law) in its Notice Letter, which deprived Twenty-Nine Palms the opportunity to meaningfully challenge Defendants' allegations prior to its placement on the List.  15 U.S.C. § 376a(e)(1)(E)(ii); *see id.* § 376a(e)(1)(E)(iii).

76.     Defendants failed to follow the statutorily mandated investigation procedure "by contacting the relevant … State, tribal, and local law enforcement officials" to investigate Twenty-Nine Palms' challenge and by providing the "specific findings and results of the investigation" prior to issuing its Decision Letter placing Twenty-Nine Palms on the Non-Compliant List.  15 U.S.C. § 376a(e)(1)(E)(iv).

77.     On information and belief, Defendants did not contact California DOJ or any relevant tribal law enforcement official to investigate the claims made in Twenty-Nine Palms' Challenge Letter.

78.     Defendants' actions in arriving at their unilateral conclusion that Twenty-Nine Palms was in violation of California state law, and thus the PACT Act and CCTA, deprived Twenty-Nine Palms of the procedural protections legislated into the PACT Act.

**SECOND CLAIM FOR RELIEF**

**VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**

**(Plaintiff's Wrongful Listing On The PACT Act Non-Compliant List Was**

**Arbitrary and Capricious, An Abuse of Discretion, And Contrary to Law)**

79.  Twenty-Nine Palms incorporates by reference and realleges the previous averments of this Complaint as if fully set forth herein.

80.  Defendants' decision to place Twenty-Nine Palms on the Non-Compliant List is "final agency action" subject to judicial review within the meaning of the Administrative Procedure Act, 5 U.S.C. § 704, because it both marks the consummation of the agency decision making process and is a decision from which Twenty-Nine Palms rights and obligations have been determined, and from which legal consequences necessarily flow.  *See Ctr. for Biological Diversity v. Haaland*, 58 F.4th 412, 417 (9th Cir. 2023).  Namely, the decision triggers civil and criminal penalties under 15 U.S.C. § 377, as well as monetary damages and injunctive relief under 15 U.S.C. § 378.

81.  Defendants' decision to place Twenty-Nine Palms on the List was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2).

**I.    Arbitrary and Capricious**

82.  An agency decision is arbitrary and capricious where the agency offered an explanation for its decision that runs counter to the evidence before the agency or failed to consider an important aspect of the problem.  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1944).

83.  Defendants' determination does not cite, rely on, or provide any evidence that any Native Nation Customer sold cigarettes or other tobacco products in a transaction which is subject to a California state tax.

84.  Defendants' determination did not consider that many of the Native Nation Customers sell cigarettes in or near tribal gaming and entertainment venues—

venues which are "modern facilities which provide recreational opportunities and ancillary services to [their] patrons, who do not simply drive onto the reservations, make purchases and depart, but spend extended periods of time there enjoying the services that the Tribe[s] provide[]." *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 219 (1987); *see also Flandreau Santee Sioux Tribe v. Noem*, 938 F.3d 928, 936 (8th Cir. 2019).

85.    Defendants' determination that the alleged failure to collect and remit any applicable state tax fails to consider that, as a result of government-to-government consultations, Twenty-Nine Palms provides California with information to facilitate the collection of any taxes owed on related sales of cigarettes and smokeless tobacco. *See* 15 U.S.C. § 376(c).

86.    Defendants' determination fails to consider that prior to, at the time of, and throughout the almost year-and-a-half since the 2022 Nomination Letter, the State of California, including California DOJ, has never communicated to Twenty-Nine Palms that its Native Nation Customers were required, and failed to collect and remit state taxes under California law.

87.    On information and belief, prior to the decision to place Twenty-Nine Palms on the Non-Compliant List, Defendants unsuccessfully attempted to obtain California DOJ's approval of its analysis of California law.

88.    Defendants' decision to place Twenty-Nine Palms on the Non-Compliant List undermines the significant government-to-government consultations between California DOJ and Twenty-Nine Palms regarding compliance with applicable state law and information sharing necessary to combat illicit trafficking and facilitate the collection of applicable taxes from downstream entities.

89.    Defendants' decision to place Twenty-Nine Palms on the Non-Compliant List upends the Act's delicate balance of federalism by relying on a federal agency's unilateral interpretation of state law to prohibit otherwise state sanctioned economic activity within that state.

90.     Defendants' decision to place Twenty-Nine Palms on the Non-Compliant List threatens to undermine and otherwise invalidate the settlement agreement between the State of California and Grand River by prohibiting the sale of Grand River products, which are listed on the California Tobacco Directory, by any tribe or tribally owned retailer in the State of California.

91.     For each of these reasons, Defendants' decision was arbitrary and capricious.

## II.     Contrary to Law

92.     The PACT Act defines "delivery sale" as, among other items, "any sale of cigarettes or smokeless tobacco to a consumer."  15 U.S.C. § 375(5).

93.     The PACT Act defines "consumer" as "any person that purchases cigarettes," but expressly excludes from that definition "any person lawfully operating as a manufacturer, distributor, wholesaler or retailer of cigarettes."  15 U.S.C. § 375(4)(B).

94.     The PACT Act expressly affirms that nothing within it may be construed to amend, modify, or otherwise affect "any limitations under Federal or State law, including Federal common law and treaties, on State, local and tribal tax and regulatory authority with respect to the sale, use, or distribution of cigarettes and smokeless tobacco by or to Indian tribes, tribal members, tribal enterprises, or in Indian country."  Pub. L. No. 111-154, § 5(a)(3), 124 Stat. 1110; 15 U.S.C. § 375 note.

### A.     Legal Proceeding

95.     The Act authorizes state, local, and Indian tribal governments to add delivery sellers to the Non-Compliant List when such seller "has been found in a legal proceeding" to have failed to comply with the Act.  15 U.S.C. § 376a § (e)(6)(A)(i).  Notwithstanding the Listing and Decision Letters, Twenty-Nine Palms has never been alleged or "found in a legal proceeding" to have failed to comply with any applicable California state law or the PACT Act.

### B.   State-Issued Licenses

96.     Twenty-Nine Palms only sells cigarettes to its Native Nation Customers, who are entities owned and operated by federally recognized Indian tribes located in Indian country.   All of Twenty-Nine Palms' customers are lawfully operating in accordance with the laws of the tribal jurisdictions within which they are located.

97.     Defendants have informed Twenty-Nine Palms that they interpret the PACT Act's phrase "lawfully operating" to mean operating in accordance with State law, regardless of whether a customer is lawfully operating under the laws of the Indian tribe within whose jurisdiction they are located.

98.     Twenty-Nine Palms' Native Nation Customers are located and operate within their respective Indian country jurisdictions.   As such, they are exempt from licensing by the state of California under the United States Constitution and the laws of the United States, including decisions of the United States Supreme Court.   *See Moe v. Confederated Salish & Kootenai Tribes of the Flathead Reservation*, 425 U.S. 463, 480-81 (1976) (affirming district court ruling that on-reservation tribal retailer cannot be required to hold state cigarette retailer's license).

99.     California law itself recognizes the jurisdictional limits imposed by Supreme Court precedent in recognizing that "[t]his subdivision [prohibiting sales to any unlicensed person] does not apply to any sale of cigarettes … by a distributor, wholesaler, or any other person to a retailer, wholesaler, distributor, or any other person that the state, pursuant to the United States Constitution, the laws of the United States, or the California Constitution, is prohibited from regulating."   Cal. Bus. & Prof. Code § 22980.1(b)(2).

100.  Defendants' determination that Twenty-Nine Palms is a "delivery seller" engaged in "delivery sales" under the PACT Act because its Native Nation Customers do not hold state-issued licenses ignored both California law and Federal precedent establishing the jurisdictional limits between federal, state, and tribal governments, and as such, violates the PACT Act.   *See* Pub. L. No. 111-154,

§§ 5(a)(3)-(5), 124 Stat. 1110; 15 U.S.C. § 375(4).

## C. Collection and Remittance of State Taxes

101.   Defendants' determination that Twenty-Nine Palms is a "delivery seller" engaged in "delivery sales" under the PACT Act because its Native Nation Customers allegedly are "failing to collect and remit taxes … in violation of California law" is contrary to law.

102.   The United States Supreme Court has held that California *could* require on-reservation tribal retailers to collect the state's excise tax on sales to non-tribal customers. *See Cal. State Bd. Of Equalization v. Chemehuevi Indian Tribe*, 474 U.S. 9 (1985).   However, on information and belief, there is no California law that establishes the collect-and-remit framework and California has never sought to impose or enforce a collect-and-remit requirement on Twenty-Nine Palms' Native Nation Customers.

103.   Defendants' determination further failed to conduct "a particularized inquiry into the nature of the state, federal, and tribal interests at stake" as to the Native Nation Customers' sales to determine whether the state tax was applicable. *White Mtn. Apache Tribe v. Bracker*, 448 U.S. 136, 144-45 (1980).

104.   The underlying basis for Defendants' decision to place Twenty-Nine Palms on the Non-Compliant List is that Twenty-Nine Palms is violating the PACT Act as a delivery seller engaged in non-compliant delivery sales.

105.   Defendants' position supplants the delicate balance of federalism in the Act by unilaterally interpreting California state law and contravenes the plain language of the PACT Act as the Native Nations Customers are lawfully operating.

106.   For each of these reasons, Defendants' decision is contrary to law.

## THIRD CLAIM FOR RELIEF

## (Declaratory Judgment)

107.   Twenty-Nine Palms incorporates by reference and realleges the previous averments of this Complaint as if fully set forth herein.

108.   There exists a present case and controversy with respect to the PACT Act and Defendants' interpretation, application, and enforcement of its terms and requirements as against Twenty-Nine Palms, particularly with respect to the PACT Act's terms relating to "delivery sale," "delivery seller," and "consumer," and with respect to rights and obligations under federal law.  The PACT Act as interpreted and applied by Defendants would operate to prevent commerce in Indian country, 15 U.S.C. §376a(e)(2) and carries with it the threat of civil and penal sanction.  15 U.C.S. §§ 377, 378.

109.   Attempts to resolve the conflict and controversy with Defendants regarding their interpretation and enforcement of the PACT Act have been unsuccessful, and the controversy is justiciable and ripe for review and determination by this Court.

**FOURTH CLAIM FOR RELIEF**

**(Void for Vagueness)**

110.   Twenty-Nine Palms incorporates by reference and realleges the previous averments of this Complaint as if fully set forth herein.

111.   Defendants' implementation of the PACT Act has rendered it unconstitutionally vague.

112.   Defendants are enforcing the PACT Act in a manner that renders compliance with applicable tribal laws irrelevant for determining whether the PACT Act has been violated.

113.   Defendants assert that only state law can be considered when determining whether a Native Nation is lawfully operating within the meaning of 15 U.S.C. § 375(4)(B) and therefore excluded from the definition of consumer under the PACT Act.  However, Defendants' assertion is contrary to the plain language of the Act and unsupported by the chief law enforcement officials of the state whose law Defendants are interpreting.  Defendants' interpretation of the phrase lawfully operating creates conflict and uncertainty.

Complaint for Declaratory and Injunctive Relief

114.   Because of this conflict, it is impossible for Twenty-Nine Palms to know which laws control determination of the express exclusion from the definition of consumer under 15 U.S.C. § 375(4)(B) of the PACT Act, rendering it void for vagueness.

115.   As a direct result of this uncertainty, Twenty-Nine Palms has been damaged and may face civil and penal sanctions for activities that cannot be determined with certainty in advance.

### FIFTH CLAIM FOR RELIEF
### (Injunctive Relief)

116.   Twenty-Nine Palms incorporates by reference and realleges the previous averments of this Complaint as if fully set forth herein.

117.   Twenty-Nine Palms is likely to succeed on the merits of its claims for all the reasons set forth herein.

118.   Injunctive relief is necessary to prevent irreparable harm to Twenty-Nine Palms.  The cigarette business is highly competitive.  Even a temporary disruption of supply would cause Twenty-Nine Palms' Native Nation Customers to seek other sources of supply and those customers would almost certainly not come back to Twenty-Nine Palms even if Twenty-Nine Palms ultimately prevails in this action.

119.   The balance of equities favors Twenty-Nine Palms, and the public interest favors injunctive relief.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered in its favor and against Defendants as follows:

A. Set aside Defendant's decision to add Plaintiff to the Non-Compliant list as arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law.

B. Declare that Defendants failed to adhere to the procedural protections of 15 U.S.C. § 376a(e)(E)(iv) prior to placing Twenty-Nine Palms on the Non-Compliant List without investigating the claims raised in the Challenge Letter and providing the results of that investigation and the facts with supporting documentation;

C. Declare that Plaintiff is not a delivery seller under the PACT Act with respect to the sales at issue in this case because Plaintiff's Native Nation Customers are lawfully operating;

D. Declare that Defendants' implementation of the PACT Act has rendered it unconstitutionally vague;

E. Enjoin Defendants or anyone acting in concert with them from placing Plaintiff on the Non-Compliant List;

F. Award Plaintiff its costs and attorney fees incurred herein; and

G. Grant such other further relief as the Court may deem just and proper.

Dated: February 16, 2024                    Respectfully submitted,

Teri T. Pham
ENENSTEIN PHAM GLASS & RABBAT LLP
3200 Bristol Street, Suite 500
Costa Mesa, CA 92626
Phone: 714-292-0262
Email: tpham@epgrlawyers.com

Jesse D. Heibel,(Esq. *pro hac vice* pending)
BARNHOUSE KEEGAN SOLIMON & WEST LLP
7424 4th Street NW
Los Ranchos de Albuquerque, NM  87107
Phone: (505) 842-6123
Email: jheibel@indiancountrylaw.com
*Counsel for Plaintiff Twenty-Nine Palms Band of Mission Indians*

# EXHIBIT A

*ROB BONTA*
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

1300 I STREET, SUITE 125
P.O. BOX 944255
SACRAMENTO, CA 94244-2550

Public:  (916) 445-9555
Telephone:  (916) 210-7353
E-Mail:  Byron.Miller@doj.ca.gov

July 28, 2022

via Email

Moliki "Nikki" Alexander
Program Analyst
ATF Internet Investigations Center
90 K Street NE, Suite 250
Washington, DC 20226

RE:     PACT Act—Request for Listing of 29 Palms Band of Mission Indians

Dear Ms. Alexander:

Under 15 U.S.C. §§ 376a(e)(1)(D) and (6)(A)(i)(II), California requests that the following person be added to the PACT Act list of unregistered or noncompliant delivery sellers:

29 Palms Band of Mission Indians
46-200 Harrison Place
Coachella, CA 92236

(Alternate/Related Name)
Twenty-Nine Palms Band of Mission Indians

The 29 Palms Band of Mission Indians (29 Palms) does not hold a federal manufacturer's permit issued by the federal Alcohol and Tobacco Tax and Trade Bureau, nor is it registered with the California Department of Tax and Fee Administration (CDTFA) as a permitted manufacturer, importer, or distributor of cigarettes in the State of California.  Further, third-party shipping records reveal 29 Palms' regular receipt of millions of out-of-state cigarettes (*see*, e.g., Exhibit A), and we have learned that 29 Palms-stamped cigarettes are being sold to non-tribal members on a reservation elsewhere in California (*see*, e.g., Exhibit B).  Despite this activity, 29 Palms has failed to submit its PACT Act registration or any of its required monthly reports or invoices to CDTFA.  *See* 15 U.S.C. § 376(a)(1), (2) (defining shipments into Indian country as occurring in "interstate commerce" and subjecting such shipments to PACT Act reporting requirements); *see also* 15 USC 375(8) (defining "Indian country"), (10)(A) (defining "interstate commerce").

After these matters were brought to our attention, our office contacted 29 Palms to request, among other things, that it register and report its sales activities to the State under the PACT Act.  *See* Exhibit C.  But to date, 29 Palms has failed to respond to our correspondence.

Moliki "Nikki" Alexander
July 28, 2022
Page 2

We therefore request that 29 Palms be added to the list of unregistered or noncompliant delivery sellers maintained by your office under 15 U.S.C. § 376a(e)(1) for the violation of 15 U.S.C. § 376a(e)(6)(A)(i)(II) (providing for addition of any seller that "has failed to register with or make reports to the respective tax administrator as required by this chapter").

