BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

BRIGHAM J. BOWEN
Assistant Branch Director

CAMERON SILVERBERG
Trial Attorney (D.C. Bar No. 1780628)
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street, NW
Washington, DC 20005
Tel.: (202) 353-9265
Fax: (202) 616-8470
Email: Cameron.D.Silverberg@usdoj.gov

JEFFREY A. COHEN
ANDREW BLACKER
Office of Chief Counsel
Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

TWENTY-NINE PALMS BAND OF
MISSION INDIANS, a Federally
Recognized Indian Tribe, dba
TWENTY-NINE PALMS
DISTRIBUTION,

     Plaintiff,

     v.

MERRICK GARLAND, Attorney
General of the United States, in his
official capacity; UNITED STATES

Case No. 5:24-cv-00379-SSS-SP

**DEFENDANTS' COMBINED
REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFF'S
MOTION TO STRIKE**

Date:    September 20, 2024
Time:   2:00 p.m.

DEPARTMENT OF JUSTICE;
STEVEN DETTELBACH, Director,
U.S. Bureau of Alcohol, Tobacco,
Firearms and Explosives, in his official
capacity; UNITED STATES BUREAU
OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES,

Defendants.

Place:    Videoconference
Judge:    Hon. Sunshine S. Sykes

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................... 1

ARGUMENT ........................................................ 2

    I.    The PACT Act Applies to Twenty-Nine Palms' Cigarette Sales ......... 2

    II.   Twenty-Nine Palms Violates the PACT Act ........................ 8

    III.  ATF's Decision Was Not Arbitrary and Capricious ............................ 8

    IV.  ATF Complied with Statutory Procedures .......................... 12

    V.   Twenty-Nine Palms' Motion to Strike Should Be Denied ................. 14

CONCLUSION ................................................... 15

## <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Big Sandy Rancheria Enters. v. Bonta*,
  1 F.4th 710 (9th Cir. 2021)................................................................*passim*

*Cal. State Bd. of Equalization v. Chemehuevi Indian Tribe*,
  474 U.S. 9 (1985)......................................................................1, 3, 4

*California v. Azuma Corp.*,
  2023 WL 5835794 (E.D. Cal. Sept. 8, 2023)............................................12

*Dep't of Tax'n & Fin. of N.Y. v. Milhelm Attea & Bros. Inc.*,
  512 U.S. 61 (1994)..................................................................5, 6, 9, 10

*FCC v. Prometheus Radio Project*,
  592 U.S 414 (2021) ...................................................................... 8

*Francisco Herring Ass'n v. Dep't of the Interior*,
  946 F.3d 564, 577 (9th Cir. 2019) ......................................................14

*Ludwig v. Astrue*,
  681 F.3d 1047 (9th Cir. 2012)............................................................13

*Moe v. Confederated Salish & Kootenai Tribes of Flathead*,
  Rsrv., 425 U.S. 463 (1976)..............................................................4, 5

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983).................................................................... 9

*Muscogee (Creek) Nation v. Pruitt*,
  669 F.3d 1159 (10th Cir. 2012) ........................................................ 7

*New Mexico v. Mescalero Apache Tribe*,
  462 U.S. 324 (1983)....................................................................10

*Organized Vill. of Kake v. U.S. Dep't of Agric.*,
  795 F.3d 956 (9th Cir. 2015) ............................................................13

ii

*Rice v. Rehner*,

   463 U.S. 713 (1983) ................................................................................ 5

*Washington v. Confederated Tribes of the Colville Indian, Rsrv.*,

   447 U.S. 134 (1980) .......................................................................*passim*

*White Mountain Apache Tribe v. Bracker*,

   448 U.S. 136 (1980) .............................................................................. 10

**STATUTES**

5 U.S.C. § 706 ......................................................................................... 13

15 U.S.C. § 376a(a) .................................................................................. 2

15 U.S.C. § 376a(a)(3) ............................................................................ 12

15 U.S.C. § 376a(e)(1)(E) ................................................................. 12, 13

Cigarette and Tobaccco Products Licensing Act of 2003,

   Cal. Bus. & Prof. Code § 22971.4 ..................................................... 11

California's Licensing Act,

   Cal. Bus. & Prof. Code §§ 22970-22991 ............................................ 3