Sincerely,

*/s/ Byron M. Miller*

BYRON M. MILLER
Deputy Attorney General

For    ROB BONTA
Attorney General

BMM:

cc:  Jeffrey A. Cohen, Jeffrey.A.Cohen@usdoj.gov

SA2010301908
36400155

# Exhibit A

CDTFA-5204-PA-1 (FRONT) (8-19)
**CALIFORNIA CIGARETTE PACT ACT REPORT**

STATE OF CALIFORNIA
CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

### PART 1 — IDENTIFY YOUR BUSINESS

| BUSINESS NAME (please print) | | | PERIOD BEGIN DATE | PERIOD END DATE | CDTFA ACCOUNT NUMBER |
|---|---|---|---|---|---|
| Shinnecock Sovereign Distribution | | | 01/01/2022 | 01/31/2022 | 229-084544 |

| LOCATION ADDRESS (number and street) | CITY | STATE/PROVINCE | ZIP CODE/POSTAL CODE | COUNTRY/TERRITORY | FEDERAL EMPLOYER IDENTIFICATION NUMBER (FEIN) |
|---|---|---|---|---|---|
| 100 Church Street | Southampton | NY | 11968 | USA | 47-1655600 |

| MAILING ADDRESS (number and street) | CITY | STATE/PROVINCE | ZIP CODE/POSTAL CODE | COUNTRY/TERRITORY | EMAIL ADDRESS |
|---|---|---|---|---|---|
| 100 Church Street | Southampton | NY | 11968 | USA | *Shinnecock Sovereign Distribution, as an entity of the Shinneco |

### PART 2 — IDENTIFY YOUR SALES

| PURCHASER NAME | ADDRESS | TOTAL PRICE* | BRAND FAMILY | INVOICE DATE | INVOICE NUMBER | CARTON UPC | QUANTITY SOLD | TOTAL STICKS SOLD |
|---|---|---|---|---|---|---|---|---|
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 209,126.40 | Seneca | 01/11/2022 | 1067 | 6814670035 | 128 | 1,536,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 104,563.20 | Seneca | 01/11/2022 | 1067 | 6814670035 | 64 | 768,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 156,844.80 | Seneca | 01/11/2022 | 1067 | 6814670036 | 96 | 1,525,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 7,015.20 | Seneca | 01/11/2022 | 1067 | 6814670037 | 8 | 48,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 7,015.20 | Seneca | 01/11/2022 | 1067 | 6814670037 | 8 | 48,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 313,689.60 | Seneca | 01/11/2022 | 1067 | 6814670031 | 192 | 2,304,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 156,844.80 | Seneca | 01/11/2022 | 1067 | 6814670032 | 96 | 1,152,000 |
| | | | | | | | TOTAL | 10,069,000 |

### PART 3 — IDENTIFY YOUR DELIVERY SERVICE *(required for delivery sellers only)*

| DELIVERY SERVICE NAME | ADDRESS | TELEPHONE NUMBER |
|---|---|---|
| Globaltranz | 76 Regis Ct., Paramus, NJ 07652 | (201) 456-2651 |
| | | |

* Delivery sellers only

### PART 4 — SIGN BELOW

***DECLARATION:*** *I declare under penalties of perjury that I have examined this report and all attachments and, to the best of my knowledge and belief, it is true, correct, and complete.*

| SIGNATURE OF RESPONSIBLE PARTY | RESPONSIBLE PARTY'S NAME | TITLE | TELEPHONE NUMBER | DATE |
|---|---|---|---|---|
| *Barré Hamp* | Barré Hamp | Vice-President | 631-960-8655 | 3/17/22 |

CDTFA-5204-PA-1 (FRONT) (8-19)
**CALIFORNIA CIGARETTE PACT ACT REPORT**

STATE OF CALIFORNIA
CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

### PART 1 — IDENTIFY YOUR BUSINESS

| BUSINESS NAME *(please print)* | | | PERIOD BEGIN DATE | PERIOD END DATE | CDTFA ACCOUNT NUMBER |
|---|---|---|---|---|---|
| Shinnecock Sovereign Distribution | | | 01/01/2022 | 01/31/2022 | 229-084544 |

| LOCATION ADDRESS *(number and street)* | CITY | STATE/PROVINCE | ZIP CODE/POSTAL CODE | COUNTRY/TERRITORY | FEDERAL EMPLOYER IDENTIFICATION NUMBER *(FEIN)* |
|---|---|---|---|---|---|
| 100 Church Street | Southampton | NY | 11968 | USA | 47-1655600 |

| MAILING ADDRESS *(number and street)* | CITY | STATE/PROVINCE | ZIP CODE/POSTAL CODE | COUNTRY/TERRITORY | EMAIL ADDRESS |
|---|---|---|---|---|---|
| 100 Church Street | Southampton | NY | 11968 | USA | *Shinnecock Sovereign Distribution, as an entity of the Shinneco |

### PART 2 — IDENTIFY YOUR SALES

| PURCHASER NAME | ADDRESS | TOTAL PRICE* | BRAND FAMILY | INVOICE DATE | INVOICE NUMBER | CARTON UPC | QUANTITY SOLD | TOTAL STICKS SOLD |
|---|---|---|---|---|---|---|---|---|
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 104,563.20 | Seneca | 01/11/2022 | 1067 | 6814670032 | 64 | 768,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 104,563.20 | Seneca | 01/11/2022 | 1067 | 6814670032 | 64 | 768,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 52,281.60 | Seneca | 01/11/2022 | 1067 | 6814670033 | 32 | 384,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 1045,63.20 | Seneca | 01/11/2022 | 1067 | 6714670042 | 64 | 768,000 |
| | | $ | | | | | | |
| | | $ | | | | | | |
| | | $ | | | | | | |
| | | | | | | | TOTAL | 10,069,000 |

### PART 3 — IDENTIFY YOUR DELIVERY SERVICE *(required for delivery sellers only)*

| DELIVERY SERVICE NAME | ADDRESS | TELEPHONE NUMBER |
|---|---|---|
| Globaltranz | 76 Regis Ct., Paramus, NJ 07652 | (201) 456-2651 |
| | | |

* Delivery sellers only

### PART 4 — SIGN BELOW

***DECLARATION:*** I declare under penalties of perjury that I have examined this report and all attachments and, to the best of my knowledge and belief, it is true, correct, and complete.

| SIGNATURE OF RESPONSIBLE PARTY | RESPONSIBLE PARTY'S NAME | TITLE | TELEPHONE NUMBER | DATE |
|---|---|---|---|---|
| *Barré Hamp* | Barré Hamp | Vice-President | 631-960-8655 | 3/17/22 |

CDTFA-5204-PA-1 (FRONT) (8-19)
**CALIFORNIA CIGARETTE PACT ACT REPORT**

STATE OF CALIFORNIA
CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

### PART 1 — IDENTIFY YOUR BUSINESS

| BUSINESS NAME (please print) | | | | PERIOD BEGIN DATE | PERIOD END DATE | CDTFA ACCOUNT NUMBER |
|---|---|---|---|---|---|---|
| Shinnecock Sovereign Distribution | | | | 02/01/2022 | 02/28/2022 | 229-084544 |

| LOCATION ADDRESS (number and street) | CITY | STATE/PROVINCE | ZIP CODE/POSTAL CODE | COUNTRY/TERRITORY | FEDERAL EMPLOYER IDENTIFICATION NUMBER (FEIN) |
|---|---|---|---|---|---|
| 100 Church Street | Southampton | NY | 11968 | USA | 47-1655600 |

| MAILING ADDRESS (number and street) | CITY | STATE/PROVINCE | ZIP CODE/POSTAL CODE | COUNTRY/TERRITORY | EMAIL ADDRESS |
|---|---|---|---|---|---|
| 100 Church Street | Southampton | NY | 11968 | USA | *Shinnecock Sovereign Distribution, as an entity of the Shinneco |

### PART 2 — IDENTIFY YOUR SALES

| PURCHASER NAME | ADDRESS | TOTAL PRICE* | BRAND FAMILY | INVOICE DATE | INVOICE NUMBER | CARTON UPC | QUANTITY SOLD | TOTAL STICKS SOLD |
|---|---|---|---|---|---|---|---|---|
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 209,126.40 | Seneca | 2/8/2022 | 1068 | 6814670035. | 128 | 1,536,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 104,563.20 | Seneca | 2/8/2022 | 1068 | 6814670035! | 64 | 768,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 104,563.20 | Seneca | 2/8/2022 | 1068 | 6814670035! | 64 | 768,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 104,563.20 | Seneca | 2/8/2022 | 1068 | 6814670036. | 64 | 768,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 156,844.80 | Seneca | 2/8/2022 | 1068 | 6814670042. | 96 | 1,152,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 1,753.80 | Seneca | 2/8/2022 | 1068 | 6814670038. | 2 | 12,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 261,408.00 | Seneca | 2/8/2022 | 1068 | 6814670031! | 160 | 1,920,000 |
| | | | | | | TOTAL | | 9,828,000 |

### PART 3 — IDENTIFY YOUR DELIVERY SERVICE (required for delivery sellers only)

| DELIVERY SERVICE NAME | ADDRESS | TELEPHONE NUMBER |
|---|---|---|
| Globaltranz | 76 Regis Ct., Paramus, NJ 07652 | (201) 456-2651 |
| | | |

* Delivery sellers only

### PART 4 — SIGN BELOW

***DECLARATION:*** *I declare under penalties of perjury that I have examined this report and all attachments and, to the best of my knowledge and belief, it is true, correct, and complete.*

| SIGNATURE OF RESPONSIBLE PARTY | RESPONSIBLE PARTY'S NAME | TITLE | TELEPHONE NUMBER | DATE |
|---|---|---|---|---|
| *Barré Hamp* | Barré Hamp | Vice-President | 631.960.8655 | 3/29/22 |

CDTFA-5204-PA-1 (FRONT) (8-19)
**CALIFORNIA CIGARETTE PACT ACT REPORT**

STATE OF CALIFORNIA
CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

**PART 1 — IDENTIFY YOUR BUSINESS**

| BUSINESS NAME (please print) | | | PERIOD BEGIN DATE | PERIOD END DATE | CDTFA ACCOUNT NUMBER |
|---|---|---|---|---|---|
| Shinnecock Sovereign Distribution | | | 02/01/2022 | 02/28/2022 | 229-084544 |

| LOCATION ADDRESS (number and street) | CITY | STATE/PROVINCE | ZIP CODE/POSTAL CODE | COUNTRY/TERRITORY | FEDERAL EMPLOYER IDENTIFICATION NUMBER (FEIN) |
|---|---|---|---|---|---|
| 100 Church Street | Southampton | NY | 11968 | USA | 47-1655600 |

| MAILING ADDRESS (number and street) | CITY | STATE/PROVINCE | ZIP CODE/POSTAL CODE | COUNTRY/TERRITORY | EMAIL ADDRESS |
|---|---|---|---|---|---|
| 100 Church Street | Southampton | NY | 11968 | USA | *Shinnecock Sovereign Distribution, as an entity of the Shinneco |

**PART 2 — IDENTIFY YOUR SALES**

| PURCHASER NAME | ADDRESS | TOTAL PRICE* | BRAND FAMILY | INVOICE DATE | INVOICE NUMBER | CARTON UPC | QUANTITY SOLD | TOTAL STICKS SOLD |
|---|---|---|---|---|---|---|---|---|
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 104,563.20 | Seneca | 2/8/2022 | 1068 | 6814670032 | 64 | 768,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 52,281.60 | Seneca | 2/8/2022 | 1068 | 6814670033 | 32 | 384,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 52,281.60 | Seneca | 2/8/2022 | 1068 | 6814670033 | 32 | 384,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 156,844.80 | Seneca | 2/8/2022 | 1068 | 6814670042 | 96 | 1,152,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 31,568.40 | OPAL | 2/8/2022 | 1068 | 6814670040 | 36 | 216,000 |
| | | $ | | | | | | |
| | | $ | | | | | | |
| | | | | | | TOTAL | | 9,828,000 |

**PART 3 — IDENTIFY YOUR DELIVERY SERVICE** *(required for delivery sellers only)*

| DELIVERY SERVICE NAME | ADDRESS | TELEPHONE NUMBER |
|---|---|---|
| Globaltranz | 76 Regis Ct., Paramus, NJ 07652 | (201) 456-2651 |
| | | |

* Delivery sellers only

**PART 4 — SIGN BELOW**

*DECLARATION: I declare under penalties of perjury that I have examined this report and all attachments and, to the best of my knowledge and belief, it is true, correct, and complete.*

| SIGNATURE OF RESPONSIBLE PARTY | RESPONSIBLE PARTY'S NAME | TITLE | TELEPHONE NUMBER | DATE |
|---|---|---|---|---|
| *Barré Hamp* | Barré Hamp | Vice-President | 631.960.8655 | 3/29/22 |

CDTFA-5204-PA-1 (FRONT) (8-19)
**CALIFORNIA CIGARETTE PACT ACT REPORT**

STATE OF CALIFORNIA
CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

**PART 1 — IDENTIFY YOUR BUSINESS**

| BUSINESS NAME (please print) | | | PERIOD BEGIN DATE | PERIOD END DATE | CDTFA ACCOUNT NUMBER |
|---|---|---|---|---|---|
| Shinnecock Sovereign Distribution | | | 03/01/2022 | 03/31/2022 | 229-084544 |

| LOCATION ADDRESS (number and street) | CITY | STATE/PROVINCE | ZIP CODE/POSTAL CODE | COUNTRY/TERRITORY | FEDERAL EMPLOYER IDENTIFICATION NUMBER (FEIN) |
|---|---|---|---|---|---|
| 100 Church Street | Southampton | NY | 11968 | USA | 47-1655600 |

| MAILING ADDRESS (number and street) | CITY | STATE/PROVINCE | ZIP CODE/POSTAL CODE | COUNTRY/TERRITORY | EMAIL ADDRESS |
|---|---|---|---|---|---|
| 100 Church Street | Southampton | NY | 11968 | USA | *Shinnecock Sovereign Distribution, as an entity of the Shinneco |

**PART 2 — IDENTIFY YOUR SALES**

| PURCHASER NAME | ADDRESS | TOTAL PRICE* | BRAND FAMILY | INVOICE DATE | INVOICE NUMBER | CARTON UPC | QUANTITY SOLD | TOTAL STICKS SOLD |
|---|---|---|---|---|---|---|---|---|
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 1,156,844.80 | Seneca | 3/3/2022 | 1069 | 6814670035 | 96 | 1,152,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 1,156,844.80 | Seneca | 3/3/2022 | 1069 | 6814670035 | 96 | 1,152,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 313,686.60 | Seneca | 3/3/2022 | 1069 | 6814670031 | 192 | 2,304,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 104,563.20 | Seneca | 3/3/2022 | 1069 | 6814670032 | 64 | 768,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 156,844.80 | Seneca | 3/3/2022 | 1069 | 6814670032 | 96 | 1,152,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 104,563.20 | Seneca | 3/3/2022 | 1069 | 6814670062 | 64 | 768,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 104,563.20 | Seneca | 3/3/2022 | 1069 | 6814670042 | 64 | 768,000 |
| | | | | | | | TOTAL | 17,544,000 |

**PART 3 — IDENTIFY YOUR DELIVERY SERVICE** *(required for delivery sellers only)*

| DELIVERY SERVICE NAME | ADDRESS | TELEPHONE NUMBER |
|---|---|---|
| Globaltranz | 76 Regis Ct., Paramus, NJ 07652 | (201) 456-2651 |
| | | |

* Delivery sellers only

**PART 4 — SIGN BELOW**

*DECLARATION: I declare under penalties of perjury that I have examined this report and all attachments and, to the best of my knowledge and belief, it is true, correct, and complete.*

| SIGNATURE OF RESPONSIBLE PARTY | RESPONSIBLE PARTY'S NAME | TITLE | TELEPHONE NUMBER | DATE |
|---|---|---|---|---|
| *Barre Hamp* | Barre Hamp | President | (631) 960-8655 | 4/15/22 |

CDTFA-5204-PA-1 (FRONT) (8-19)
**CALIFORNIA CIGARETTE PACT ACT REPORT**

STATE OF CALIFORNIA
CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

### PART 1 — IDENTIFY YOUR BUSINESS

| BUSINESS NAME *(please print)* | | | PERIOD BEGIN DATE | PERIOD END DATE | CDTFA ACCOUNT NUMBER |
|---|---|---|---|---|---|
| Shinnecock Sovereign Distribution | | | 03/01/2022 | 03/31/2022 | 229-084544 |

| LOCATION ADDRESS *(number and street)* | CITY | STATE/PROVINCE | ZIP CODE/POSTAL CODE | COUNTRY/TERRITORY | FEDERAL EMPLOYER IDENTIFICATION NUMBER *(FEIN)* |
|---|---|---|---|---|---|
| 100 Church Street | Southampton | NY | 11968 | USA | 47-1655600 |

| MAILING ADDRESS *(number and street)* | CITY | STATE/PROVINCE | ZIP CODE/POSTAL CODE | COUNTRY/TERRITORY | EMAIL ADDRESS |
|---|---|---|---|---|---|
| 100 Church Street | Southampton | NY | 11968 | USA | *Shinnecock Sovereign Distribution, as an entity of the Shinneco |

### PART 2 — IDENTIFY YOUR SALES

| PURCHASER NAME | ADDRESS | TOTAL PRICE* | BRAND FAMILY | INVOICE DATE | INVOICE NUMBER | CARTON UPC | QUANTITY SOLD | TOTAL STICKS SOLD |
|---|---|---|---|---|---|---|---|---|
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 42,091.20 | OPAL | 3/3/2022 | 1069 | 6814670040 | 48 | 288,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 42,091.20 | OPAL | 3/3/2022 | 1069 | 6814670040 | 48 | 288,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 261,408.00 | Seneca | 3/14/2022 | 1070 | 6814670035 | 160 | 1,920,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 52,281.60 | Seneca | 3/14/2022 | 1070 | 6814670036 | 32 | 384,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 104,563.20 | Seneca | 3/14/2022 | 1070 | 6814670042 | 64 | 768,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 3,507.60 | Seneca | 3/14/2022 | 1070 | 6814670037 | 4 | 24,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 3,507.60 | Seneca | 3/14/2022 | 1070 | 6814670037 | 4 | 24,000 |
| | | | | | | | TOTAL | 17,544,000 |

### PART 3 — IDENTIFY YOUR DELIVERY SERVICE *(required for delivery sellers only)*

| DELIVERY SERVICE NAME | ADDRESS | TELEPHONE NUMBER |
|---|---|---|
| Globaltranz | 76 Regis Ct., Paramus, NJ 07652 | (201) 456-2651 |
| | | |

* Delivery sellers only

### PART 4 — SIGN BELOW

**DECLARATION:** *I declare under penalties of perjury that I have examined this report and all attachments and, to the best of my knowledge and belief, it is true, correct, and complete.*

| SIGNATURE OF RESPONSIBLE PARTY | RESPONSIBLE PARTY'S NAME | TITLE | TELEPHONE NUMBER | DATE |
|---|---|---|---|---|
| *Barre Hamp* | Barre Hamp | President | (631) 960-8655 | 4/15/22 |