California's Cigarette and Tobacco Products Tax Law,

   Cal. Rev. & Tax. Code §§ 30001-30483 ............................................ 3

California Revenue and Taxation Code Secion,

   Cal. Rev. & Tax. Code §§ 30181–30183 ............................................ 4

Prevent All Cigarette Trafficking Act,

   Pub. L. No. 111-154, 124 Stat. 1087 (2010) ....................................... 1

**OTHER AUTHORITIES**

California Bill Analysis, A.B. 3092 Sen., at 3 (Aug. 23, 2004) .................. 11

California Department of Tax and Fee Administration, Other Taxes and Fees and

   Native Americans, (last visited Aug. 23, 2024)

   https://perma.cc/9VNZ-BTWE ............................................................ 6

# INTRODUCTION

This case raises a straightforward question: whether California's cigarette tax and licensing laws apply to cigarette sales from Indian tribes to non-tribal members. And that question has already been answered by binding precedent.  The Supreme Court has specifically held that California's tax on cigarettes applies to cigarettes purchased by non-Indian consumers on a tribe's reservation, and that the State may require tribes to collect this tax.  *Cal. State Bd. of Equalization v. Chemehuevi Indian Tribe*, 474 U.S. 9, 12 (1985) (per curiam).  The Ninth Circuit has further held that California's cigarette licensing requirements constitute "minimal burdens" that apply to cigarette distributions between one tribe and another.  *Big Sandy Rancheria Enters. v. Bonta*, 1 F.4th 710, 730-32 (9th Cir. 2021).

Twenty-Nine Palms' cigarette distribution scheme violates both the tax and licensing laws under this precedent.  Twenty-Nine Palms distributes cigarettes to other tribes that fail to collect taxes on cigarette sales to non-tribal members, and neither Twenty-Nine Palms nor its customers possess distributors' licenses or comply with an array of California's additional distribution requirements.  In turn, Twenty-Nine Palms' violations of California law are also violations of federal law under the Prevent All Cigarette Trafficking Act ("PACT Act"), Pub. L. No. 111-154, 124 Stat. 1087 (2010), which requires that delivery sales be made in compliance with state law.  The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") was thereby correct to determine that Twenty-Nine Palms should be placed on the PACT Act's non-compliant list.

Twenty-Nine Palms' Opposition fails to show why this decision should be set aside under the Administrative Procedure Act ("APA").  Twenty-Nine Palms effectively ignores *Chemehuevi*'s holding that California's cigarette tax applies to sales to non-Indian consumers, and it never refutes ATF's finding that Twenty-Nine Palms itself is in violation of California law under *Big Sandy* given that it engages in

intertribal cigarette sales without complying with California's licensing and distribution requirements.  Twenty-Nine Palms instead argues that the PACT Act is inapplicable to its cigarette sales, but this argument is based on the misreading of an older Supreme Court case and the failure to grapple with more recent precedent. Twenty-Nine Palms also resorts to a series of technical arguments about the factors that ATF considered and the procedures that ATF followed, but each of these arguments are either inaccurate, immaterial, or both.

Twenty-Nine Palms' arguments in favor of its Motion to Strike fare no better. The Motion is based on the faulty premise that ATF's final agency action occurred in October 2023, when the agency issued a letter notifying Twenty-Nine Palms that it would be placed on the non-compliant list the following month.  But that letter was non-binding, and legal consequences only ensued in January 2024, when ATF reached a settlement with Twenty-Nine Palms' business partner providing that ATF would defer placing Twenty-Nine Palms on the non-compliant list pending a federal court's ruling.  That settlement, and the material preceding it, are properly included in the administrative record.  Twenty-Nine Palms' Motion to Strike should be denied.

For all these reasons, judgment should be entered for Defendants.