CDTFA-5204-PA-1 (FRONT) (8-19)
**CALIFORNIA CIGARETTE PACT ACT REPORT**

STATE OF CALIFORNIA
CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

**PART 1 — IDENTIFY YOUR BUSINESS**

| BUSINESS NAME (please print) | | | PERIOD BEGIN DATE | PERIOD END DATE | CDTFA ACCOUNT NUMBER |
|---|---|---|---|---|---|
| Shinnecock Sovereign Distribution | | | 03/01/2022 | 03/31/2022 | 229-084544 |

| LOCATION ADDRESS (number and street) | CITY | STATE/PROVINCE | ZIP CODE/POSTAL CODE | COUNTRY/TERRITORY | FEDERAL EMPLOYER IDENTIFICATION NUMBER (FEIN) |
|---|---|---|---|---|---|
| 100 Church Street | Southampton | NY | 11968 | USA | 47-1655600 |

| MAILING ADDRESS (number and street) | CITY | STATE/PROVINCE | ZIP CODE/POSTAL CODE | COUNTRY/TERRITORY | EMAIL ADDRESS |
|---|---|---|---|---|---|
| 100 Church Street | Southampton | NY | 11968 | USA | *Shinnecock Sovereign Distribution, as an entity of the Shinneco |

**PART 2 — IDENTIFY YOUR SALES**

| PURCHASER NAME | ADDRESS | TOTAL PRICE* | BRAND FAMILY | INVOICE DATE | INVOICE NUMBER | CARTON UPC | QUANTITY SOLD | TOTAL STICKS SOLD |
|---|---|---|---|---|---|---|---|---|
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 3,507.60 | Seneca | 3/14/2022 | 1070 | 6814670038 | 4 | 24,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 365,971.20 | Seneca | 3/14/2022 | 1070 | 6814670031 | 224 | 2,680,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 156,844.80 | Seneca | 3/14/2022 | 1070 | 6814670032 | 96 | 1,152,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 156,844.80 | Seneca | 3/14/2022 | 1070 | 6814670062 | 96 | 1,152,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 52,281.60 | Seneca | 3/14/2022 | 1070 | 6814670033 | 32 | 384,000 |
| 29 Palms Band of Mission Indians | 4646-200 Harrison Pl Coachella, CA 92236 | $ 52,281.60 | Seneca | 3/14/2022 | 1070 | 6814670033 | 32 | 384,000 |
| | | $ | | | | | | |
| | | | | | | | TOTAL | 17,544,000 |

**PART 3 — IDENTIFY YOUR DELIVERY SERVICE** *(required for delivery sellers only)*

| DELIVERY SERVICE NAME | ADDRESS | TELEPHONE NUMBER |
|---|---|---|
| Globaltranz | 76 Regis Ct., Paramus, NJ 07652 | (201) 456-2651 |
| | | |

* Delivery sellers only

**PART 4 — SIGN BELOW**

*DECLARATION: I declare under penalties of perjury that I have examined this report and all attachments and, to the best of my knowledge and belief, it is true, correct, and complete.*

| SIGNATURE OF RESPONSIBLE PARTY | RESPONSIBLE PARTY'S NAME | TITLE | TELEPHONE NUMBER | DATE |
|---|---|---|---|---|
| *Barre Hamp* | Barre Hamp | President | (631) 960-8655 | 4/15/22 |

# Exhibit B







# Exhibit C

**ROB BONTA**
*Attorney General*

*State of California*
**DEPARTMENT OF JUSTICE**

1300 I STREET, SUITE 125
P.O. BOX 944255
SACRAMENTO, CA 94244-2550
Telephone: (916) 210-7838
E-Mail: Barry.Alves@doj.ca.gov

February 23, 2022

Administrator, cigarette distribution business
c/o 29 Palm Band of Mission Indians
46-200 Harrison Place
Coachella, CA 92236

RE:     Requirements under the Prevent All Cigarette Trafficking Act of 2009

Dear Administrator:

I write on behalf of the California Department of Justice regarding your business's compliance with the reporting and other requirements of the Prevent All Cigarette Trafficking Act of 2009, 15 U.S.C. §§ 375 *et seq.* (the "PACT Act"). Your business is operating from within California Indian Country, and has been identified as engaged in the sale and distribution of cigarettes or other tobacco products to unlicensed persons operating elsewhere in the State. The PACT Act defines such transactions as occurring in "interstate commerce," *see* 15 U.S.C. § 375(9), and State and federal law impose a number of requirements on such sales. We write to request additional information regarding your compliance with these requirements.

As you should know, any person engaged in the sale, transfer, or shipment of cigarettes into or within the State by and through Indian country is required to register with the federal Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF"). *See* 15 U.S.C. § 376(a)(1). Such persons—including Indian tribal governments or tribal corporations, *see* 15 U.S.C. § 375(11)—are also required to register and submit monthly reports regarding their shipments to the State tobacco tax administrator, which in California is the Department of Tax and Fee Administration ("CDTFA"). We have confirmed that you are not registered with ATF, and that you are not submitting shipment reports to CDTFA as required under section 376(a)(2) of the PACT Act. A copy of the federal registration form is attached for your convenience.

We also understand that you are engaged in the sale and distribution of cigarettes or other tobacco products to unlicensed persons operating within the State of California. Non-face-to-face sales to unlicensed persons are deemed "delivery sales" under the PACT Act, *see* 15 U.S.C. §§ 375(4)-(5), and require, among other things, that sellers comply with statutory rules regarding recordkeeping, package labeling and delivery requirements, *see* 15 U.S.C. §§ 376a(a)(1)-(2), and that sellers comply with "all State … laws generally applicable to sales of cigarettes." Cigarettes sold in violation of the State Tobacco Directory or without valid stamping, collection, and remittance of State excise taxes are contraband subject to seizure and forfeiture, *see* Cal. Rev. & Tax. Code § 30436, and may also violate federal contraband trafficking laws. *See* 18 U.S.C. § 2341 *et seq.*

February 23, 2022
Page 2

We ask that you provide, within 30 days of this letter: (1) an executed copy of the federal PACT Act registration form and confirm its submission to ATF and the State tobacco taxing authority, CDTFA; (2) a monthly report satisfying the requirements of 15 U.S.C. § 376(a)(2) for each month from January 1, 2020 to the present (including, as applicable, any such months for which there were no reportable shipments or sales); (3) a confirmation that you have reviewed State laws regarding the distribution and sale of cigarettes in the State of California, including the various statutes identified above, and that, in connection with this confirmation, you provide any writings, records, or invoices you believe appropriate to show you and your business's compliance with applicable State laws for the period from January 1, 2020 to present. Your response may be submitted electronically or physically at the address provided above.

A copy of this letter has been transmitted to ATF. Any failure to provide the information as requested may result in a formal referral to ATF for inclusion on the PACT Act non-compliant list or in other, additional actions as appropriate under State or federal law. We look forward to your prompt attention and response.

Sincerely,

BARRY ALVES
Deputy Attorney General

For    ROB BONTA
Attorney General

SA2018302101
35949418.docx

OMB No. 1140-0094 (09/30/2023)

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Prevent All Cigarette Trafficking (PACT) Act
## Registration Form

Any person who sells, transfers, or ships for profit cigarettes or smokeless tobacco in interstate commerce, whereby such cigarettes or smokeless tobacco are shipped into a State, locality, or Indian country of an Indian tribe taxing the sale or use of cigarettes or smokeless tobacco or who advertises or offers cigarettes or smokeless tobacco for such a sale, transfer, or shipment shall first file with the Attorney General of the United States and with the tobacco tax administrators of the State and place into which such shipment is made, advertised, or offer is disseminated.

## Section I - Principal Business Information

| 1. Name of Person *(See Definition #1)* | 2. Name of Person (If an Individual) *(Last, first, middle)* | | |
|---|---|---|---|
| | Last | First | Middle |

| 3. Trade Name(s) | 4. Principal E-Mail Address |
|---|---|
| | |

| 5. Address of Principal Place of Business | 6. Telephone Number for Principal Place of Business | 7. Principal Website Address |
|---|---|---|
| | | |

## Section II - Additional Places of Business

| 8a. Name of Additional Place of Business | 9a. Website Address for Additional Place of Business | |
|---|---|---|

| 10. Address of Additional Place of Business a. Street Address | City | State | Zip Code | 11a. Telephone Number at Additional Location |
|---|---|---|---|---|

| 8b. Name of Additional Place of Business | 9b. Website Address for Additional Place of Business | |
|---|---|---|

| 10. Address of Additional Place of Business b. Street Address | City | State | Zip Code | 11b. Telephone Number at Additional Location |
|---|---|---|---|---|

| 8c. Name of Additional Place of Business | 9c. Website Address for Additional Place of Business | |
|---|---|---|

| 10. Address of Additional Place of Business c. Street Address | City | State | Zip Code | 11c. Telephone Number at Additional Location |
|---|---|---|---|---|

## Section III - Agent Authorized to Accept Service

| 12a. Name of Agent Authorized to Accept Service on Behalf of the Person *(Person or Business Entity)* | |
|---|---|

| 13a. Address of Authorized Agent | 14a. Telephone Number of Authorized Agent |
|---|---|

| 12b. Name of Agent Authorized to Accept Service on Behalf of the Person *(Person or Business Entity)* | |
|---|---|

| 13b. Address of Authorized Agent | 14b. Telephone Number of Authorized Agent |
|---|---|

**NOTE: In addition to registering with the Bureau of Alcohol, Tobacco, Firearms and Explosives, the PACT Act also requires a person to register with each State tobacco tax administrator in which the person sells and/or advertises cigarettes and/or smokeless tobacco products.**

ATF Form 5070.1
Revised October 2020

## Definitions

1. **Person** - The term "person" means an individual, corporation, company, association, firm, partnership, society, State government, local government, Indian tribal government, governmental organization of such a government, or joint stock company.

2. **Indian Tribe** - The term "Indian tribe," "tribe," or "tribal," refers to an Indian tribe as defined in section 4(e) of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450b(e)) or as listed pursuant to section 104 of the Federally Recognized Indian Tribe List Act of 1994 (25 U.S.C. 479a-l).

## Instructions

1. Provide the name of the "person" registering. Please refer to the definition of "person" provided.

2. Provide the "Name of the Person" if an individual is the registrant.

3. Provide all trade names used by the Person.

4. Provide the principal e-mail associated with the Person.

5. Provide the address of the principal place of business.

6. Provide the telephone number for the principal place of business.

7. Provide the website for the principal place of business.

8a. Provide the name of the additional place of business (additional blocks are provided if needed).

9a. Provide the website address for the additional place of business (if any).

10a. Provide the address of the additional place of business.

11a. Provide the telephone number of the additional place of business.

12a. Name of the agent authorized to accept service on behalf of the person. This can be an individual or a business entity. The person must provide an agent or agents authorized to accept service in each of the states where the person does business. If there are multiple authorized agents, the person must list an authorized agent for each state in which the person does business. Please indicate which state(s) each agent covers in parentheses after their name. *Ex. Authorized Agent Inc., (New York)*. Additional blocks are provided if needed.

13a. Provide the address of the agent authorized to accept service.

14a. Provide the telephone number of the agent authorized to accept service.

NOTICE: Please use ATF Form 5070.1A, to report additional information needed to complete your registration in accordance with the PACT Act. ATF Form 5070.1A can be found at www.atf.gov under the Alcohol and Tobacco.

## Privacy Act Notice

1. **Authority:** Public Law No. 111-154, 15 U.S.C. § 376(a) (1) authorizes the collection of this information.
2. **Purpose:** ATF will use this information to create a database of all registered delivery sellers of tobacco products.
3. **Routine Uses:** The information will be used by ATF personnel and contractors, state and local government or other agents who need the information to assist in activities related to criminal investigations or certain regulatory enforcement activities. Additionally, ATF may share the information upon request with other law enforcement or other government agencies, as necessary to investigate and prosecute crimes, or pursuant to its published Privacy Act system of records notice.
4. **Disclosure:** Information requested shall be disclosed in accordance with 15 U.S.C. § 376(a) (1) "[a]ny person who sells, transfers, or ships for profit cigarettes or smokeless tobacco in interstate commerce, whereby such cigarettes or smokeless tobacco are shipped into a State, locality, or Indian country of an Indian tribe taxing the sale or use of cigarettes or smokeless tobacco, or who advertises or offers cigarettes or smokeless tobacco for such a sale, transfer, or shipment."

## Paperwork Reduction Act Notice

The information required on this form is in accordance with the Paperwork Reduction Act of 1995. The purpose of the information is to register delivery sellers of cigarettes and/or smokeless tobacco products with the Attorney General in order to legally continue to sell and/or advertise these tobacco products. The information is mandatory as required by P.L. 111-154.

The estimated average burden associated with this collection is 1 hour per respondent or recordkeeper, depending on individual circumstances. Comments about the accuracy of this burden estimate and suggestions for reducing it should be directed to Reports Management Officer, Document Services, Bureau of Alcohol, Tobacco, Firearms and Explosives, Washington, DC 20226.

An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

ATF Form 5070.1
Revised October 2020

# EXHIBIT B



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

Washington, DC 20226
www.atf.gov

August 15, 2022

Administrator, cigarette distribution business
29 Palms Band of Mission Indians
46-200 Harrison Place
Coachella, CA 92236

Dear Administrator:

The California Department of Justice contacted the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") on July 28, 2022, to advise that it has information that 29 Palms Band of Mission Indians (29 Palms) is in violation of the Prevent All Cigarette Trafficking Act ("PACT Act"), 15 U.S.C § 375 *et seq*. Specifically, 29 Palms does not hold a Federal manufacturer's permit issued by the Alcohol and Tobacco Tax and Trade Bureau (TTB), nor is it registered with the California Department of Tax and Fee Administration (CDTFA) as a permitted manufacturer, importer, or distributor of cigarettes in the State of California. Third-party shipping records show that in 2022, 29 Palms received millions of out-of-state cigarettes and sold 29 Palms-stamped cigarettes to non-tribal members on a reservation elsewhere in California. Despite these business activities, 29 Palms failed to submit its PACT Act registration as well as the required monthly reports and invoices to CDTFA in violation of 15 U.S.C. § 376(a)(1) and (2). Additionally, you are allegedly engaged in the sale and distribution of cigarettes or other tobacco products to unlicensed persons operating within the State of California, which may be considered delivery sales and you are failing to comply with and other payment obligations and legal requirements relating to the sale or delivery of the cigarettes. *See* 15 U.S.C. § 376a(a)(1)-(4).

As such, the California Department of Justice has nominated, and ATF is considering placing, your business on the PACT Act Non-Compliance list pursuant to 15 U.S.C. § 376a(e). Placement on the list would bar common carriers from delivering cigarettes and smokeless tobacco for you. 15 U.S.C. § 376a(e)(2).

The PACT Act, which became effective on June 29, 2010, requires anyone engaged in such business activity to first file with the Attorney General of the United States, register with the State tobacco tax administrator of the States in which they do business, provide agents for service of process in the States in which they do business, and provide detailed reports to the tax administrators of these States regarding delivery sales into the States that enable the State tax administrators to collect tobacco taxes due from their residents. The Act also provides that the Attorney General will establish a list of delivery sellers who fail to comply with the provisions of the PACT Act.

-2-

Administrator, cigarette distribution business
29 Palms Band of Mission Indians

The PACT Act provides, in pertinent part:

**15 U.S.C. § 375. Definitions**

(9)  Interstate Commerce

(A)     The term "interstate commerce" means commerce between a State and any place outside
the State, commerce between a State and any Indian country in the State, or commerce
between points in the same State but through any place outside the State or through any
Indian country.

**15 U.S.C. § 376.  Reports to State tax administrator**

a.     Contents.  Any person who sells, transfers, or ships for profit cigarettes or smokeless
tobacco in interstate commerce, whereby such cigarettes or smokeless tobacco are
shipped into a State, locality, or Indian country of an Indian tribe taxing the sale or use of
cigarettes or smokeless tobacco or who advertises or offers cigarettes or smokeless
tobacco for such sale, transfer, or shipment, shall–

(1)     first file with the Attorney General of the United States and with the tobacco tax
administrators of the State and place into which such shipment is made or in
which such advertisement or offer is disseminated a statement setting forth his
name and trade name (if any), and the… name, address, and telephone number of
an agent in the State authorized to accept service on behalf of the person;

(2)     no later than the 10th day of each calendar month, file with the tobacco tax
administrator of the State into which such shipment is made, a memorandum or a
copy of the invoice covering each and every shipment of cigarettes or smokeless
tobacco made during the previous calendar month into such State; the
memorandum or invoice in each case to include the name and address of the
memorandum or invoice in each case to include the name and address of the
person to whom the shipment was made, the brand, the quantity thereof, and the
name, address, and phone number of the person delivering the shipment to the
recipient on behalf of the delivery seller, with all invoice or memoranda
information relating to specific customers to be organized by city or town and by
zip code;

As stated above, the information provided to ATF by the California Department of Justice
indicates that you are delivering tobacco to non-tribal members on a reservation elsewhere in
California without registering with the Attorney General of the United States or the CDTFA, and
without filing PACT Act reports with the State of California.  Therefore, you are failing to
comply with 15 U.S.C. § 376(a)(1) and (2) of the PACT Act.  Additionally, you are allegedly
engaged in the sale and distribution of cigarettes or other tobacco products to unlicensed persons
operating within the State of California, which may be considered delivery sales, and which

-3-

Administrator, cigarette distribution business
29 Palms Band of Mission Indians

requires compliance with certain shipping and recordkeeping requirements, as well as all State, local, tribal, and other laws generally applicable to sales of cigarettes or smokeless tobacco as if the delivery sales occurred entirely within the specific State and place, including laws imposing excise taxes, licensing and tax-stamping requirements, restrictions on sales to minors, and other payment obligations and legal requirements relating to the sale or delivery of the cigarettes. *See* 15 U.S.C. § 376a(a)(1)-(4).

Prior to formally nominating 29 Palms for inclusion on the PACT Act Non-Compliance list, the California Department of Justice contacted you on February 23, 2022, to request that you register with, and report your sales activities to, the CDTFA under the PACT Act, but you did not respond or otherwise take any of the requested actions. Accordingly, ATF is considering placing 29 Palms on the non-compliant list. Placement on this list may affect your business' ability to deliver cigarettes and smokeless tobacco. The PACT Act prohibits common carriers from delivering cigarettes and smokeless tobacco if the sender is on the non-compliant list. 15 U.S.C. § 376a(e)(2).