## ARGUMENT

## I.    The PACT Act Applies to Twenty-Nine Palms' Cigarette Sales

ATF correctly determined that the PACT Act's "delivery sales" provision applies to Twenty-Nine Palms' cigarette sales.  Under this provision, anyone making a "delivery sale" into a State must comply with that State's laws.  15 U.S.C. § 376a(a). A delivery sale consists of a remote sale to a "consumer," which is defined as any purchaser of cigarettes or smokeless tobacco *except* those who "lawfully operat[e] as a manufacturer, distributor, wholesaler or retailer of cigarettes or smokeless tobacco." *Id.* § § 375(4), (5).  Twenty-Nine Palms' wholesale cigarette sales fall squarely within this provision, since they are remote sales to customers (*i.e.*, tribal retailers that resell

the products) that are not lawfully operating as cigarette retailers under applicable state law.  The retailers fail to comply with California's Cigarette and Tobacco Products Tax Law, Cal. Rev. & Tax. Code §§ 30001-30483 ("the Tax Law"), since they lack a distributor's license and do not collect California's cigarette tax from sales to those who are not members of their respective tribes.  And they fail to comply with California's Licensing Act, Cal. Bus. & Prof. Code §§ 22970-22991, since they engage in intertribal sales with Twenty-Nine Palms, which lacks a license.  The PACT Act thereby applies to Twenty-Nine Palms' cigarette sales and requires them to comply with applicable state law.  *See* Defs.' Mem. of P. & A. in Supp. of Mot. for Summ. J., at 9-13 (ECF No. 47) ("Defs.' Mot.").

Twenty-Nine Palms' Opposition does not show otherwise.  To start, the Opposition's arguments center around whether California law can require Twenty-Nine Palms' customers to be licensed.  But the customers' failure to be licensed is only one reason why they are not lawfully operating as cigarette retailers.  A second reason was provided in the opening paragraph of ATF's decision letter: that Twenty-Nine Palms' customers fail to "collect[] the $2.87 California State tobacco excise tax from Non-Native American customers."  AR-311; *see also* AR-314.[1]  Under Supreme Court precedent, this tax applies to cigarette sales to non-tribal members.  *See Chemehuevi*, 474 U.S. at 12.  And ATF was entirely reasonable in concluding that Twenty-Nine Palms' customers sell cigarettes to purchasers that include non-members of their respective tribes.  These customers include more than fifty retailers, many of which are markets, smoke shops, and gas stations.  *See* AR-280-81.  There is no basis to conclude that the retailers limit their sales to only their own tribal members, and Twenty-Nine Palms does not appear to challenge this point.  Accordingly, binding precedent makes clear that Twenty-Nine Palms' customers are not lawfully operating

---

[1] Material cited from the Amended Administrative Record is indexed and provided in Exhibits 1 through 11.

because they fail to collect taxes from non-tribal members—even setting aside questions of licensing.

Twenty-Nine Palms' Opposition includes only a fleeting reference to *Chemehuevi's* holding, arguing that the case "did not analyze a specific framework implementing a collect and remit framework or find California's scheme implemented only minimal burdens." Pls.' Opp'n to Defs.' Mot. for Summ. J., at 6 (ECF No. 51) ("Pls. Opp'n"). This contention appears to suggest that the Supreme Court issued an advisory opinion about what California could do in theory, with no effect on what it was doing in practice. That is not the case. The Supreme Court specifically considered the Tax Law at issue here, not a hypothetical statutory scheme. And it specifically held that "California's cigarette tax falls on the non-Indian consumers of cigarettes purchased from [a tribe's] smoke shop, and that [California] has the right to require [the tribe] to collect the tax." *Chemehuevi*, 474 U.S. at 12. Under this holding, the customers' failure to collect the tax from non-tribal members means that they are not lawfully operating as retailers. This point alone establishes that Twenty-Nine Palms' cigarette sales are subject to the PACT Act's delivery sales provision.[2]

On licensing, Twenty-Nine Palms' arguments are undermined by decades of precedent establishing that California can use a state licensing scheme as the means in which it collects a clearly valid excise tax on sales to non-tribal members. That precedent began with the case that Twenty-Nine Palms principally relies upon: *Moe v. Confederated Salish & Kootenai Tribes of Flathead Rsrv.*, 425 U.S. 463 (1976). In

---

[2] ATF's decision letter also provided a further basis for the retailers' lack of compliance with state law: their failure "to file reports involving sales to non-Native American customers." AR-311. These reports are required under the Tax Law. *See* Cal. Rev. & Tax. Code §§ 30181–30183. The Supreme Court has upheld a similar state requirement that on-reservation retailers "record and retain for state inspection" an array of information regarding cigarette sales, as discussed further below. *Washington v. Confederated Tribes of the Colville Indian Rsrv.*, 447 U.S. 134, 159 (1980). Thus, even setting aside the customers' failure to collect taxes and failure to be licensed, the customers are still not in compliance with applicable state law.