If you believe that ATF has erroneously sent you this letter, you have the right to send a formal written challenge and explanation to ATF within 30 days from the date on this letter. If we do not receive a response from you within 30 days, we will place your business on the non-compliant list. In your written challenge and explanation, please provide the specific reasons why you should not be placed on the non-compliant list.

Please address your written challenge and explanation to:

Attn: Moliki Alexander
Bureau of Alcohol, Tobacco, Firearms and Explosives
90 K Street NE, Suite 250
Washington, D.C. 20226

ATF will then have 30 days to investigate and respond to your challenge and explanation. If you have any questions, or would like to discuss this matter, please contact ATF Associate Chief Counsel Jeffrey A. Cohen at 202-302-4885.

Sincerely yours,

*James M. Watson*

James M. Watson
Chief, Operational Intelligence Division

# EXHIBIT C



**Barnhouse**
**Keegan**
**Solimon**
**& West** LLP

*Attorneys at Law*

dbarnhouse@indiancountrylaw.com
505.938-9132 direct line

October 14, 2022

**_VIA ELECTRONIC MAIL_**

Attn.: Moliki Alexander
Bureau of Alcohol, Tobacco, Firearms and Explosives
90 K Street NE Suite 250
Washington, DC 20226
Email: Moliki.Alexander@atf.gov

RE:  Twenty-Nine Palms Band of Mission Indians

Dear Moliki:

The Twenty-Nine Palms Band of Mission Indians ("Tribe") has asked that our firm respond to ATF's August 15, 2022, letter stating that ATF is considering placing the Tribe on the PACT Act Non-Complaint list in response to a nomination letter received from the State of California for an alleged violation of 15 U.S.C. §§ 376(a)(1) and (2).

As explained further in the attached letter we are sending today to the California Attorney General's office, despite California's representation in its nomination letter that it had contacted the Tribe to resolve the issues, the Tribe never received that communication. The Tribe was first made aware of California's allegations when ATF contacted the Tribe on August 15, 2022. As such, the Tribe has requested that California withdraw its nomination letter and attempt to resolve its allegations directly with the Tribe.

I trust that while the Tribe and California work directly with each other to resolve these matters, your office will not take action to place the Tribe on the Non-Compliant list. If that is not the case, or if you have any additional questions or concerns, please contact me directly.

Sincerely,

*/s/ Randolph Barnhouse*
Randolph Barnhouse

Enclosure (1)

# ATTACHMENT



dbarnhouse@indiancountrylaw.com
505.938-9132 direct line

October 14, 2022

**_VIA ELECTRONIC MAIL_**

California Department of Justice
Attn.:  Byron M. Miller, Deputy Attorney General
        Barry Alves, Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA 94244-2550
Email: Byron.Miller@doj.ca.gov
        Barry.Alves@doj.ca.gov

RE:  Twenty-Nine Palms Band of Mission Indians

Dear Byron and Barry:

The Twenty-Nine Palms Band of Mission Indians ("Tribe") has asked me to respond to your letter to the Tribe dated February 23, 2022, ("Consultation Letter") and your letter to the United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") dated July 28, 2022, ("Nomination Letter").

Initially, I note that the Tribe has no record that it received the Consultation Letter until it was provided to the Tribe by ATF on August 15, 2022. The Certified Mail Receipt and Return Receipt submitted as Exhibit C to the Nomination Letter indicate "Mario S Delgado" signed for the letter, but no one by that name works or has worked for or on behalf of the Tribe. In reviewing the Certified Mail Receipt and Return Receipt, it appears that rather than a signature, the name "Mario S Delgado" is printed on the signature line in handwriting that is similar to the handwriting located on the address portion of the receipts. This indicates that the same individual who filled out the receipts also completed the signature portion of the Return Receipt.

In any event, now that the Tribe has received the Consultation Letter, it requests that you withdraw the Nomination Letter and engage with the Tribe on these issues to determine whether they can be amicably resolved without the involvement of ATF. In an effort to facilitate that engagement, I provide the following initial response to the issues raised in the Nomination Letter.

The basis for your request to have ATF place the Tribe on the PACT Act noncompliant list is an alleged violation of 15 U.S.C. § 376(a)(1) and (2) for failing to submit a PACT

Byron M. Miller
California Department of Justice
October 14, 2022
Page 2 of 2

Act registration and monthly reports. For the reasons outlined below, the Tribe's activities are not subject to the requirements of Section 376(a)(1) and (2) because they do not fall within the statute's definition of interstate commerce. The PACT Act defines "interstate commerce" as 1) "commerce between a State and any place outside the State," 2) "commerce between a State and any Indian Country in the State," or 3) "commerce between points in the same State but through any place outside the State or through any Indian country." 15 U.S.C. § 375(9)(A).

The Nomination Letter alleges that cigarettes bearing the Tribe's tax stamp have been sold on an unnamed reservation "elsewhere in California." Without additional details, it is unclear what specific conduct you allege the Tribe engaged in that would fall within the PACT Act's definition of "interstate commerce." Indeed, even if you allege that the Tribe distributed tobacco products to a Tribe on its reservation within the exterior boundaries of California, such commerce would not fall within the PACT Act's definition of "interstate commerce."

If Congress wished to subject inter-tribal commerce within the exterior boundaries of a single state to the PACT Act it could have done so by including a fourth definition of "interstate commerce" to include "commerce between any Indian country within the same State." But Congress did not do so, instead landing on the three carefully crafted categories of interstate commerce listed in 15 U.S.C. § 375(9)(A). Importantly, Congress' decision to exclude inter-tribal commerce between reservations in the same state from the definition of "interstate commerce" is not an aberration. It is the recognition of the federal government's preemptive control and federal oversight of intertribal trade to the exclusion of the states and the historical federal-tribal relationship protecting Indian tribes from state regulation. Indeed, Congress specifically included these protections in Section 5 of the PACT Act which unequivocally established that nothing in the Act shall be construed to affect "any Federal law, including Federal common law and treaties, regarding State jurisdiction, or lack thereof, over any tribe, tribal members, tribal enterprises, tribal reservations, or other lands held by the United States in trust for one or more Indian tribes."

The Tribe recognizes that the Consultation and Nomination Letters raise important issues on which the Tribe and State of California should engage to determine whether they can be amicably resolved without the involvement of ATF. Once you have had an opportunity to consider the Tribe's position, please contact me to discuss the issues further and address how best to work cooperatively to resolve the State's concerns.

Sincerely,

*/s/ Randolph Barnhouse*
Randolph Barnhouse

# EXHIBIT D

**From:** Cohen, Jeffrey A. (ATF) <Jeffrey.Cohen@atf.gov>
**Sent:** Wednesday, April 26, 2023 5:21 PM
**To:** Byron Miller <Byron.Miller@doj.ca.gov>
**Cc:** Alexander, Moliki (ATF) <Moliki.Alexander@atf.gov>; James Hart <James.Hart@doj.ca.gov>; Jesse D. Heibel <JHeibel@indiancountrylaw.com>; Dolph Barnhouse <DBarnhouse@indiancountrylaw.com>
**Subject:** Re: [EXTERNAL] RE: 29 Palms PACT Act Nomination

Thanks Byron.

Sent from my iPhone


On Apr 26, 2023, at 7:13 PM, Byron Miller <Byron.Miller@doj.ca.gov> wrote:


Dear Ms. Alexander,

We have confirmed that the 29 Palms Band of Mission Indians has provided the PACT Act reports we requested. We would therefore like to withdraw our July 28, 2022 request for 29 Palms to be added to the PACT Act list of unregistered or noncompliant delivery sellers.

Best regards,

Byron

**From:** Byron Miller
**Sent:** Thursday, July 28, 2022 3:43 PM
**To:** 'Moliki.Alexander@usdoj.gov' <Moliki.Alexander@usdoj.gov>
**Cc:** 'Jeffrey.A.Cohen@usdoj.gov' <Jeffrey.A.Cohen@usdoj.gov>; James Hart <James.Hart@doj.ca.gov>
**Subject:** 29 Palms PACT Act Nomination

Good afternoon, Ms. Alexander,

Please see California's attached letter nominating the 29 Palms Band of Mission Indians to the PACT Act list of unregistered or noncompliant delivery sellers.

Kind regards,
Byron

--
Byron Miller

1

Deputy Attorney General
Office of the California Attorney General
1300 I Street, 15th Floor
Sacramento, CA 95814
tel: (916) 210-7353
fax: (916) 324-5205

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

# EXHIBIT E



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

---

Washington, DC 20226
www.atf.gov

June 5, 2023

Administrator, Cigarette Distribution Business
29 Palms Band of Mission Indians
46-200 Harrison Place
Coachella, CA 92236

Dear Administrator:

The California Department of Justice contacted the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") on July 28, 2022, to advise that it has information that 29 Palms Band of Mission Indians ("29 Palms") is in violation of the Prevent All Cigarette Trafficking Act ("PACT Act"), 15 U.S.C § 375 *et seq*.  On August 15, 2022, ATF sent 29 Palms a letter stating that ATF is considering placing the Tribe on the PACT Act Non-Complaint list in response to a nomination letter received from the State of California for an alleged violation of the PACT Act. On October 14, 2022, the law firm of Keegan, Barnhouse, Solomon and West sent a letter to ATF responding to the California allegations. We have been informed that 29 Palms recently began sending PACT Act required reports to California.  However, 29 Palms continues to engage in the sale and distribution of cigarettes or smokeless tobacco products to unlicensed persons operating within the State of California, what are "delivery sales," and you are failing to comply with payment obligations and legal regulatory requirements relating to the sale or delivery of the cigarettes and smokeless tobacco in violation of 15 U.S.C. § 376a(a)(3) and (4). Accordingly, in light of the hundreds of past and present violations of the PACT Act spanning several years, ATF is placing 29 Palms on the PACT Act non-compliant list effective July 20, 2023.

Based on the information we have been provided, 29 Palms does not hold a Federal manufacturers  or importer's permit issued by the Alcohol and Tobacco Tax and Trade Bureau ("TTB"). 29 Palms is not licensed to distribute tobacco in California, is not a licensed New York State stamping agent and is not a Customs Bonded Warehouse ("CBW") or Foreign Trade Zone ("FTZ"). 29 Palms cannot lawfully possess Federally untaxed tobacco under the Internal Revenue Code as it is not a TTB permittee, CBW or FTZ. *See* 26 U.S.C. § 5704 (c).  Similarly, we believe 29 Palms cannot possess tobacco that is in bond as that term is used under the United States Customs laws. In bond shipments are those that are stored or shipped through the United States but have not had taxes and applicable duties paid and have not cleared  Customs. In bond shipments must be shipped to other CBWs or FTZs or exported.  Solely for the sake of this letter, we will  presume that these shipments are Federally tax paid and have been lawfully removed from Customs' custody.

-2-

Administrator, Cigarette Distribution Business
29 Palms Band of Mission Indians

Analysis of third-party shipping records, PACT ACT reports that you and your law firm supplied to California and communications with attorneys representing Native Wholesale Supply that were sent to your law firm establish that from 2022-2023, 29 Palms purchased millions of untaxed, unstamped cigarettes and significant quantities of untaxed, smokeless tobacco products in the State of New York where it is not a licensed stamping agent. 29 Palms shipped these tobacco products across the United States into California. 29 Palms then shipped and sold unstamped cigarettes and untaxed smokeless tobacco to non-tribal members, who are not licensed on their reservation or elsewhere in California to possess and sell untaxed cigarettes or untaxed smokeless tobacco, in violation of California law and the CCTA.

The PACT Act requires that a manufacturer, distributor, wholesaler, or retailer comply with Federal, State and Tribal law in order to be "lawfully operating" such that it may avoid the PACT Act's definition of "consumer." Alleged compliance solely with Tribal law does not satisfy this criterion.

Distributors that deprive California of tobacco excise taxes by distributing untaxed cigarettes and untaxed smokeless tobacco to non-Tribal members in violation of California law are not "lawfully operating." Moreover, distributors that possess and distribute untaxed, unstamped cigarettes and untaxed smokeless tobacco in violation of the CCTA are not "lawfully operating." Simply because a distributor may possess the appropriate Tribal license, in limited instances, does not exempt them from compliance with applicable local, state, and Federal law and regulations. Moreover, records associated with your sales suggest that many of these sales are to entities on Tribal reservations that are not within any Tribal tobacco regulatory scheme and/or not casinos. As a result, sales to persons or entities in California that are not in compliance with California and Federal law are presumptively "delivery sales" to "consumers" under the PACT Act. *See City of New York v. Hatu,* 2019 U.S. Dist. LEXIS 91576 at * 46-47 (S.D.N.Y. 2019) (delivery seller must comply with the tobacco laws, including the tax laws of the State into which the products of a delivery sale are physically delivered). The Tribal retailers are unlicensed by the State of California, making them ineligible to possess and/or sell unstamped, untaxed, cigarettes and untaxed smokeless tobacco and thus not "lawfully operating."

Since these delivery sales of untaxed tobacco are in violation of applicable State and Federal law, these sales are in violation of 15 U.S.C. § 376a(a)(3) and (4) which requires that all delivery sales comply with State, local, Tribal laws applicable to the sales of cigarettes and smokeless tobacco in the State or locality.

In a recent federal case, *Big Sandy Rancheria Enterprises v. Bonta,* 1 F.4th 710 (9th Cir. 2021), the Ninth Circuit Court of Appeals affirmed the decision of the Eastern District of California in *Big Sandy Rancheria Enterprises v. Beccera,* 395 F.Supp. 3d 1314 (2019). The Ninth Circuit held that intertribal sales "made outside the tribal enterprise's reservation are 'off reservation' activity subject to non-discriminatory state laws of general application." *Bonta,* 1 F.4th at 729. Since the sales were deemed "off reservation," the Court found that the district court properly declined to

-3-

Administrator, Cigarette Distribution Business
29 Palms Band of Mission Indians

apply the *Bracker* balancing test because Big Sandy did not allege that California was regulating its transactions with non-Indians on its own reservation. *Id.* *See Wagnon v. Prairie Band Potawatomi Nation*, 546 U.S. 95, 112-113 (2005) (balancing interests under *Bracker* where the regulated activity is "off-reservation" is "inconsistent with the special geographic sovereignty concerns that gave rise to the test"). Here, 29 Palms' intertribal wholesale cigarette sales to the unlicensed Tribal Retailers are "off reservation" activity that remain subject to California's non-discriminatory licensing and excise tax statutes.

The potential argument that 29 Palms' cigarettes travel directly from their reservation to the Indian Country of the Tribal Retailers and thus do not travel in "interstate commerce" is similarly unavailing. Initially, Congress did not require that delivery sales must be in interstate commerce. *See* 15 U.S.C. §§ 375 (5) (A) and 376a (no interstate commerce requirement for delivery sales). *See City of New York v. Hatu*, 2019 U.S. Dist. LEXIS 91576 at * 48 (same). ATF has made clear since the passage of the PACT Act in 2010 that shipments from separate Native American Tribes traveling through a State destined for another Tribe in that State are in interstate commerce under the PACT Act and Native American distributors must comply with pertinent State laws. *See New York v. Mtn. Tobacco*, 2016 U.S. Dist. LEXIS 95329 at * 24 (E.D.N.Y. 2016) (ATF open letter to Indian Tribes shortly after passage of PACT Act Stated that transportation between two separate reservations is in interstate commerce and ATF placed King Mountain, a Native American manufacturer on the Non-Compliant list for this conduct); *See generally Red Earth LLC. v. United States*, 728 F. Supp. 2d 238 (W.D.N.Y. 2010) (PACT Act applies to Native Americans); *City of New York v. Gordon*, 1 F. Supp. 94, 101 (S.D.N.Y 2013) (City of New York can enforce PACT Act against Native American distributor who shipped untaxed cigarettes into New York City in violation of State and city law); *City of New York v. Wolfpack Tobacco*, 2013 U.S. Dist. LEXIS 129103 at * 9-11 (S.D.N. Y 2013) (PACT Act provisions apply to Seneca Native American distributor shipping cigarettes in violation of various State and federal laws).

Possession or sales of more than 10,000 of these unstamped cigarettes and/or 500 units of untaxed smokeless tobacco in California and New York by 29 Palms and other non-licensees, including possession or sales on a Native American Reservation, is a violation of CCTA, 18 U.S.C. § 2341 *et. seq.* and violates local law. *Matter of HCI Distribution Inc. v. New York State Police 110 A.D. 1297* (Sup. Ct. N.Y 2013*)* (New York Indian Tribe has burden to establish that sale of cigarettes to unlicensed out of State entity is not a New York State taxable event and all out of state sales must be to a duly licensed stamping agent and documented in accordance with New York State law); *See United States v. Baker*, 63 F.3d 1478, 1484-86 (9th Cir. 1995); *United States v. Morrison*, 686 F.3d 94, 96 (2d Cir. 2012); *Ho-Chunk v. Sessions*, 253 F.Supp.2d 303, 305 (D.C. D.C 2017) *affirmed Ho Chunk v. Sessions*, 894 F.3d 365 (D.C. Cir. 2018) (CCTA applies to possession of unstamped cigarettes by Native Americans in violation of State law); *Grey Poplars v. One Million Three Hundred Seventy-One Thousand Assorted Brands of Cigarettes*, 282 F. 3d 1175, 1177-78 (9th Cir. 2002) (distribution of unstamped cigarettes by Native Americans in violation of State law violates the CCTA); *United States v. Gord*, 77 F.3d 1192 (9th Cir. 1996) (CCTA applies to possession of unstamped cigarettes regardless as to whether tax is due at that time). *See also*

-4-

Administrator, Cigarette Distribution Business
29 Palms Band of Mission Indians


*United States v. 4,432 Master Cases of Cigarettes*, 448 F.3d 1168, 1186-89 (9th Cir. 2006) (unlicensed person storing cigarettes in California FTZ, selling domestic status cigarettes, where taxes and duties have been paid, must possess stamped cigarettes regardless of final destination of cigarettes or they are in violation of the CCTA, and distributors must comply with California tobacco laws).