*Moe*, the Supreme Court specifically held that states may require an Indian tribe to collect state taxes on sales to non-Indian consumers, since the requirement was "a minimal burden designed to avoid the likelihood that in its absence non-Indians purchasing from the tribal seller will avoid payment of a concededly lawful tax." *Id.* at 483. The Supreme Court then built upon this decision in a series of cases that upheld measures designed to ensure collection of the tax from on-reservation sales to non-tribal members. *See Colville*, 447 U.S. at 155-60 (upholding state tax and recordkeeping requirements that applied to on-reservation cigarette sales, including untaxable transactions); *Dep't of Tax'n & Fin. of N.Y. v. Milhelm Attea & Bros. Inc.*, 512 U.S. 61, 67, 78 (1994) (upholding state requirements on wholesalers that sold cigarettes to tribal reservations, including requirements that the wholesalers maintain state licenses, keep records of sales to reservations, and make monthly reports on the sales).[3] The Ninth Circuit then applied this precedent when it held that intertribal cigarette sales are subject to California's licensing, reporting, and recordkeeping requirements. *Big Sandy*, 1 F.4th at 730-32. *Big Sandy* makes clear that the customers are in violation of California law for failing to be licensed.

Twenty-Nine Palms argues that *Moe* held that California cannot "require Indian tribes operating on their own reservations to obtain a state license." Pls.' Opp'n, at 4. But that is not an accurate reading of the case. *Moe* did not hold that states were barred from imposing licensing requirements on tribal retailers operating on their own reservations; it instead simply invalidated a specific penalty—a vendor license fee—as a preempted tax upon sales from tribes to their own members. *See* 425 U.S. at 480-82 & n.17 (analyzing the license fee as one of several "taxing measures" that Montana

---

[3] The Supreme Court further relied upon this precedent in *Rice v. Rehner*, a case that upheld liquor licensing as applied to on-reservation sales. 463 U.S. 713, 720 (1983) ("To the extent that Rehner seeks to sell to non-Indians, or to Indians who are not members of the tribe with jurisdiction over the reservation on which the sale occurred, the decisions of this Court have already foreclosed Rehner's argument that the licensing requirements infringe upon tribal sovereignty.").

wished to impose, and affirming the Court's prior holding that state governments lack the authority to tax on-reservation sales to a tribe's members).  That issue of state taxation is not posed by California's statutory scheme, since California allows tribal retailers to waive the licensing fee.  *See* California Department of Tax and Fee Administration, Other Taxes and Fees and Native Americans, https://perma.cc/9VNZ-BTWE (last visited Aug. 23, 2024).  The licensing and distribution requirements at issue are not taxes levied against on-reservation sales to tribal members; they are measures designed to enforce taxes levied against sales to non-tribal members.  Such measures were upheld by the Supreme Court in *Colville* and *Milhelm*, and the specific licensing regime at issue was upheld by the Ninth Circuit in *Big Sandy*.

Twenty-Nine Palms attempts to distinguish *Big Sandy* by claiming that the holding only extends to a wholesaler selling cigarettes to tribal retailers—and no to the on-reservation sales of the retailers themselves.  But the distinction between wholesalers and retailers makes no difference.  The Ninth Circuit specifically held that California's licensing and distribution requirements constituted "minimal burdens" that could be applied to tribal businesses in an effort to assist with collecting a valid cigarette tax on non-tribal members.  *Big Sandy*, 1 F.4th at 731.  That reasoning was not improvisational; it drew from Supreme Court precedent that made clear that a state could impose such requirements on all levels of the supply chain.  This precedent *began* with upholding tax and recordkeeping requirements applied to retailers operating on their own reservations in *Colville*.  The Supreme Court then extended this principle to distributors in *Milhelm*, in a holding that explicitly rejected the kind of distinction between retailers and distributors that Twenty-Nine Palms attempts to raise now.  *See* 512 U.S. at 74 ("It would be anomalous to hold that a State could impose tax collection and bookkeeping burdens on reservation retailers who are themselves enrolled tribal members, including stores operated by the tribes themselves, but that similar burdens could not be imposed on wholesalers, who often

(as in this case) are not.").  Indeed, multiple references in *Big Sandy* show that the Ninth Circuit understood that the regulatory requirements applied to both a distributor and its retailers.  *See* 1 F.4th at 732 (highlighting that even "if [the Corporation] does not owe the tax, *or [the Corporation's] customers do not owe the tax*, the State's licensing and reporting requirements allow [the State] to see if someone owes the tax" (emphasis added) (citation omitted)); *id.* ("[A]lthough the Corporation's reports would not list the identity of its customers, *each of its customers' filings would list the Corporation as the seller . . . .*" (emphasis added) (citation omitted)).