29 Palms' sales of more than 10,000 unstamped, untaxed cigarettes and untaxed smokeless tobacco to the Tribal Retailers violate the CCTA as said sales constitute "dispositions" to non-exempted persons pursuant to the above-referenced definitions. The sales of these cigarettes in violation of the CCTA are sales to "consumers" under the PACT Act since the sales are not in accordance with other legal requirements relating to the sale, distribution, or delivery of cigarettes and/or smokeless tobacco.

Despite these business activities, for several years 29 Palms failed to submit its PACT Act registration as well as the required monthly reports and invoices to CDTFA in violation of 15 U.S.C. § 376(a)(1) and (2). While 29 Palms recently began submitting the required reports and apparently recently registered with California, in light of these other PACT Act violations, this does not mitigate years of prior violations. Critically, 29 Palms continues to engage in the sale and distribution of cigarettes or other tobacco products to unlicensed persons operating within the State of California, which are "delivery sales," and fails to comply with other payment obligations and legal regulatory requirements relating to the sale or delivery of the cigarettes and smokeless tobacco. *See* 15 U.S.C. § 376a(a)(1)-(4).

Accordingly, as noted, in light of hundreds of past and present violations of the PACT Act spanning several years, we are placing 29 Palms on the PACT Act non-compliant list effective July 15, 2023. We note that under the PACT Act, whoever violates this provision is subject to civil penalties including a $5,000 fine for an initial violation and $10,000 for each additional violation. We believe that 29 Palms has engaged in thousands of PACT Act reporting and delivery sales violations during the past five years and is liable for these violations under 15 U.S.C § 377 (b). Additionally, PACT Act violations have criminal penalties and Federal Courts can award damages, equitable relief, or injunctive relief, including the payment of unpaid taxes to the appropriate Federal, State or Tribal Governments.

You may send us correspondence prior to July 20, 2023, setting forth any reasons ATF should consider not placing 29 Palms on the non-compliant list.

-5-

Administrator, Cigarette Distribution Business
29 Palms Band of Mission Indians


Please address any correspondence and explanation to:

Attn: Moliki Alexander
Bureau of Alcohol, Tobacco, Firearms and Explosives
90 K Street NE, Suite 250
Washington, D.C. 20226

If you have any questions, or would like to discuss this matter, please contact ATF Associate
Chief Counsel Jeffrey A. Cohen at 202-302-4885.


Sincerely yours,

*M. J. Brown*

Matthew J. Brown
Acting Chief, Operational Intelligence Division

# EXHIBIT F



**Barnhouse Keegan Solimon & West** LLP
*Attorneys at Law*

dbarnhouse@indiancountrylaw.com
*505.938.9132 direct line*

October 2, 2023

**<u>VIA ELECTRONIC MAIL</u>**

Bureau of Alcohol, Tobacco, Firearms and Explosives
Attn.: Moliki Alexander
90 K Street NE, Suite 250
Washington, D.C. 20226
Email: Moliki.Alexander@atf.gov

*RE: Twenty-Nine Palms Band of Mission Indians*

Dear Ms. Alexander,

The Twenty-Nine Palms Band of Mission Indians ("Tribe") provides this response to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") correspondence dated June 5, 2023 ("ATF's 2023 Nomination Letter")

**I.      Background**

**A.      California DOJ Allegation of Violations of State Law**

On August 15, 2022, ATF wrote to the Tribe sending as an enclosure a copy of a letter sent to ATF by the California DOJ ("California 2022 Nomination Letter").  ATF's cover correspondence indicated that the California Department of Justice ("California DOJ") had nominated the Tribe for placement by ATF on ATF's PACT Act Non-Compliant list.  Specifically, the California 2022 Nomination letter alleged the Tribe was in violation of Section 376(a)(1) and (2) of the PACT Act for failing to submit PACT Act reports to the State of California reporting delivery of tobacco products to tribally owned entities located

Moliki Alexander
Bureau of Alcohol, Tobacco, Firearms and Explosives
October 2, 2023
Page 2 of 18

in Indian Country within the state of California.[1]  The California 2022 Nomination Letter also claimed that the California DOJ had sent correspondence to the Tribe requesting consultation to address these allegations, and claimed that the Tribe had not responded to the California DOJ's request.

In response, the Tribe notified ATF that it never received correspondence from the California DOJ in regard to this matter and indicted that the Tribe would engage in government-to-government consultation with the California DOJ to determine whether the parties could amicably resolve the issues raised in the 2022 Nomination Letter without the involvement of ATF.

The Tribe and California DOJ then worked together to address the issues raised by the California DOJ in its letters to ATF.  As a result of those efforts, the parties agreed that the Tribe would file PACT Act reports as requested by California DOJ, both prospectively and retroactively for periods after January 1, 2022, and in return that the California DOJ would voluntarily withdraw its 2022 Nomination Letter.  The Tribe complied with its commitments to the California DOJ, and on April 26, 2023 the California DOJ withdrew its nomination of the Tribe for placement by ATF on its PACT Act non-compliant list.  <u>Exhibit 1.</u>  Since that time, the Tribe and the California DOJ have worked cooperatively to address all concerns raised by the California DOJ as to the Tribe's

---

[1] Although California's 2022 Nomination Letter also claimed that the Tribe was "allegedly engaged in the sale and distribution of [tobacco products] to unlicensed persons…which may be considered delivery sales" under 15 U.S.C. § 376a(a)(1)-(4).  However, in an earlier letter sent to ATF by the California DOJ on July 28, 2022, to initiate the 2022 Nomination Letter, the California DOJ made no such allegation and California has not raised this allegation during its subsequent government-to-government consultations with the Tribe.

Moliki Alexander
Bureau of Alcohol, Tobacco, Firearms and Explosives
October 2, 2023
Page 3 of 18

tobacco operations, and the California DOJ has not raised any issue or concern with the Tribe as to its business operations or any alleged violation of the State's tobacco laws.

After ATF received the California DOJ's letter withdrawing its nomination of the Tribe for placement on the ATF PACT Act non-compliant list, on April 26, 2023, ATF confirmed its receipt of correspondence confirming California and the Tribe had resolved all issues, and ATF thereafter took no further action based on California's original request. Exhibit 1.

### B.    ATF's Unilateral Interpretation of California Law

Notwithstanding the successful efforts of the Tribe and California to cooperate regarding enforcement of applicable California tobacco laws, and notwithstanding California's recognition of the Tribe's compliance with all requests made to it by the California DOJ, on June 5, 2023, ATF wrote to the Tribe interjecting itself into the Tribe's independent relationship with the State of California.  ATF relies on its decision to threaten this unilateral action to ATF's own interpretation of California's state tobacco laws, as set out in ATF's 2023 Nomination letter.  Specifically, ATF's 2023 Nomination Letter identifies two allegations which it claims are sufficient to allow ATF to place the Tribe on ATF's Non-Compliant List.  Both allegations rely entirely on the application and interpretation of California state law.

First, ATF alleges the Tribe "engage[s] in the sale and distribution of cigarettes or smokeless tobacco products to unlicensed persons operating within the State of California, which are 'delivery sales,' [while] failing to comply with the payment obligations and legal requirements relating to the sale or delivery of the cigarettes and smokeless

Moliki Alexander
Bureau of Alcohol, Tobacco, Firearms and Explosives
October 2, 2023
Page 4 of 18

tobacco in violation of 15 U.S.C. § 376a(a)3 and (4)."[2]  Second, ATF alleges the Tribe's "sales of more than 10,000 unstamped, untaxed cigarettes and untaxed smokeless tobacco to the Tribal Retailers violate the CCTA -18 U.S.C. § 2341 *et seq* - as said sales constitute 'dispositions' to non-exempted persons[.]"

## II.     Discussion

### A.     ATF has not Identified any Specific Violation of California Law by the Tribe.

As an initial matter, ATF's 2023 Nomination Letter makes only general allegations that the Tribe's sales to on-reservation tribally operated entities violate 15 U.S.C. § 376a(a)3 and (4) because they do not "comply with State, local, Tribal laws applicable to the sales of cigarettes and smokeless tobacco."  While the Letter goes on to make general allegations that the tribally operated entities with which the Tribe conducts business "are not licensed on their reservation or elsewhere in California," the ATF's 2023 Nomination Letter lacks any citation to a single California law that ATF alleges has been violated. Without notice as to what specific State, local, or Tribal laws applicable to the sales of cigarettes and smokeless tobacco the Tribe or its customers are alleged to have violated, the Tribe is unable to respond to ATF's allegations regarding 15 U.S.C. § 376a(a)3 and (4).

---

[2] ATF's 2023 Nomination Letter further alleges that the Tribe sold and shipped unstamped and untaxed cigarettes to "non-tribal members who are not licensed on their reservation."  ATF's 2023 Nomination Letter at 2.  This is not factually accurate and not true.  The Tribe conducts sales exclusively to tribally owned entities that are licensed or otherwise authorized to conduct business on their respective reservations.  Before ATF takes any action against the Tribe based on these unfounded allegations, the Tribe asks that it first provide all factual details that it has supporting its specific alleged non-tribal member customer claims.

Moliki Alexander
Bureau of Alcohol, Tobacco, Firearms and Explosives
October 2, 2023
Page 5 of 18

Moreover, and as discussed above, the Tribe has spent significant time and resources working on, a government-to-government basis, with the California DOJ to ensure that the Tribe's operations do comply with all applicable state laws and has provided all information requested by the California DOJ to facilitate their efforts to combat trafficking of illicit tobacco products.  California has not raised any issues or allegations regarding the Tribe's operations subsequent to the withdrawal of its only nomination sent to ATF on April 26, 2023, which it withdrew on April 26, 2023, and which led ATF to acknowledge its receipt of correspondence confirming California and the Tribe had resolved all issues.  The issues raised in ATF's most recent 2023 Nomination Letter are based on ATF, not California DOJ's, interpretation of California state law.

Given the above, and pursuant to 15 U.S.C. § 376a(e)(E)(iv), the Tribe expects ATF to investigate the claims and issues raised in this letter with the relevant State law enforcement officials – here California DOJ - and provide the findings and results of that investigation, including but not limited to the specific state laws which ATF is alleging are applicable and have been violated by the Tribe, and the facts with supporting documentation that support ATF's determination, so that the Tribe may fully respond to ATF's allegations.

**B.    ATF's 2023 Nomination Letter Violates Pub. L. 111-154, § 5, 15 U.S.C. § 376.**

In Section 5 of the PACT Act, Congress mandates ATF construe the Act so as not to "amend, modify, or otherwise affect" various agreements, laws, and limitations, including but not limited to:

Moliki Alexander
Bureau of Alcohol, Tobacco, Firearms and Explosives
October 2, 2023
Page 6 of 18

1.   Any limitations under Federal or State law, including Federal common law and treaties, on State, local, and tribal tax and regulatory authority with respect to the sale, use, or distribution of cigarettes and smokeless tobacco by or to Indian tribes, tribal members, tribal enterprises, or in Indian country; and

2.   Any Federal law, including Federal common law and treaties, regarding State jurisdiction, or lack thereof, over any tribe, tribal members, tribal enterprises, tribal reservations, or other lands held by the United States in trust for one or more Indian tribes; or

Applicable here, the PACT Act explicitly precludes any interpretation that would expand the regulatory jurisdiction of states over Indian tribes and Indian country.  As explained in more detail below, the positions taken by ATF in the 2023 Nomination Letter do exactly what Congress expressly forbade.

Moreover, Section 5(e) requires that any "ambiguity between the language of this section or its application and any other provision of this Act shall be resolved in favor of this section."  In short, Congress explicitly stated that nothing in the Act may be construed to amend, modify, or otherwise affect any Federal or State limitations on State tax and regulatory authority with respect to the sale, use, or distribution of cigarettes and smokeless tobacco "by or to Indian tribes, tribal members, tribal enterprises, or in Indian country."  Pub. L. 111-154 § 5(a)(3).  Although the Tribe believes that the legal matters here are not ambiguous and do not support ATF's threatened action, to the extent ATF disagrees it is relying on its ambiguous interpretation of unambiguous law.

For example, ATF asserts "[t]he PACT Act requires that a manufacturer, distributor, wholesaler, or retailer comply with Federal, State and Tribal law in order to be 'lawfully operating' such that it may avoid the PACT Act's definition of 'consumer.'   Alleged

Moliki Alexander
Bureau of Alcohol, Tobacco, Firearms and Explosives
October 2, 2023
Page 7 of 18

compliance solely with Tribal law does not satisfy this criterion." 2023 Nomination Letter

at 2. ATF's position that tribally owned entities located in Indian Country must comply

with all laws of the state within which they are located is, simply put, contrary to

fundamental constitutional principles and the basic tenets of federal Indian law which

bar state jurisdiction over tribe's on-reservation conduct.

ATF also apparently argues that there is ambiguity in the PACT Act's definition

of "interstate commerce." As discussed below, this term is not ambiguous: the plain

language of the statute cannot be read to include intrastate commerce that begins

and ends on Indian Country located within the same state. Indeed, the only way by

which ATF could get to a definition of "interstate commerce" which includes

reservation-to-reservation trade in the same state is to read the Act's language as

ambiguous, which it is not.

In the 2023 Nomination Letter, ATF fails to acknowledge, let alone attempt to

resolve, ambiguities in the Act in accordance with Congress' direction in Section 5. Thus,

in addition to ignoring the exclusions listed in Section 5 when ATF attempts to modify the

limitations under Federal or State law on California's jurisdiction, tax, and regulatory

authority with respect to the sale, use, or distribution of cigarettes and smokeless tobacco

by or to Indian tribes and tribal enterprises in Indian country, the positions taken by ATF

in the 2023 Nomination Letter also violate Section 5(e) of the Act.

Moliki Alexander
Bureau of Alcohol, Tobacco, Firearms and Explosives
October 2, 2023
Page 8 of 18

## C.   The PACT Act Does Not Apply to The Tribe's Sales Because Those Sales Do Not Occur in Interstate Commerce.

The PACT Act imposes requirements on persons who sell, transfer, or ship cigarettes or smokeless tobacco in interstate commerce.  15 U.S.C. § 376.  Specifically, the PACT Act applies to:

> Any person who sells, transfers, or ships for profit cigarettes or smokeless tobacco **in interstate commerce**, whereby such cigarettes or smokeless tobacco are shipped into a State, locality or Indian country of an Indian tribe taxing the sale or use of cigarettes or smokeless tobacco or who advertises or offers cigarettes or smokeless tobacco for such a sale, transfer, or shipment ....

15 U.S.C. § 376 (a) (emphasis added).  The PACT Act defines "interstate commerce" as commerce between:

i.   "a State and any place outside the State";

ii.   "a State and any Indian Country in the State";

iii.   "points in the same State but through any place outside the State"; or

iv.   "points in the same State but...through any Indian country."

15 U.S.C. § 375(10)(A).

A plain reading of the Act's definition of "interstate commerce" does not include commerce between two points of Indian country located within the same State.  That is because such commerce is intrastate, not interstate.  If Congress wished to subject inter-tribal commerce within the exterior boundaries of a single state to the PACT Act it could have done so by including a fourth definition of "interstate commerce" to include "commerce between any Indian country within the same State."  But Congress did not do

Moliki Alexander
Bureau of Alcohol, Tobacco, Firearms and Explosives
October 2, 2023
Page 9 of 18

so, instead landing on the carefully crafted categories of interstate commerce listed in 15 U.S.C. § 375(10)(A).

Congress' decision to exclude inter-tribal commerce between reservations in the same state from the definition of "interstate commerce" is not an aberration.  It is instead congressional recognition of (1) the federal government's preemptive control and federal oversight of intertribal trade to the exclusion of the states; and (2) the historical federal-tribal relationship protecting Indian tribes from state regulation.  Indeed, Congress specifically included these protections in Section 5 of the PACT Act which legislatively mandates that nothing in the Act shall be construed to affect "any Federal law, including Federal common law and treaties, regarding State jurisdiction, or lack thereof, over any tribe, tribal members, tribal enterprises, tribal reservations, or other lands held by the United States in trust for one or more Indian tribes."

In short, the Tribe's sales to its tribally owned customers operating on their own tribal lands are not in "interstate commerce" (as defined by the PACT Act or otherwise) for the simple reason that all such commerce is *intrastate* commerce which begins in Indian Country and ends in Indian Country within the same state.  As such, ATF cannot place the Tribe on ATF's Non-Compliant List without itself violating the PACT Act.

### D. The Tribe's Sales Do Not Violate 15 U.S.C. § 376a(a)(3) or (4) Because California's Laws Regarding Taxation and Licensing Do Not Apply.

#### i. Under California law, Taxes Are Not Due on the Tribe's Sales.

Without citation to any provision of California law, ATF's 2023 Nomination Letter alleges that the Tribe's sale of tobacco products (which have not been taxed by the state)

Moliki Alexander
Bureau of Alcohol, Tobacco, Firearms and Explosives
October 2, 2023
Page 10 of 18

"deprives[s] California of tobacco excise taxes" and "is in violation of California law[.]" ATF 2023 Nomination Letter at 2. ATF's interpretation of California's tobacco taxation laws is incorrect.

Despite months of government-to-government consultation, neither the California Department of Tax and Fee Administration ("CDTFA") nor the California DOJ have taken the position that the state's excise tax or tax stamps are due or required for the Tribe's sales to its tribally owned customers operating on their own reservations within the exterior boundaries of the State of California. Despite the state's position as to the lack of a tax assessment on such sales, in ATF's 2023 Nomination Letter ATF applies its own (incorrect) reading of California's tobacco laws as a basis to support its desire to place the Tribe on ATF's Non-Compliant List.

Initially, ATF's assertion that under California law no Tribe may possess or sell cigarettes that do not have the state's tax stamp runs counter to guidance issued by the CDTFA. ATF's assertion also disregards the collect and remit framework California has implemented, and the United States Supreme Court has endorsed, that allows state-tax-free sales of cigarettes to tribal members on their reservation.