And even if this precedent were wholly disregarded, and California was prohibited from requiring the retailers to have a license, the retailers would still be violating the Licensing Act because they are purchasing cigarettes from Twenty-Nine Palms, an unlicensed entity.  *See Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1177 (10th Cir. 2012) ("Even if we were to question such a licensing requirement, MCN provides no authority for why the State cannot require it to purchase cigarettes and other tobacco products from an OTC-licensed wholesaler.  The precedent on the question goes the other way.").  This point is not an "improper post-hoc legal justification," as Twenty-Nine Palms contends.  ATF repeatedly made clear that Twenty-Nine Palms' own lack of a license was also a violation of California law.  *See* AR-316 ("Anyone who sells cigarettes as a distributor must have a distributor's license. . . . 29 Palms and its customers do not have these requisite licenses."); AR-317-18 (detailing California's licensing regime—including the requirement that "manufacturers, importers, wholesalers, distributors, and retailers must obtain licenses" and "may not sell *or purchase* cigarettes from unlicensed entities"—and that "29 Palms' customers are generally not complying with any of the aforementioned requirements" (emphasis added)).

Since Twenty-Nine Palms' customers are not lawfully operating as retailers, the Tribe's cigarette sales are subject to the PACT Act's delivery sales provision.

## II.    Twenty-Nine Palms Violates the PACT Act

In a notable omission, Twenty-Nine Palms does not appear to respond to one of the central points in this case: its own violation of California law, since it is a distributor engaged in intertribal cigarette sales while failing to comply with California's licensing and distribution requirements.  Thus, Twenty-Nine Palms appears to not contest that its *own* sales are in violation of California law under *Big Sandy*, and it rests its entire case on (1) the theory that the PACT Act is inapplicable because its *customers* are purportedly complying with California law, as addressed above, and (2) a series of technical arguments about statutory procedure and factors considered, as addressed below.  Since Twenty-Nine Palms' cigarette sales are subject to the PACT Act's delivery sales provision—which requires compliance with applicable state law—the Tribe's uncontested violation of California law is a violation of the PACT Act as well, and Twenty-Nine Palms belongs on the non-compliant list.

## III.    ATF's Decision Was Not Arbitrary and Capricious

Under the APA, "[a] court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision."  *FCC v. Prometheus Radio Project*, 592 U.S 414, 423 (2021).  ATF's decision easily clears this low bar.  ATF reasonably evaluated the relevant issues, which involved (1) the PACT Act's applicability to Twenty-Nine Palms as a "delivery seller," (2) the governing California law that the PACT Act incorporated against delivery sellers like Twenty-Nine Palms, and (3) the Tribe's failure to comply with California law.  *See* AR-311-24.  That decision flowed from binding precedent, and it was explained at length in its fourteen-page decision letter.  It was not arbitrary and capricious.  *See* Defs' Mot. at 20-22.

Twenty-Nine Palms contends that two emails between ATF and NWS, the Tribe's business partner, indicate that ATF changed its position regarding the legality of the Tribe's cigarette sales.  But those emails show otherwise.  The March 31, 2023

email expressed ATF's view that "we believe these shipments [to Twenty-Nine Palms] may violate the [Contraband Cigarette Trafficking Act]," though the agency noted that it did "not have an open investigation into these shipments other than the review of the NWS records and the violations associated with the maintenance of these records." AR-355.  The April 7, 2023 email similarly stated that "the potential issues between NWS and California are not subject to a current ATF investigation." AR-360.  In other words, ATF expressed its belief that Twenty-Nine Palms' sales violated federal law, but it had not yet undertaken an investigation by April 2023. Upon subsequent investigation, ATF's initial belief was confirmed.  That is not a change in position.  Nor is this kind of development in an enforcement action analogous to the kind of change in a rulemaking context that would necessitate further explanation. *Cf. Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983) ("[A]n agency changing its course by *rescinding a rule* is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance." (emphasis added)).