Under California law, the state taxes the "distribution" of cigarettes but recognizes that there are some "distributions" to which the state's tax does not apply. See, Cigarette and Tobacco Products Tax Law, Section 30108(a). These cigarettes are considered "untaxed tobacco products" under Section 30005.5 as they have "not yet been distributed in a manner that results in a tax liability under [state law.]" Under California law, when the distributor is untaxable (as is the case with tribal businesses), the taxes fall on the

consuming purchasers, and a collection and remittance requirement is imposed. Put another way, an untaxable distributor is not required to pre-collect taxes. Instead, collection of the taxes occurs "at the time of making the sale or accepting the order or, if the purchaser is not then obligated to pay the tax with respect to his or her distribution of the cigarettes or tobacco products, at the time the purchaser becomes so obligated[.]" Cal. Rev. & Tax. Code § 30108(a).

Where both the distributor and retailer are untaxable, as is the case when both entities are either federally recognized Indian tribes or tribally owned entities, the distributor is not required to collect and remit cigarette and tobacco product taxes from taxable consumers. Instead, to the extent taxable consumers (i.e., non-Native American purchasers) purchase cigarettes and tobacco products which have not been taxed, the consumers pay the tax, and the retailers must collect the tax and remit it to the State. Accordingly, under California law, the Tribe is not required to collect any state taxes for its sales to tribally owned entitles located in Indian Country. *See* Cal. Dept. of Tax and Fee Admin., Publication 146 at 24 (Oct. 2020):

> A Native American retailer in California who buys untaxed cigarettes without a California tax stamp, or buys untaxed tobacco products, and sells them to non-Native Americans in Indian country is required to collect the cigarette and tobacco products tax from those purchasers and pay the tax to the CDTFA. If the Native American retailer does not collect and pay the tax due, the non-Native American purchaser is ultimately liable for the tax. Non-Native Americans who purchase cigarettes without California tax stamps, or purchase untaxed tobacco products, owe the cigarette and tobacco products tax. The non-Native American must register with the CDTFA and pay applicable California excise tax.

This collect and remit framework to facilitate the collection of a validly assessed state tax for on-reservation sales to non-members was upheld by the United States

Moliki Alexander
Bureau of Alcohol, Tobacco, Firearms and Explosives
October 2, 2023
Page 12 of 18

Supreme Court in *California State Bd. of Equalization v. Chemehuevi Indian Tribe*, 474

U.S. 9, 11-12 (1985) ( "the entire California statutory scheme … evidences an intent to

impose on the Tribe [selling at retail] such a 'pass and collect' requirement. We hold that

the legal incidence of California's cigarette tax falls on the non-Indian consumers of

cigarettes purchased from [the Tribe's] smoke shop and has the right to require [the Tribe]

to collect the tax on [the State's] behalf.").

California's statutory system of collecting its excise tax through a collect-and-remit

framework, which allows tribal retailers to possess and sell cigarettes which have not

been taxed at the state level, not only facilitates the required tax-free sales to tribal

members as recognized by the Supreme Court, but also rebuts ATF's baseless assertion

that the Tribe's sales somehow "deprive California of tobacco excise taxes."

While some states have elected to adopt other regulatory schemes to facilitate

the ability of federally recognized Indian tribes to sell non-state taxed tobacco products

to their members, California has adopted a collect a remit framework as it is entitled to

do.[3] ATF cannot unilaterally supplant its own taxing scheme on California here.

California's own legislatively adopted method, as applied and endorsed by the United

States Supreme Court in the *Chemehuevi* case, does not require tribal retailers to

---

[3] For example, New York has adopted a voucher system where taxes are required to be pre-paid on tobacco products sold to tribes, and distributors may submit vouchers to the state for tax refund for distributors to recoup pre-paid taxes on sales (i.e., sales to tribal members) which are ultimately untaxable under federal law. *See, Dep't of Tax'n and Fin. of N. Y. v. Milhelm Attea & Bros.*, 512 U.S. 61 (1994). California law does not provide, nor need to provide, a similar rebate program which simultaneously require all tobacco products sold to a tribe to be taxed while recognizing and facilitating state tax-free sales to tribal members. The existing California mechanism satisfies this requirement, but the ATF demanded modification to the state system does not.

Moliki Alexander
Bureau of Alcohol, Tobacco, Firearms and Explosives
October 2, 2023
Page 13 of 18

possess state licenses or require a non-taxable tribal distributor to pre-collect or otherwise account for state excise taxes that may or may not apply at the point of sale. Put another way, under ATF's rewriting of California law, California law should require all tobacco products sold to an Indian tribe to be pre-assessed the state tax. But ATF's desired rewriting of the law fails to provide a mechanism that enables a federally recognized tribe to sell non-taxed tobacco products to its members, and in doing so is in violation of established Supreme Court precedent.

Because the Tribe sells exclusively to tribally owned entities, its transactions are, under California law, between a tax-exempt distributor and a tax-exempt retailer which under the framework endorsed by the United States Supreme Court in *Chemehuevi* does not require the Tribe to assess or collect the state's cigarette taxes. Instead, under the statutory framework adopted by the State of California, it is the tribal retailer's responsibility to collect the tax on each taxable sale (i.e., sales to non-Native Americans). Notably, California has requested, and the Tribe has agreed to provide information necessary for the state to pursue collection of any such validly assessed tax.

### ii. The Tribe's Customers are Lawfully Operating.

ATF next alleges, without citation to any legal authority, that the Tribe's customers, who are tribally owned entities located in Indian Country, are not "lawfully operating" because they "are unlicensed by the State of California" and allegedly therefore "ineligible to possess and/or sell unstamped, untaxed, cigarettes and untaxed smokeless tobacco." ATF 2023 Nomination Letter at 2.

Moliki Alexander
Bureau of Alcohol, Tobacco, Firearms and Explosives
October 2, 2023
Page 14 of 18

As noted above, the Pact Act does not define the term "lawfully operating" and ATF's strained interpretation of that term to require that sovereign federally recognized Indian tribes subject themselves to state licensing authorities and thereby accept all state regulation and tax is contrary to Supreme Court precedent and basic constitutional principles.  Moreover, because the PACT Act recognizes and includes tribes as co-equal sovereign authorities with state and local governments for the purpose of determining who is "lawfully operating," requiring a sovereign tribe operating on its own reservation in compliance with all federal and tribal laws to be state licensed violates the PACT Act.[4]

The Supreme Court has only upheld **minimal** state record keeping requirements on tribal member owned cigarette retailers which are necessary to facilitate collection of valid state taxes imposed upon non-Indian consumers.  *Washington v. Confederated Tribes of the Colville Rsrv.*, 447 U.S. 134, 159-160 (1980); *Dep't of Tax'n and Fin. v. Milhelm Attea & Bros., Inc.*, 512 U.S. 61.  However, neither the Supreme Court nor any lower federal court has <u>ever</u> upheld the imposition of a state licensing scheme on tribally owned entities located in Indian Country.  As ATF is aware, in *Moe* the Supreme Court affirmed a district court judgment that Montana may not "require **a member** of the Tribes who sells cigarettes on the Flathead Reservation to possess a state-issued license."  *Moe v. Confederated Salish & Kootenai Tribes of the Flathead Rsrv.*, 425 U.S. 463, 480-481

---

[4] Throughout the PACT Act, Congress gave state and tribal authorities equal footing.  The Act defines "Indian tribe" and "Indian country" separately from the definition of the "State."  See 15 U.S.C. § 375(7), (8), (11).  The Act's definition of "tobacco tax administrator" refers to any "State, local, or tribal official" that is duly authorized to collect taxes or "administer the tax law of a State, locality or tribe, respectively."  15 U.S.C. § 375(13).  The Act requires delivery sellers generally to comply with "State, local, tribal, and other laws" that are generally applicable to sales of cigarettes or smokeless tobacco.  15 U.S.C. § 376a(a)(3).

Moliki Alexander
Bureau of Alcohol, Tobacco, Firearms and Explosives
October 2, 2023
Page 15 of 18

(1976) (emphasis added); *accord*, *Oklahoma Tax Comm 'n v. Brune*r, 815 P.2d 667, 669-670 (Okla. 1991) (holding that the State of Oklahoma lacks authority to impose license and permit requirements on Indian cigarette retailer).

Moreover, ATF's assertion that the Tribe's sales to other tribes for ultimate retail sale to consumers are "Delivery Sales" because they are not "lawfully operating" ignores Supreme Court precedent requiring that the *Bracker* balancing test be conducted to determine whether the State's interests in imposing its licensing regulations on such transactions (i.e., on reservation tribally owned retail sales) outweighs the tribal and federal interests. *See White Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980). As stated above, no federal court has ever conducted such an analysis and found that state licensing laws satisfy the balancing test such that on-reservation tribally owned retail operations are required to possess a state issued license ATF's blanket assertions to the contrary are unfounded.

By seeking to use the PACT Act to impose state regulations requiring the licensing and registration of tribally owned businesses operating on their own reservations, the 2023 Nomination Letter runs counter not only to established Supreme Court precedent, but also to the federal government's policy of tribal self-determination. See, *Bryan v. Itasca Cnty.*, 426 U.S. 373, 388 (1976) (pointing to the destruction of tribal governments likely to result "if tribal governments and reservation Indians were subordinated to the full panoply of civil regulatory powers, including taxation, of state and local governments"). As such, the premise upon which the ATF's 2023 Nomination Letter relies (that the Tribe's tribal customers do not comply with the state's retail licensing law and therefore are in

Moliki Alexander
Bureau of Alcohol, Tobacco, Firearms and Explosives
October 2, 2023
Page 16 of 18

violation of the PACT Act) is misplaced.  ATF cannot lawfully place the Tribe on ATF's

PACT Act Non-Compliant List based on this misinterpretation of the law.

### E.  The Alleged Violation of the CCTA is Not a Basis to Include the Tribe on the PACT Act Non-Compliant List.

Finally, ATF alleges that the Tribe's sale of "unstamped, untaxed cigarettes and

smokeless tobacco to Tribal Retailers violate[s] the CCTA."  ATF 2023 Nomination

Letter at 4.  It is unclear what facts ATF relies on to support its assertion that the Tribe

sells unstamped cigarettes to its customers.  As California DOJ is well aware, the Tribe

does not sell any unstamped cigarettes.  Rather, every cigarette sold by the Tribe

possesses an inter-tribal stamp that not only reflects the assessment of any applicable

tribal taxes, but also facilitates efforts of the State to combat illicit cigarette sales and to

enforce the collect and remit framework upheld in *Chemehuevi.*

Even if the Tribe did sell unstamped cigarettes to its tribally-owned customers

operating on their own reservations, which they unequivocally do not do, Federal Courts

have made clear that "[c]igarettes are only contraband under the CCTA if they bear no

evidence of the payment of applicable State or local cigarette taxes in the State or

locality where such cigarettes are found.  If there are no "applicable State or local

cigarette taxes," cigarettes are not contraband, regardless of whether they were

transported in violation of state law."  *United States v. Wilbur*, 674 F.3d 1160, 1174 (9th

Cir. 2012) (internal quotations and citations omitted).  As the Seventh Circuit has

explained, "the CCTA requires only that the government prove beyond a reasonable

doubt that [an individual] (1) knowingly shipped, transported, received, possessed, sold,

Moliki Alexander
Bureau of Alcohol, Tobacco, Firearms and Explosives
October 2, 2023
Page 17 of 18

distributed or purchased (2) more than 10,000 cigarettes (3) not bearing [state] cigarette tax stamps (4) under circumstances in which [state] law required the cigarettes to bear such stamps, and (5) the [the individual] is not an excepted person under 18 U.S.C. §§ 2341(2)(A)-(D)"  *United States v. Mohamed*, 759 F.3d 798, 804 (7th Cir. 2014) (emphasis added).

As discussed above, California taxes the "distribution" of cigarettes but recognizes that there are some "distributions" to which the state's tax does not apply, and which therefore are considered "untaxed tobacco products" as they have "not yet been distributed in a manner that results in a tax liability under [state law.]" Cigarette and Tobacco Products Tax Law, Section 30005.5

Administrative guidance from the CDTFA likewise unambiguously establishes that Native American retailers in California can buy and sell untaxed cigarettes without a California tax stamp and establishes the framework by which such tax is collected.  As such, the Tribe's sale of cigarettes to tribal entities in California are sales of "untaxed tobacco products", and thus not required to bear stamps or impressions and cannot be classified as contraband cigarettes under the CCTA or serve as a basis to place the Tribe on the Non-Compliant List.

III.    **Conclusion**

The Twenty-Nine Palms Band of Mission Indians is confident that this resolves the issues raised in ATF's 2023 Nomination Letter and that accordingly your office will not place the Tribe on ATF's PACT Act Non-Compliant list.  If that is not the case, then please contact me directly so that we can address any additional concerns you may

Moliki Alexander
Bureau of Alcohol, Tobacco, Firearms and Explosives
October 2, 2023
Page 18 of 18

have regarding these issues.  If, after reviewing this response to ATF's 2023 Notice

Letter and completing the investigation required 15 U.S.C. § 376a(e)(E)(iv), ATF intends

to move forward with placing the Tribe on the list of non-compliant delivery sellers,

please advise of all remedies and appeal rights available.

Sincerely,

Randolph Barnhouse

# EXHIBIT 1

**From:** Cohen, Jeffrey A. (ATF) <Jeffrey.Cohen@atf.gov>
**Sent:** Wednesday, April 26, 2023 5:21 PM
**To:** Byron Miller
**Cc:** Alexander, Moliki (ATF); James Hart; Jesse D. Heibel; Dolph Barnhouse
**Subject:** Re: [EXTERNAL] RE: 29 Palms PACT Act Nomination

Thanks Byron.

Sent from my iPhone

On Apr 26, 2023, at 7:13 PM, Byron Miller <Byron.Miller@doj.ca.gov> wrote:

Dear Ms. Alexander,

We have confirmed that the 29 Palms Band of Mission Indians has provided the PACT Act reports we requested. We would therefore like to withdraw our July 28, 2022 request for 29 Palms to be added to the PACT Act list of unregistered or noncompliant delivery sellers.

Best regards,

Byron

**From:** Byron Miller
**Sent:** Thursday, July 28, 2022 3:43 PM
**To:** 'Moliki.Alexander@usdoj.gov' <Moliki.Alexander@usdoj.gov>
**Cc:** 'Jeffrey.A.Cohen@usdoj.gov' <Jeffrey.A.Cohen@usdoj.gov>; James Hart <James.Hart@doj.ca.gov>
**Subject:** 29 Palms PACT Act Nomination

Good afternoon, Ms. Alexander,

Please see California's attached letter nominating the 29 Palms Band of Mission Indians to the PACT Act list of unregistered or noncompliant delivery sellers.

Kind regards,
Byron

--
Byron Miller
Deputy Attorney General
Office of the California Attorney General
1300 I Street, 15th Floor
Sacramento, CA 95814
tel: (916) 210-7353

1

fax: (916) 324-5205

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

# EXHIBIT G



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

Washington, DC 20226
www.atf.gov

October 19, 2023

Administrator, Cigarette Distribution Business
29 Palms Band of Mission Indians
46-200 Harrison Place
Coachella, CA 92236

Dear Administrator:

This letter is in reply to the October 2, 2023, letter from your attorney, Randolph Barnhouse, alleging that there is insufficient basis to place you on the PACT Act Non-Compliant list based on sales of cigarettes to "consumers" as defined under the PACT Act in violation of applicable California laws governing at the place of sale in violation of 15 U.S.C. §§ 376a(a)(3) and (4). We disagree with the legal analysis set forth in the letter. Your customers illegally profit and defeat State health initiatives by failing to comply with the minimal burden of collecting the $2.87 California State tobacco excise tax from Non-Native American customers and failing to file reports involving sales to non-Native American customers required under California law. As such, your customers are not lawfully operating under California law.

This procedure was specifically approved by the Supreme Court almost 40 years ago in *California State Board of Equalization v. Chemehuevi*, 474 U.S. 9 (1985), and similar regulatory schemes have been repeatedly approved for decades by the Supreme Court. Additionally, your customers fail to have the requisite distributor licenses required under California law. The Ninth Circuit and a District Court in California have both held that inter-Tribal sales in virtually identical fact patterns constitute violations of California law. A District Court in California recently held in a nearly identical fact pattern that these sales establish PACT Act violations and involve sales to "consumers" who are not lawfully operating under California law. A New York State District Court has reached the same conclusion regarding a similar distribution scheme in violation of New York State tax laws.

Accordingly, your customers are not lawfully operating under California law and are "consumers" and these off-reservation sales are "delivery sales" as defined under the PACT Act which are not in compliance with applicable California law in violation of 15 U.S.C. § 376a(a)(3) and (4). Moreover, we believe these sales generally involve more than 10,000 cigarettes in California, a State that requires a tax stamp. These sales are to unlicensed entities that cannot lawfully possess unstamped cigarettes under California law. These entities also do not have compact or contracts with the State of California allowing a Tribal tax stamp to substitute for a California tax stamp. Therefore, we believe their receipt and possession of more than 10,000 cigarettes also constitute

-2-

Administrator, Cigarette Distribution Business
29 Palms Band of Mission Indians

violations of the Contraband Cigarette Trafficking Act (CCTA) under governing Ninth Circuit precedent regardless as to whether these are initially taxable transactions.