Twenty-Nine Palms further contends that ATF failed to consider four factors, but none of the four are relevant.  First, Twenty-Nine Palms argues that ATF should have considered "whether the application of California law as adopted in the Decision allows for tribes to conduct on-reservation business with their members free of state taxation and regulation." Pls.' Opp'n at 14.  This argument is based upon Twenty-Nine Palms' objection to California's regulatory regime extending to tribal sellers that purport to engage only in sales to their members.  But that objection is not with ATF; it is with the Supreme Court and the Ninth Circuit, which have made clear that regulatory requirements designed to collect taxes on non-tribal members extend to sales that are not taxable. *See Colville*, 447 U.S. at 159-60 (upholding state recordkeeping requirements as applied to nontaxable on-reservation sales from a tribe to its own members); *Milhelm*, 512 U.S. at 76 (upholding state requirement that

"wholesalers maintain detailed records on tax-exempt transactions"); *Big Sandy*, 1 F.4th at 731 (holding that California's licensing, recordkeeping, and reporting requirements "may be imposed on Indian businesses that, like the Corporation, purport to engage only in tax-exempt transactions"). As the Ninth Circuit explained, even "if [a distributor] does not owe the tax, or [the distributor's] customers do not owe the tax, the State's licensing and reporting requirements allow [California] to see if someone owes the tax, and then, if they do, to collect it." *Id.* at 732 (citation omitted). ATF's application of binding precedent was not arbitrary and capricious, nor was any further analysis required.

Second, Twenty-Nine Palms argues that ATF should have analyzed whether the tax or licensing laws were preempted as applied to the Tribe's customers, under the balancing test provided in *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136 (1980). Under *Bracker*, "State jurisdiction is preempted by the operation of federal law if it interferes or is incompatible with federal and tribal interests reflected in federal law, unless the State interests at stake are sufficient to justify the assertion of State authority." *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 334 (1983). Here, Twenty-Nine Palms is effectively arguing that ATF should have considered whether there is a tribal or federal interest in permitting the tribal retailers to sell untaxed cigarettes to non-tribal members, and how that interest compares California's interest in collecting the tax. But there was no need to undertake such an analysis, as it has already been conducted by the Supreme Court. *See Colville*, 447 U.S. at 155 (holding that "the value marketed by the smoke shops to persons coming from the outside is not generated by activities in which the tribes have a significant interest," and that "principles of federal Indian law, whether stated in terms of pre-emption, tribal self-government, or otherwise" did not "authorize Indian tribes thus to market an exemption from state taxation to persons who would normally do their business elsewhere"); *accord Milhem*, 512 U.S. at 73. Nor was there a need to reevaluate the

10

permissibility of a tax that the Supreme Court upheld in *Chemehuevi* or the regulatory requirements that the Ninth Circuit upheld as "minimal burdens" in *Big Sandy*.

Third, Twenty-Nine Palms contends that ATF should have considered whether the Licensing Act exempts on-reservation retailers. That argument is based on language in the Licensing Act that provides that the statute's restrictions do not apply to those who are "exempt from regulation under the United States Constitution, the laws of the United States, or the California Constitution." Cal. Bus. & Prof. Code § 22971.4. But there was no need to consider this exemption, as binding precedent makes clear that on-reservation retailers are *not* categorically exempt from federal or state regulation. *See, e.g., Colville*, 447 U.S. at 155-60. Nor was there a need to consider a California legislative Bill Analysis that provides: "The author indicates that distributors in the state may only sell products to licensed persons. Retailers on Indian Reservations . . . are not subject to the licensing requirements of the Cigarette and Tobacco Licensing Act of 2003." California Bill Analysis, A.B. 3092 Sen., at 3 (Aug. 23, 2004). This legislative history appears to reflect a single legislator's views. It does not displace the relevant statutory text—which includes no mention of tribal retailers—nor does it override the precedent cited above. And even if ATF had considered this exemption *and* decided it was applicable to Twenty-Nine Palms' customers, it would have made no difference to ATF's decision. Twenty-Nine Palms' customers' violations of the Tax Law are sufficient to find that they are not lawfully operating retailers, and that the PACT Act's delivery sales provision thereby applies to Twenty-Nine Palms' cigarette sales with or without the Licensing Act.