## BACKGROUND

The PACT Act, 15 U.S.C. § 375 *et. seq.*, was passed by overwhelming majorities in Congress and signed into law by President Obama on March 31, 2010. The PACT Act amended the Jenkins Act, the Contraband Cigarette Trafficking Act, and the Postal laws. Congress found in passing the PACT Act that the sale of untaxed cigarettes and other tobacco deprives Governments of billions of dollars in tax revenue, allows terrorist organizations to profit, takes billions of dollars away from law abiding retailers and makes it cheaper and easier for children to obtain tobacco products. *See* PACT Act Findings, P.L. 111-154 §1(b)(c), 124 Stat. 1087 (2010). The purposes of the PACT Act were to provide governmental enforcement officials with more effective tools to combat tobacco smuggling, to increase Federal, State, and local tax collection and to make it more difficult for cigarette traffickers to engage in and profit from their illegal activities. *See id.* Other purposes of the PACT Act include promoting fair competition for law abiding tobacco distributors, raising tax revenues, and depriving criminal groups of a potential source of funds. The legislative findings to the PACT Act note that the sale of illegal cigarettes significantly reduces State tax revenue and that unfair competition from the illegal sales of cigarettes is taking billions of dollars of sales from law abiding retailers. *See id.*

One of the key provisions of the PACT Act requires "delivery sellers" to comply with State tax and regulatory laws and requires "delivery sellers" to file reports with the States. Significantly, the PACT Act established a "Non-Compliant list" wherein States, Native American Tribes and local governments can report companies which are failing to comply with the PACT Act to ATF. *See* 15 U.S.C. §§ 376a(e)(1), (e)(6). ATF then notifies these companies regarding the allegations and allows the companies to respond to the allegations. If, after reviewing the response, ATF believes these companies are in violation of the PACT Act, ATF places the companies on the Non-Complaint list. ATF distributes the Non-Compliant list to common carriers and others. No person who receives the list, including common carriers, shall knowingly complete, or complete their portion of, the delivery of tobacco products sold by companies on the Non-Complaint list. 15 U.S.C. § 376a(e)(2).

-3-

Administrator, Cigarette Distribution Business
29 Palms Band of Mission Indians

## PACT ACT AND DELIVERY SALES

The term "delivery sale" is defined in the PACT Act as follows:

> Delivery sale. The term "delivery sale" means any sale of cigarettes or smokeless tobacco to a consumer if—
> (A) the consumer submits the order for the sale by means of a telephone or other method of voice transmission, the mail, or the Internet or other online service, or the seller is otherwise not in the physical presence of the buyer when the request for purchase or order is made; or
> (B) the cigarettes or smokeless tobacco are delivered to the buyer by common carrier, private delivery service, or other method of remote delivery, or the seller is not in the physical presence of the buyer when the buyer obtains possession of the cigarettes or smokeless tobacco.

15 U.S.C. § 375(5).

The term "consumer" is defined as follows:

> The term "consumer"—
>
> (A) means any person that purchases cigarettes or smokeless tobacco; and
> (B) does not include any person lawfully operating as a manufacturer, distributor, wholesaler, or retailer of cigarettes or smokeless tobacco.

15 U.S.C. § 375(4).

Thus, it is clear that a "consumer" under the PACT Act includes any person who makes a purchase of cigarettes or smokeless tobacco. Purchases by persons lawfully operating as manufacturers, distributors or retailers of cigarettes or smokeless tobacco are not sales to "consumers" under the PACT Act. Therefore, sales to these lawfully operating entities are not "delivery sales." However, remote purchases by persons who are not lawfully operating as manufacturers, wholesalers, or retailers of tobacco would be considered purchases by "consumers" under the PACT Act. Thus, the person making these sales is a "delivery seller" and must comply with the PACT Act's "delivery sale" requirements under 15 U.S.C. § 376a which states in pertinent part:

-4-

Administrator, Cigarette Distribution Business
29 Palms Band of Mission Indians

§ 376a Delivery sales

(a)    **In general**. With respect to delivery sales into a specific State and place each delivery seller.

(3) all State, local and other laws generally applicable to sales of cigarettes or smokeless tobacco as if the delivery sales occurred entirely within the specific State and place including laws imposing –

(A) excise taxes
(B) licensing and tax stamping requirements…
(D) other payment obligations or legal requirements relating to the sale, distribution or delivery of cigarettes or smokeless tobacco.

**PROCEDURAL HISTORY**

The California Department of Justice contacted the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") on July 28, 2022, to advise that it had information that 29 Palms Band of Mission Indians ("29 Palms") is in violation of the Prevent All Cigarette Trafficking Act ("PACT Act"), 15 U.S.C § 375 *et seq*. On August 15, 2022, ATF sent 29 Palms a letter stating that ATF was considering placing the Tribe on the PACT Act Non-Complaint list in response to a nomination letter received from the State of California for alleged violations of the PACT Act.

On October 14, 2022, the law firm of Keegan, Barnhouse, Solomon and West sent a letter to ATF responding to the California allegations. Since then, ATF has allowed Keegan, Barnhouse, Solomon and West substantial additional time to respond to the allegation that 29 Palms is not operating in compliance with the PACT Act. We have been informed that 29 Palms recently began sending PACT Act required reports with the California Department of Tax and Revenue (CDTFA) through August 2023. CDTFA confirmed that none of them hold a cigarette distributor license under the Cigarette and Tobacco Products Tax Law, Cal. Rev. & Tax. Code §§ 30001–30483, which is required in order to purchase cigarette tax stamps or otherwise collect and/or remit California cigarette taxes. As none of 29 Palms's customers have ever held such license, they have not collected or remitted any California cigarette taxes. They also have not remitted required reports to California. CDTFA also reported that only a handful of 29 Palms' customers hold a cigarette retail license under the Cigarette and Tobacco Products Licensing Act of 2003, Cal. Bus. & Prof. Code §§ 22970–22991. Such license, however, does not allow for the purchase of tax stamps, the collection or remittance of California cigarette taxes, or the possession of untaxed cigarettes.

On April 26, 2023, California withdrew its request to place 29 Palms on the Non-Compliant list. However, California provided ATF with the above-referenced information that 29 Palms continues to engage in the sale and distribution of cigarettes or smokeless tobacco products to unlicensed persons operating within the State of California. These sales constitute "delivery sales" in that 29

-5-

Administrator, Cigarette Distribution Business
29 Palms Band of Mission Indians

Palms' customers are failing to comply with tax payment obligations and legal regulatory requirements relating to the sale or delivery of the cigarettes and smokeless tobacco in violation of 15 U.S.C. § 376a(a)(3) and (4).  An ATF investigation of Native Wholesale Supply ("NWS"), a New York importer, established that 29 Palms was receiving shipments of millions of unstamped, untaxed cigarettes both from NWS and the Shinnecock Tribe of New York.

On October 2, 2023, Keegan, Barnhouse, Solomon and West sent another letter to ATF claiming that 29 Palms is in compliance with the PACT Act and CCTA. We note that p.13 of the letter acknowledges that under Supreme Court precedent and California law, "it is the tribal retailer's responsibility to collect the tax on each taxable sale (i.e., sales to non-Native Americans)." Your customers are not doing that in admitted violation of California law. We have reviewed the letter and considered the arguments set forth in the letter. Based on the record before us, ATF concludes that 29 Palms is in violation of 15 U.S.C. § 376a(a)(3) and (4). Accordingly, considering the hundreds of past and present violations of the PACT Act spanning several years, ATF is placing 29 Palms on the PACT Act Non-Compliant list effective November 20, 2023.

**FACTUAL BACKGROUND**

The 29 Palms Band of Mission Indians is a Federally recognized Tribe in Southeastern California. The Tribe has an estimated fifteen Tribal members and in addition to operating a tobacco distribution business operates two casinos. 29 Palms' tobacco business model is to sell cigarettes to Native American distributors who have a competitive advantage in that they fail to collect the $2.87 California State tax from Non-Native American customers and profit by distributing inexpensive cigarettes which defrauds California out of substantial amounts of tax revenues.

29 Palms is not licensed to distribute tobacco by the Federal Government, the State of California, or any other State. It does not hold a Federal manufacturer's or importer's permit issued by the United States Treasury Department, Alcohol and Tobacco Tax and Trade Bureau ("TTB"). 29 Palms is not licensed to distribute tobacco in California, is not a licensed New York State stamping agent, and is not a Customs Bonded Warehouse ("CBW") or Foreign Trade Zone ("FTZ"). 29 Palms cannot lawfully possess Federally untaxed tobacco under the Internal Revenue Code as it is not a TTB permittee, CBW or FTZ. *See* 26 U.S.C. § 5704 (c). Similarly, 29 Palms cannot possess tobacco that is in bond as that term is used under the United States Customs laws. In bond shipments are those that are stored or shipped through the United States but have not had taxes and applicable duties paid and have not cleared Customs. In bond shipments must be shipped to other CBWs or FTZs or exported. Solely for the sake of this letter, we will presume that these shipments are Federally tax paid and have been lawfully removed from Customs' custody.

Analysis of third-party shipping records, PACT Act reports supplied by your law firm to California, and communications with attorneys representing NWS that were sent to your law firm establish that from 2022-2023, 29 Palms purchased millions of untaxed, unstamped cigarettes and significant quantities of untaxed, smokeless tobacco products from NWS and the Shinnecock Tribe

-6-

Administrator, Cigarette Distribution Business
29 Palms Band of Mission Indians

in the State of New York where it is not a licensed stamping agent in violation of section 471 of New York State tax law and the CCTA. *See Oneida v. Cuomo*, 645 F. 3d 154, 160-61 (2d Cir. 2011) (illegal for Native Americans to possess unstamped cigarettes in New York State unless distributors follow the procedures set forth in section 471 New York State tax law). *See also United States v. Morrison*, 686 F.3d 94, 96 (2d Cir. 2012); *Ho-Chunk v. Sessions*, 253 F.Supp.2d 303, 305 (D.C. D.C. 2017), *aff'd* 894 F.3d 365 (D.C. Cir. 2018) (CCTA applies to possession of unstamped cigarettes by Native Americans in violation of State law).

NWS and its supplier Grand River Enterprises ("GRE"), a Canadian cigarette manufacturer, have a long history of distributing untaxed, unstamped cigarettes in States in violation of State law. *See People ex rel Beccera v. Native Wholesale Supply*, 37 Cal. App. 5th 72 (2019) (NWS illegally sold over a billion Grand River contraband cigarettes in California); *State ex rel Pruit v. Native Wholesale Supply*, 2014 OK 49 (2014) (NWS liable for approximately 48 million dollars involving the distribution of untaxed cigarettes in violation of Oklahoma law); *New York v. Grand River Enters. Six Nations*, 2020 U.S. Dist. LEXIS 44451 (W.D. N.Y. 2020) (NWS and Grand River allegedly sold 1.5 billion unstamped, untaxed cigarettes in violation of New York State tax law).

29 Palms and other unlicensed parties shipped these tobacco products across the United States into California. 29 Palms then shipped and sold unstamped cigarettes and untaxed smokeless tobacco to California Tribal distributors who then sold these untaxed cigarettes to non-tribal members. These distributors violated California law by failing to collect taxes on sales, not filing reports, and not possessing distributors' licenses. The illegal distribution of these inexpensive cigarettes wherein taxes were not collected deprived California of millions of dollars in tax revenue and defeated California's goals of deterring smoking by raising the prices of cigarettes. As such, these distributors are not lawfully operating under California law.

**CALIFORNIA LICENSING SCHEME**

"Since 1959 California has imposed an excise tax on the distribution of cigarettes." *Big Sandy Rancheria Enters. v. Bonta*, 1 F.4th 710, 714 (9th Cir. 2021) (quoting *Cal. State Bd. of Equalization v. Chemehuevi Indian Tribe*, 474 U.S. 9, 10, (1985)); *see also* Cigarette and Tobacco Products Tax Law (Tax Law), Cal. Rev. & Tax. Code §§ 30001-30483. The Tax Law defines distribution as including "[t]he sale of untaxed cigarettes or tobacco products in this state" and "[t]he placing in this state of untaxed cigarettes . . . in retail stock for the purpose of selling the cigarettes or tobacco products to consumers." Cal. Rev. & Tax. Code § 30008; *see also id.* at § 30011 (defining distributors).

Anyone who sells cigarettes as a distributor must have a distributor's license. *Id.* at § 30140. Among other requirements, distributors must make monthly reports regarding distribution of cigarettes and purchases of stamps and meter register units. *Id.* at § 30182. Distributors pay excise taxes by purchasing stamps or meter impressions, *id.* at § 30161, and by affixing stamps or meter impressions on cigarette packages prior to distribution, *id.* at § 30163. 29 Palms and its customers do not have these requisite licenses.

-7-

Administrator, Cigarette Distribution Business
29 Palms Band of Mission Indians

The Tax Law recognizes certain purchasers may not be obligated to pay the tax at the time of sale and so requires distributors to collect the tax "at the time the purchaser becomes so obligated[.]" *Id.* § 30108. In the case of Native American distributors, this would be on the first non-tax-exempt transaction. As such, "California's scheme recognizes that the state may not tax certain distributions," *Big Sandy Rancheria Enters.*, 1 F.4th at 715, such as "cigarettes . . . sold by a Native American tribe to a member of that tribe on that tribe's land, or that are otherwise exempt from state excise tax pursuant to federal law," Cal. Health & Safety Code § 104556(j). For sales on Indian land, the Supreme Court has held the "legal incidence of California's cigarette tax falls on the non-Indian consumers of cigarettes purchased from [a tribal] smoke shop," and California "has the right to require" tribes to collect state cigarette taxes on non-Indian consumers on California's behalf. *Cal. State Bd. of Equalization*, 474 U.S. at 12.

In 2003, California enacted the California Cigarette and Tobacco Products Licensing Act of 2003 (Licensing Act) after finding "[t]ax revenues [had] declined by hundreds of millions of dollars per year due, in part, to unlawful distributions and untaxed sales of cigarettes." Cal. Bus. & Prof. Code § 22970.1(b). Under the Licensing Act, manufacturers, importers, wholesalers, distributors, and retailers must obtain licenses, *see id.*, and may not sell or purchase cigarettes from unlicensed entities, *id.* § 22980.1. The Licensing Act defines a retailer as "a person who engages in this state in the sale of cigarettes . . . directly to the public from a retail location." *Id.* § 22971(q). A retailer may be a distributor if it sells untaxed cigarettes or places untaxed cigarettes in retail stock for the purpose of selling cigarettes to consumers. *See id.* § 22971(f) (defining "distributor" as defined by the Tax Law), Cal. Rev. & Tax. Code §§ 30008, 30011 (defining "distribution" and "distributor"). A retailer must maintain a state license to engage in the sale of cigarettes in California. Cal. Bus. & Prof. Code § 22972. Among other requirements, applicants must pay an annual $265 fee per location to obtain a license. *Id.* § 22973. Retailers must also retain purchase invoices. *Id.* § 22974.

To facilitate the collection of taxes, California requires all distributors to obtain two state-issued licenses, one of which must be renewed annually. *See* Cal. Rev. & Tax. Code § 30140; *see also* Cal. Bus. & Prof. Code § 22975(a). Under the Licensing Act, distributors and wholesalers may not sell to unlicensed entities. *See id.* § 22980.1(b)(1). Violations of the Licensing Act are misdemeanors punishable by a $5000 fine, one year of imprisonment, or both. *See id.* § 22981. The excise taxes "provide funding for local and state programs, including health services, antismoking campaigns, cancer research, and education programs." Cal. Bus. & Prof. Code § 22970.1.

Additionally, California imposes reporting and recordkeeping requirements on cigarette distributors. They must file monthly reports with the California Department of Tax and Fee Administration respecting their distributions both taxable and exempt. *See* Cal. Rev. & Tax. Code §§ 30182(a), 30183(a); 18 Cal. Code Regs. § 4031. Distributors must also "keep . . . records, receipts, invoices, and other pertinent papers with respect" to their cigarette dealings, which the state may examine. Cal. Rev. & Tax. Code §§ 30453, 30454; 18 Cal. Code Regs. §§ 4026(a), 4901.

-8-

Administrator, Cigarette Distribution Business
29 Palms Band of Mission Indians

Similarly, under the Licensing Act, distributors must retain copies of transaction records to assist the state's auditing and collection efforts. *See, e.g.*, Cal. Bus. & Prof. Code §§ 22978.1, 22978.5 (requiring distributors and wholesalers to maintain sale records, including invoices and receipts, "during the past four years" and to make such records available upon the state's request). 29 Palms' customers are generally not complying with any of the aforementioned requirements.

## GOVERNING LEGAL PRECEDENT ALLOWS CALIFORNIA TO REQUIRE RETAILERS TO COLLECT TAX AND PREPARE REPORTS ON TAXABLE TRANSACTIONS.

The PACT Act specifically preserved Native American rights under treaties or under Federal common law. *See* PACT Act Exclusions regarding Indian tribes and tribal matters. P.L 111-154, § 5, 124 Stat 1109.  However, this provision would not validate all shipments of untaxed cigarettes or eliminate reasonable Federal or State regulation in this area. The Supreme Court has repeatedly upheld minimal regulatory burdens regarding Tribal retailers and has held that Indian Tribes have no right to distribute untaxed cigarettes to non-tribal members. 29 Palms incorrectly claims that ATF is expanding the scope of State regulatory authority in violation of the PACT Act.  The PACT Act requires that a manufacturer, distributor, wholesaler, or retailer comply with Federal, State and Tribal law in order to be "lawfully operating" such that it may avoid the PACT Act's definition of "consumer."  The Courts have unanimously held for decades that States can impose minimal regulatory burdens to assure that lawful taxes are collected, and regulatory rules are followed. Alleged compliance solely with Tribal law does not satisfy this criterion.  *See e.g., Rice v. Rehner*, 463 U.S.713, 733 (California can require that Tribal alcohol distributor who sells alcohol to non-Tribal members must obtain a California liquor license and Congress did not intend to make Indians "super citizens" who could trade in in traditionally regulated substances free from all but self-imposed regulations."

In *California State Bd. Of Equalization v. Chemehuevi Indian Tribe*, 474 U.S. 9 (1985), the Supreme Court held that California could require California Tribal distributors to collect cigarette taxes owed by non-Tribal customers since the legal incidence of taxation fell on these customers rather than the Tribal members. *Id.* at 12. This case followed Supreme Court precedent in *Moe v. Confederated Salish and Kootenai Tribes*, 425 U.S. 463, 481-483 (1976) (State may put minimal burden on Native American distributor to collect taxes on taxable transactions involving non-Indian purchasers where competitive advantage are illegal purchases where no taxes are paid.)