Fourth, Twenty-Nine Palms argues that ATF failed to consider the Tribe's government-to-government consultations with California, implying that the California Department of Justice agreed with the Tribe's interpretation of state law. That is not the case. To start, the California Department of Justice specifically highlighted the precise violations of state law at issue here in its own notice to Twenty-Nine Palms in

February 2022.  *See* AR-093 (noting California's understanding that Twenty-Nine Palms was "engaged in the sale and distribution of cigarettes or other tobacco products to unlicensed persons operating within the State of California," and that California law included requirements such as "valid stamping, collection, and remittance of State excise taxes").  ATF and the California Department of Justice subsequently conferred on several occasions regarding these violations.  *See, e.g.*, AR-277-81; AR-309.  California never suggested any disagreement with ATF's position in any of these communications.  That accords with the position that the State has taken in *California v. Azuma Corp.*, in which California is attempting to enforce the PACT Act against a manufacturer based on virtually identical legal reasoning that ATF has adopted here.  *See* 2023 WL 5835794, at *3-4 (E.D. Cal. Sept. 8, 2023).

**IV.    ATF Complied with Statutory Procedures**

Twenty-Nine Palms argues that ATF failed to follow the PACT Act's procedural requirements regarding (1) the notice provided to the Tribe regarding its non-compliance with the statute, and (2) the investigation that ATF undertook in response to the Tribe's challenge.  Neither contention is correct.

*Notice*.  Before placing a delivery seller on the PACT Act's non-compliant list, the statute requires that ATF must "cite the relevant provisions of *this chapter*"—*i.e.*, the PACT Act itself—as well as "the specific reasons for which the delivery seller is being placed on the list."  15 U.S.C. § 376a(e)(1)(E) (emphasis added).  ATF complied with this requirement in its June 2023 notice letter.  The letter provided both the relevant provisions of the PACT Act and why Twenty-Nine Palms was violating them.  *See* AR-282, 284 (noting that Twenty-Nine Palms was in violation of 15 U.S.C. § 376a(a)(3) and (4) for failure to comply with applicable legal requirements, including compliance with "California's non-discriminatory licensing and excise tax statutes").  There is no requirement in the statutory text that requires ATF to provide the individual subsections of California's licensing

1  and excise tax statutes that Twenty-Nine Palms was violating.

2      *Investigation*. ATF also complied with the PACT Act's requirement

3  "investigate each challenge" to prospective placement on the non-compliant list

4  "by contacting the relevant Federal, State, tribal, and local law enforcement

5  officials, and provide the specific findings and results of the investigation to the

6  delivery seller not later than 30 days after the date on which the challenge is

7  made." 15 U.S.C. § 376a(e)(1)(E)(iv). After receiving Twenty-Nine Palms'

8  challenge, ATF contacted the California Department of Justice, which confirmed

9  that Twenty-Nine Palms' customers were not licensed or collecting taxes on sales

10 to non-tribal members. *See* AR-309-10. No further investigation was necessary, in

11 light of clear violations of California law. It makes no difference that ATF sent its

12 decision letter prior to hearing back from California on possible "paths [] to

13 legality." AR-330. What mattered was that Twenty-Nine Palms' sales were not

14 legal, not how they could hypothetically become legal someday.

15     And even if Twenty-Nine Palms' arguments were accepted, any flaws in

16 ATF's notice or investigation would be harmless error. *See* 5 U.S.C. § 706 (in

17 reviewing administrative record under APA, "due account shall be taken of the rule

18 of prejudicial error"); *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d

19 956, 968 (9th Cir. 2015) (en banc) ("[N]ot every violation of the APA invalidates

20 an agency action; rather, it is the burden of the opponent of the action to

21 demonstrate that an error is prejudicial."). Application of the harmless error

22 standard depends on the circumstances of the case, such as the statutory provision

23 at issue. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). Here, the

24 provision providing the PACT Act's procedural requirements is entitled

25 "[a]ccuracy and completeness of list of noncomplying delivery sellers." 15 U.S.C.