The case also followed *Washington v. Confederated Tribes of Colville*, 447 U.S. 134, 155-57 (1980), which recognized that certain Washington Tribal smoke shops selling untaxed, State unstamped cigarettes were offering their customers "solely an exemption from taxation" and recognized the State of Washington's ability to regulate and tax cigarette transactions involving non-Tribal members on Tribal land. Moreover, *Colville* held that the placement of Tribal stamps which allegedly occurred in this case, and which is permissible under Federal law, does not

-9-

Administrator, Cigarette Distribution Business
29 Palms Band of Mission Indians

supplant minimally burdensome State stamping tax and record keeping requirements. *Id.* at 160. Moreover, the Court held that sales to other Tribes, such as the sales in this case, are on the same legal footing as sales to non-Indians and may be subject to tax and regulation "for the simple reason that non-members are not constituents of the Governing Tribe." *Id.* at 161.

In *Dep't of Taxation v. Milhelm Attea*, 512 U.S. 61 (1994), the Supreme Court once again held that to prevent evasion of State cigarette taxes, States can implement a minimally burdensome regulatory scheme that requires wholesalers selling to Native American distributors to comply with a New York State regulatory scheme similar to the current California regulatory scheme. This scheme required wholesalers to maintain detailed records, pre-collect taxes and affix stamp stamps on cigarettes destined for non-tax-exempt customers. The Court held, quoting the *Colville* decision that, "(W)e are persuaded, however, that New York's decision to stanch the illicit flow of tax-free cigarettes early in the distribution scheme is a 'reasonably necessary' method of 'preventing fraudulent transactions,' one that 'polices against wholesale evasion of [New York's] own valid taxes without unnecessarily intruding on core tribal interests.'" *Id.* at 75.

In a recent federal case, *Big Sandy Rancheria Enterprises v. Bonta,* 1 F.4th 710 (9th Cir. 2021), the Ninth Circuit Court of Appeals affirmed the decision of the Eastern District of California, *Big Sandy Rancheria Enterprises v. Beccera*, 395 F.Supp. 3d 1314 (E.D. Cal. 2019). Big Sandy's business model was virtually identical to that of 29 Palms. Big Sandy, like 29 Palms, did not have a California distributor's license and obtained Grand River manufactured cigarettes, which it sold the cigarettes through Tribal distributors, and failed to follow governing California law by collecting California cigarette taxes on taxable transactions. *See Id.* at 1319-1320. The Ninth Circuit upheld California's regulatory scheme as applied to Big Sandy's sales to other Tribes. The Ninth Circuit stated that Big Sandy had "not plausibly alleged that California's licensing, recordkeeping and reporting requirements as applied to non-member Indian retailers are excessive burdens" under governing Supreme Court precedent. *Big Sandy Rancheria Enterprises v. Bonta,* 1 F.4th at 731. Moreover, the Ninth Circuit held that intertribal sales "made outside the tribal enterprise's reservation are 'off reservation' activity subject to non-discriminatory state laws of general application." *Big Sandy Rancheria Enterprises v Bonta,* 1 F.4th at 729. Since the sales were deemed "off reservation," the Court found that the district court properly declined to apply the balancing test set forth in *White Mountain Apache Tribe v Bracker*, 448 U.S. 136 (1980). Because Big Sandy did not allege that California was regulating its transactions with non-Indians on its own reservation, the *Bracker* test did not bar State regulation of the Tribal activities. *Id. See Wagnon v. Prairie Band Potawatomi Nation*, 546 U.S. 95, 112-113 (2005) (balancing interests under *Bracker* where the regulated activity is "off-reservation" is "inconsistent with the special geographic sovereignty concerns that gave rise to the test"). Here, 29 Palms' intertribal wholesale cigarette sales to the unlicensed Tribal retailers are "off-reservation" activity that remain subject to California's non-discriminatory licensing and excise tax statutes. Therefore, the *Bracker* analysis does not apply.

-10-

Administrator, Cigarette Distribution Business
29 Palms Band of Mission Indians

The case of *California v. Azuma Corp.*, 2023. U.S. 159790 (E.D. Cal. 2023), involves the same legal issues and business model as this case. Azuma, like 29 Palms, is not licensed by California and distributes unstamped cigarettes via remote "delivery sales" to unlicensed Tribal distributors and retailers throughout California, who do not collect or remit California cigarette taxes on sales to non-Tribal members. *See id.* at *10-11. In light of this activity, Azuma was nominated for the PACT Act non-compliance list by the State of California. Azuma continued its illegal distribution of cigarettes in violation of the PACT Act, and California moved for a preliminary injunction. *Id.* at 11. The Eastern District of California noted that under the PACT Act, "consumers" are defined as "any person that purchases cigarettes or smokeless tobacco and does not include any person lawfully operating in the cigarette business." *See* 15 U.S.C. § 375(4). "Delivery sales" are defined to include all sales to consumers which are not made in the physical presence of the seller. 15 U.S.C. § 375(5). Thus, if a person is not lawfully operating, sales to the person are sales to "consumers" and such sales must comply with all State, Tribal and other laws governing the sale, including excise tax collection, record keeping, licensing and tax stamping laws governing the sale of cigarettes. 15 U.S.C. §§ 376a(a)(3), (4). In light of this, Eastern District of California held that Azuma's sales are "delivery sales" to "consumers" under the PACT Act. *Id.* at 30. Because Azuma's customers, like 29 Palms' customers, do not remit taxes nor have required licenses under governing California law, the Court held they are not "lawfully operating" under the PACT Act and thus in violation of the PACT Act. *Id.* at 30-31.

The *Azuma* Court cited two additional District Court decisions, the only other courts which addressed this issue, which reached the same conclusion. *See City of N.Y. v. Hatu*, 2019 U.S. District LEXIS 91576 at *47-48 (S.D.N.Y 2019) (PACT Act exempts only retailers that are "lawfully operating" from requirements involving sales to "consumers") and *New York v. Grand River Enter. Six Nations Ltd.*, 2020 U.S. Dist. LEXIS 236928 at *35-37 (W.D.N.Y. 2020) (NWS Tribal customers in New York State, under similar untaxed cigarette distribution scheme as 29 Palms, were not "lawfully operating" by failing to comply with New York State tax law and were "consumers" under the PACT Act and these "delivery sales" were in violation of New York State tax law). The Eastern District of California noted the tremendous harm this type of business model renders on the public, noting:

> *Without an injunction, defendant's continued non-compliance with California laws and the PACT Act will deprive California of its excise taxes and undercut public policy health care goals of both federal and State law. The prevention of illicit cigarette trafficking and collection of State taxes are some of the goals of the PACT Act ... See PACT Act § 1(c).*

*Id.* at *39. Emphasis added.

Accordingly, the Court granted a preliminary injunction against the owner of Azuma, Darrin Rose, prohibiting the delivery of cigarettes in violation of the PACT Act. *Id.* at 40.

-11-

Administrator, Cigarette Distribution Business
29 Palms Band of Mission Indians


**ANALYSIS**

Under the governing Supreme Court and Ninth Circuit precedent, it is clear that the sales to your customers are in violation of applicable California tax collection, stamping and licensing laws at the point of sale. Thus, these are "delivery sales" to "consumers" under the PACT Act. The failure to comply with these laws establishes that 29 Palms is in violation of 15 U.S.C. §§ 376a(a)(3) and (4). An examination of the language of the PACT Act supports the conclusion that a manufacturer, distributor, wholesaler, or retailer must comply with Federal, State, and tribal law in order to be "lawfully operating" to avoid the PACT Act's definition of "consumer." Accordingly, sales to persons or entities in California that are not licensed and in compliance with California tax laws are sales to "consumers" and must comply with the "delivery sales" provisions which include complying with State licensing, tax, and regulatory requirements. 29 Palms has failed to adhere to its PACT Act obligations and therefore ATF has decided to place 29 Palms on the Non-Compliant list.

Under the PACT Act, the terms State and Tribal land and locality are not mutually exclusive terms and Tribal distributors must comply with State, Tribal and applicable local law. *New York v. Mtn. Tobacco Co.,* 942 F. 3d 536, 546-47 (2d Cir. 2019) (State and Indian Country are not mutually exclusive terms). We note that when a word or phrase such as "lawfully operating" is used but not defined within a statute, it is normally given its ordinary, common sense or natural meaning. *See Perrin v. United States,* 444 U.S. 37, 42 (1979). Unlicensed distributors who are depriving California of tobacco taxes by distributing untaxed cigarettes to non-Tribal members and failing to collect and remit taxes and records in violation of California law are not "lawfully operating" under applicable California law and as such are "consumers" under the PACT Act. *California v. Azuma Corp.* 2023. U.S. 159790 at *30-31 (E.D. Cal 2023). *See City of New York v. Hatu,* 2019 U.S. Dist. LEXIS 91576 at *46-47 (S.D.N.Y 2019) (distributors who are involved in a distribution scheme in violation of the law are not "lawfully operating" and are "consumers" under the PACT Act). *See also New York v. Grand River Enters, Six Nations,* 2020 U.S. Dist. LEXIS 236928 at *40 (W.D. N. Y. 2020) (New York State Native American distributor must comply with New York State law under PACT Act).


**29 PALMS' INTERSTATE COMMERCE DEFENSE FAILS**

The October 2nd letter alleges that ATF cannot place 29 Palms on the Non-Compliant list because the sales are not in interstate commerce. This argument fails as Congress did not require that "delivery sales" be in interstate commerce. *See* 15 U.S.C. §§ 375(5)(A), 376a (no interstate commerce requirement for delivery sales). *See City of New York v. Hatu,* 2019 U.S. Dist. LEXIS 91576 at * 48 (same). *Compare with* 15 U.S.C. § 376(a) (Congress inserted interstate commerce element regarding PACT Act report provisions).

-12-

Administrator, Cigarette Distribution Business
29 Palms Band of Mission Indians

Moreover, even if there was an interstate commerce requirement—which there is not under section 376a—Courts have held that shipments from separate Native American Tribes originating on one Tribe's land traveling through State land destined for another Tribe's land in that same State are in interstate commerce under the PACT Act and Native American distributors must comply with pertinent State laws. *See New York v. Grand River Enters, Six Nations* 2020 U.S. Dist. LEXIS 236928 at 40-41 (interstate commerce under the PACT ACT includes shipments between reservations in the same State); *Accord New York v. Grand River*, 2019 U.S. Dist. LEXIS 21588 at *15-18 (PACT Act includes shipments between Indian Reservations in same State). *See also New York v. Mtn. Tobacco*, 2016 U.S. Dist. LEXIS 95329 at * 24 (E.D.N.Y. 2016) (ATF open letter to Indian Tribes shortly after passage of PACT Act stated that transportation between two separate reservations is in interstate commerce and ATF placed King Mountain, a Native American manufacturer on the Non-Compliant list for this conduct); *City of New York v. Gordon*, 1 F. Supp. 94, 101 (S.D.N.Y. 2013) (City of New York can enforce PACT Act against upstate New York Native American distributor who shipped untaxed cigarettes into New York City in violation of State and city law); *City of New York v. Wolfpack Tobacco*, 2013 U.S. Dist. LEXIS 129103 at *9-11 (S.D.N.Y. 2013) (PACT Act provisions apply to Seneca New York Native American distributor shipping cigarettes to New York City in violation of various State and federal laws). *See generally New York v. Mt. Tobacco Co.*, 942 F. 3d 536, 547 (2d. Cir. 2019) (PACT Act definition of interstate commerce was intended to expand traditional definition of interstate commerce and be as broad as possible).

## 29 PALMS VIOLATED THE CONTRABAND CIGARETTE TRAFFICKING ACT

Possession or sales of more than 10,000 of these unstamped cigarettes in California by a non-licensee, such as 29 Palms' customers, in a State that requires a tax stamp, including possession or sales on a Native American Reservation, would constitute a violation of the Contraband Cigarette Trafficking Act (CCTA), 18 U.S.C. § 2341 *et. seq*. *See United States v. Baker*, 63 F.3d 1478, 1484-86 (9th Cir. 1995); *United States v. Morrison*, 686 F.3d 94, 96 (2d Cir. 2012); *Ho-Chunk v. Sessions*, 253 F.Supp.2d 303, 305 (D.C. D.C. 2017) *affirmed Ho Chunk v. Sessions*, 894 F.3d 365 (D.C. Cir. 2018) (CCTA applies to possession of unstamped cigarettes by Native Americans in violation of State law); *Grey Poplars v. One Million Three Hundred Seventy-One Thousand Assorted Brands of Cigarettes*, 282 F. 3d 1175, 1177-78 (9th Cir. 2002) (distribution of unstamped cigarettes by Native Americans in violation of State law violates the CCTA); *United States v. Gord*, 77 F.3d 1192 (9th Cir. 1996) (same). *See also United States v. 4,432 Master Cases of Cigarettes*, 448 F.3d 1168, 1186-89 (9th Cir. 2006) (distributors in California must distribute stamped cigarettes or they are in violation of the CCTA, and distributors must comply with California tobacco laws). 29 Palms' possession, shipment, and sales of more than 10,000 unstamped, untaxed cigarettes to the Tribal retailers violate the CCTA as said sales constitute "dispositions" to non-exempted persons pursuant to the above-referenced definitions. 29 Palms sold mass quantities of untaxed "contraband" cigarettes to non-exempted persons that are prohibited from possessing said cigarettes.

-13-

Administrator, Cigarette Distribution Business
29 Palms Band of Mission Indians


The Contraband Cigarette Trafficking Act (CCTA) makes it unlawful for "any person knowingly to ship, transport, receive possess, sell, distribute, or purchase contraband cigarettes." 18 U.S.C. § 2342(a). The CCTA makes it unlawful not just to "possess" contraband cigarettes, but also "to ship, transport, receive, . . . sell, distribute, or purchase" them. 18 U.S.C. § 2342(a). The term "contraband cigarettes" is defined to "a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found," and which are in the possession of a person not authorized by statute to possess such cigarettes. *Id.* § 2341(2). 29 Palms—themselves unlicensed—distribute millions of unstamped cigarettes throughout California to other unlicensed entities. Accordingly, 29 Palms and their customers are in violation of the CCTA.

Under the California licensing scheme, distributors are the only entities who can lawfully possess unstamped cigarettes. *See* Cal. Rev. & Tax. Code § 30011 (defining "distributor" as one who "within the meaning of the term 'distribution' as defined in this chapter, distributes" cigarettes); *Id.* §§ 30008–30009 (defining "distribution" as the "sale," "use," or "consumption" of untaxed cigarettes, "other than the sale of the cigarettes . . . or the keeping or retention thereof by a licensed distributor for the purpose of sale."); *Id.* § 30005 (defining "untaxed cigarette" to mean "any cigarette which has not yet been distributed in such a manner as to result in a tax liability under this part"); *Id.* § 30103. Because 29 Palms customers are not distributors authorized under the law to possess untaxed cigarettes their receipt, possession, and distribution of more than 10,000 cigarettes, this is a CCTA violation regardless of whether the cigarettes are subject to tax at that point.

29 Palms' argument that the initial sale of cigarettes to unlicensed Tribal distributors is not a taxable transaction misses the mark. The Ninth Circuit and other Courts have unanimously held that Native Americans must comply with State tax laws and stamping procedures regardless as to whether an initial transaction is subject to tax. The Ninth Circuit addressed this issue in *United States v. Gord*, 77 F.3d 1192 (9th Cir. 1996) and rejected the argument that since no taxes were due on the cigarettes when sold the CCTA did not apply. The Ninth Circuit noted that under Washington tax law, all cigarettes, including cigarettes exempted from tax, must be stamped, and preapproved by the State of Washington, which did not occur in this case and accordingly, the CCTA was violated. Similarly, the Ninth Circuit also held in *Grey Poplars v. One Million Three Hundred Seventy-One Thousand Assorted Brands of Cigarettes*, 282 F. 3d 1175, 1177-78 (9th Cir. 2002) that while Tribal members on a reservation are free from State taxes, they must comply with State law requiring pre-approval of tax-free unstamped sales and the failure to comply with these State laws and the possession of these cigarettes constitutes CCTA violations. *See also Oneida v. Cuomo,* 645 F. 3d 154 (2d Cir. 2011) (State can require tax stamps on non-taxable transactions involving Native Americans). Accordingly, 29 Palms and their customers are in violation of the CCTA. 29 Palms' customers are not licensed distributors and therefore cannot possess unstamped cigarettes under California law and the shipment, receipt and possession of these cigarettes constitutes CCTA violations.

-14-

Administrator, Cigarette Distribution Business
29 Palms Band of Mission Indians

The case of *United States v. Wilbur,* 674 F. 3d 1160 (9ᵗʰ Cir. 2012), does not provide support for
29 Palms' argument that its customers can possess unstamped cigarettes in violation of California
tax law. Wilbur and the Swinomish Tribe possessed unstamped cigarettes under Washington law
which allowed them to have a contract (compact) with the State which specifically allowed Tribal
retailers to sell cigarettes wherein a Tribal tax stamp substituted for a Washington State tax stamp.
The Tribe agreed that the Tribal tax would be equal to the State tax and the State agreed to retrocede
its tax. *Id.* 1167. Accordingly, due to this contract, the cigarettes did not need to have a Washington
tax stamp and there were no CCTA violations.

29 Palms and its customers do not have a compact/contract with the State of California exempting
them from California tax and distribution statutes and they are selling cigarettes at a lower price
than law abiding retailers. Accordingly, we believe they are in violation of the CCTA which we
believe is a law applicable to the sale of cigarettes under the delivery sales provision of the PACT
Act.

**CONCLUSION**

In light of the hundreds of past and present violations of the PACT Act over the course of several
years, ATF is placing 29 Palms on the PACT Act Non-Compliant list effective November 20,
2023.

Sincerely yours,

*Rhonda M. Butler*

Rhonda M. Butler
Deputy Division Chief, Operational Intelligence Division