26 § 376a(e)(1)(E). In other words, this provision is about ensuring that ATF has

27 correctly determined the facts before it places a seller on the non-compliant list.

28

But Twenty-Nine Palms is not contesting the facts; it is contesting the law. In this circumstance, none of the alleged procedural errors would have prejudiced Twenty-Nine Palms, as the Tribe's legal arguments are unavailing.

**V.    Twenty-Nine Palms' Motion to Strike Should Be Denied**

Twenty-Nine Palms' Motion to Strike is baseless. The Motion attempts to exclude three documents from the Amended Administrative Record: (1) an email from October 24, 2023 from the California Department of Justice to ATF; (2) an email exchange from November 2023 between ATF and Twenty-Nine Palms regarding settlement negotiations, and (3) a finalized settlement agreement between ATF and NWS that was executed on January 30, 2024. The Motion is based upon the premise that the final agency action in this case took place on October 19, 2023—the date of ATF's letter notifying Twenty-Nine Palms that it would be placed on the non-compliant list the following month—and that all material after that date should be excluded from the record. That premise is flawed.

An agency action is final if two conditions are met: (1) "the action must mark the consummation of the agency's decision-making process," in that it is not "merely tentative or interlocutory," and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *San Francisco Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 577 (9th Cir. 2019) (citation omitted). Here, ATF's decision was final on January 30, 2024, when the agency entered into a settlement with Twenty-Nine Palms' business partner that provided that the Tribe had to seek judicial relief prior to February 16, 2024 to avoid being placed on the PACT Act's non-compliant list. *See* AR-347-48. Prior to January 2024, ATF's decision-making process was still ongoing, as the relevant documents confirm. *See* AR-344 (stating ATF's position that "*absent a settlement*, 29 Palms will be on the Non-Compliance list effective 11/20" (emphasis added)). And legal consequences only flowed from the finalized settlement, which provided a timeline by

14

which Twenty-Nine Palms had to challenge its prospective placement on the list.

It is irrelevant that ATF stated in its October 2023 decision letter that it would be placing Twenty-Nine Palms on the non-compliant list the next month. ATF was not committed to taking such action, and it did not do so: Twenty-Nine Palms is still not included on the list. Nor was this simply a matter of timing. Since discussions between the parties were still ongoing, Twenty-Nine Palms remained free during this period to change ATF's mind by providing new information. For instance, if Twenty-Nine Palms had decided to become a licensed distributor after receiving ATF's letter, the agency would have undoubtedly taken this into account.

Disregarding these points, Twenty-Nine Palms' Motion appears to be animated by a desire to strike a single email from the record. That email provides the most emphatic demonstration of the California Department of Justice's disagreement with the Tribe's understanding of California law. *See* AR-327 (featuring the California Department of Justice's observation that "Twenty-Nine Palms and its customers possess none of the required licenses or permits to engage in sales to non-members of their respective Indian tribes, and thus routinely possess, distribute, transport, and sell 'contraband' cigarettes under state law"). But motions practice over the administrative record is not the means to resolve this issue, which goes to the merits of Twenty-Nine Palms' argument about California's position—not to the material that was before the agency when its action was finalized. And even if Twenty-Nine Palms' Motion were granted, it would have no impact on the merits of this case. Even leaving aside the email that makes California's position explicit, the State's position was implicit in the correspondence between ATF and California mentioned above.

Twenty-Nine Palms' Motion to Strike should be denied.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion for Summary Judgment and deny Plaintiff's Motion to Strike.

15

Dated:  August 23, 2024            Respectfully submitted,

                                   BRIAN M. BOYNTON
                                   Principal Deputy Assistant Attorney General

                                   BRIGHAM J. BOWEN
                                   Assistant Branch Director

                                   */s/ Cameron Silverberg*
                                   CAMERON SILVERBERG
                                   Trial Attorney (D.C. Bar No. 1780628)
                                   United States Department of Justice
                                   Civil Division, Federal Programs Branch
                                   Tel.:  (202) 353-9265
                                   Email: Cameron.D.Silverberg@usdoj.gov

                                   JEFFREY A. COHEN
                                   ANDREW BLACKER
                                   Office of Chief Counsel
                                   Bureau of Alcohol, Tobacco,
                                   Firearms and Explosives

                                   *Counsel for Defendants*