Teri T. Pham, Esq. (SBN 193383)
ENENSTEIN PHAM GLASS & RABBAT LLP
3200 Bristol Street, Suite 500
Costa Mesa, CA 92626
Phone: 714-292-0262
Email: tpham@epgrlawyers.com

Jesse D. Heibel (NM 161922) (pro hac vice)
BARNHOUSE KEEGAN SOLIMON & WEST LLP
7424 4th Street NW
Los Ranchos de Albuquerque, NM 87107
Phone: (505) 842-6123
Email: jheibel@indiancountrylaw.com
*Counsel for Plaintiff Twenty-Nine Palms Band of Mission Indians*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| TWENTY-NINE PALMS BAND OF MISSION INDIANS, a Federally Recognized Indian Tribe, dba TWENTY-NINE PALMS DISTRIBUTION,<br><br>Plaintiff,<br><br>vs.<br><br>MERRICK GARLAND, Attorney General of the United States, in his official capacity; UNITED STATES DEPARTMENT OF JUSTICE; STEVEN DETTELBACH, Director U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives, in his official capacity; UNITED STATES BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,<br><br>Defendants. | Case No.: 5:24-cv-00379-SSS-SP<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO STRIKE EXTRA-RECORD MATERIAL**<br><br>Date: September 20, 2024<br>Time: 2:00 p.m.<br>Place: Videoconference<br>Judge: Hon. Sunshine S. Sykes |

Plaintiff Twenty-Nine Palms Band of Mission Indians ("Twenty-Nine Palms" or "Tribe") respectfully submits this reply in support of its motion to strike the extra-record documents included in Defendants' Amended Administrative Record.

## INTRODUCTION

Defendants do not present an argument that any of the limited exceptions to the record rule apply to the three documents that post-date ATF's October 19, 2023, Decision Letter. Instead, they argue ATF's Decision Letter, which affirmatively found "hundreds of past and present violations of the PACT" and stated the agency was placing the Tribe on the PACT Act Non-compliant list "effective November 20, 2023[,]" was not the final agency action necessary to establish jurisdiction under Section 704 of the Administrative Procedure Act ("APA"). AR-324. Defendants claim the actual final agency action was ATF's January 30, 2024, settlement agreement with Native Wholesale Supply Company ("NWS"), a separate entity which is not a party to this lawsuit, and all documents before ATF at that time are properly considered part of the administrative record.

Defendants' argument misapplies two separate concepts under the APA by confusing the finality standard for establishing jurisdiction under Section 704 with Section 706's "record rule" concerning the standard for compiling the administrative record. Because the record rule scrutinizes what materials were before the agency at the time the challenged decision was made, not when an agency's decision became final for jurisdictional purposes, Defendants' argument must be rejected. Moreover, the plain language of the Decision Letter establishes it as the final agency action establishing jurisdiction under the APA and the only relevant decision for purposes of compiling the administrative record.

## ARGUMENT

**I.  The Finality of an Agency's Action Is Irrelevant When Applying the Record Rule to the Contents of an Administrative Record.**

Section 704 of the APA is jurisdictional as it limits judicial review under the

statute to only those agency actions that are reviewable by statute or "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Put another way, if there is no final agency action - whether by rulemaking, administrative order, or otherwise – federal courts do not have jurisdiction to hear a claim under the APA. See, *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1104 (9th Cir. 2007) (federal courts lack subject matter jurisdiction to hear an APA claim if there is no final agency action).

Separate and distinct from Section 704's jurisdictional limitation is the standard by which agencies compile the "whole record" as required by Section 706. As set out more fully in the Tribe's Motion, controlling case law establishes the whole records consists of what was before the agency when it made the challenged decision, not when the decision could be considered "final" for purposes of establishing jurisdiction. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) ("[R]eview is to be based on the full administrative record that was before the [agency] at the time [it] made [its] decision.") (emphasis added); *Asarco, Inc. v. EPA*, 616 F.2d 1153, 1159 (9th Cir. 1980) ("Predominant is the rule that agency action must be examined by scrutinizing the administrative record at the time the agency made its decision.") (emphasis added); *CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014) ("[A] reviewing court should have before it neither more nor less information than did the agency when it made its decision.") (citation and quotation omitted) (emphasis added).

Defendants do not contest that this case challenges ATF's October 19, 2023, Decision Letter and that the decision, as evidenced by the Amended Administrative Record, has not been changed, altered, or revisited in any way since it was authored by ATF. Because it is undisputed ATF made the challenged decision on October 19, 2023, the record rule requires all documents in the Amended Administrative Record that were put before or authored by the agency after October 19, 2023, to be struck, regardless of when the decision could be considered final for jurisdictional purposes.

## II. ATF'S October 19, 2023, Decision Letter Was the Final Agency Action.

Even if the Court were to accept Defendants' argument that the finality requirement of Section 704 governs the compilation of the "whole record" required by Section 706, the lack of documents addressing the merits of ATF's decision outside of the Decision Letter combined with the language of the Letter itself establish it as the final agency action establishing jurisdiction under the APA. In *Bennett v. Spear*, 520 U.S. 154 (1997), the Supreme Court distilled two conditions that must be satisfied for agency action to be "final" under Section 704. "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id*. at 177-178. In analyzing whether an agency's action is final under this two-part analysis, courts are required to interpreting the requirements "in a pragmatic and flexible manner." *Or. Nat. Res. Council v. Harrell*, 52 F.3d 1499, 1504 (9th Cir.1995) (quotation omitted).

### A. The Decision Letter Consummated ATF's Decision-Making Process.

ATF's Decision Letter was the third and final correspondence between ATF and the Tribe and marked the end of its investigative process as mandated by the PACT Act under 15 U.S.C. § 376a(e)(1)(E). On June 5, 2023, ATF sent a letter to the Tribe ("Notice Letter") which alleged violations of the PACT Act and requested the Tribe explain why it should not be placed on the Non-Complaint List. AR-282-286. The Tribe issued a response which challenged ATF's allegations and requested an opportunity to further respond upon notification of what specific California law ATF was alleging the Tribe to have violated. AR-288-305. ATF refused that request and issued the Decision Letter on October 19, 2023, which rejected the Tribe's arguments, concluded the Tribe had violated the PACT Act hundreds of times, and affirmatively stated the Tribe would be on the Non-Compliant List "effective November 20, 2023." AR-324.

Despite this unambiguous language, Defendants now represent to the Court that ATF was not committed to taking such action and that ATF's decision-making process was still ongoing until January 2024. In support, Defendants cite a single email from November 2, 2023, in which ATF's legal counsel reiterated the closing line of the Decision Letter stating that without an agreement, ATF would place the Tribe on the Non-Compliant List as of November 20, 2023. But as the full contents of the email demonstrates, the discussion between the Parties in November of 2023 was focused on finding a mutually agreeable procedure through which the Tribe would initiate litigation challenging ATF's decision. The discussion did not address the factual accuracy or legal merits of the Decision Letter. Nothing in the November email or otherwise in the Amended Administrative Record indicates what Defendants now argue, that ATF was considering the merits of the Decision Letter up until it executed a settlement agreement with NWS.

Defendants also argue that prior to ATF's settlement agreement with NWS, the Tribe had the ability to present additional information which may have influenced ATF's decision. However, the Amended Administrative Record contradicts this post hoc rationalization. The Tribe was never informed, in the Decision Letter or otherwise, of any possible reconsideration. As such, the Decision Letter constitutes the final agency action under Section 704. See, *Cf. Queen in Right of Ontario v. EPA*, 912 F.2d 1525, 1532 (D.C. Cir. 1990) (agency action was final because it was "unambiguous and devoid of any suggestion that it might be subject to subsequent revision"); *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 436-37 (D.C. Cir. 1986) (same). Even if the Tribe was informed ATF may have reconsidered the Decision Letter, the Supreme Court has rejected the theory that the possibility of reconsideration renders an agency decision nonfinal for purposes of Section 704. *Sackett v. Env't Prot. Agency*, 566 U.S. 120, 127 (2012) ("[T]he mere possibility that an agency might reconsider in light of informal discussion and invited contentions of inaccuracy does not suffice to make an otherwise final agency action nonfinal.")

### B. ATF's Decision Letter Fixed the Legal Relationship Between Federally Recognized Indian Tribes and California.

The second *Bennett* prong may be satisfied by "several avenues," including where administrative orders "impose an obligation, deny a right, or fix *some* legal relationship[.]" *Castaneda v. Garland*, 562 F. Supp. 3d 545, 557, (C.D. Cal. 2021) (citing *Or. Nat. Desert Ass'n v. United States Forest Service*, 465 F.3d 977, 986-87 (9th Cir. 2006) (quotation marks and citations omitted) (emphasis in original). Courts, including the Ninth Circuit and Supreme Court, have applied this standard broadly in finding agency decisions which apply a specific statutory scheme or subject a party to civil and criminal penalties satisfy the second prong.

For example, in *Navajo Nation v. United States Dep't Interior*, the Ninth Circuit found that the National Park Service's decision to apply the Native American Graves Protection and Repatriation Act ("NAGPRA") to human remains and funerary objects taken from Canyon de Chelly constituted a final agency action under the APA. 819 F.3d 1084 (9th Cir. 2016). The Court found the second *Bennet* prong was satisfied because the decision to apply NAGPRA was the "consummation of the Park Service's decisionmaking process regarding which statutory scheme would apply…and significant legal consequences flow from the decision." *Id*. at, 1091.

The same rational applies here, where ATF's Decision Letter represents the consummation of the agency's decisionmaking process regarding the application of California law *vis-à-vis* tribal law to the on-reservation conduct of federally recognized Indian tribes. As such, the Decision Letter definitively addresses the "threshold question of [what] statutory scheme applies [,]" establishing finality for purposes of Section 704. *Navajo Nation,* 819 F.3d at 1094.

Similarly, the courts have repeatedly found when agency action subjects a party to criminal or civil penalties, the action is properly considered final. In *United States Army Corps of Eng'rs v. Hawkes Co., Inc*, the Supreme Court held a jurisdictional determination regarding what constituted waters subject to the Clean

6

1  Water Act were final agency actions subject to APA review. 578 U.S. 590 (2016).
2  The Court explained that even though the jurisdictional decision did not authorize
3  enforcement actions itself, the decision's practical consequence of establishing
4  certain conduct as subject to criminal and civil penalties established a legal
5  relationship sufficient to render it final. *Id*. at 600. See also, *San Francisco Herring*
6  *Ass'n v. Dep't of the Interior*, 946 F.3d 564, 580 (9th Cir. 2019) ("[E]xposure to the
7  risks of significant criminal and civil penalties satisfies *Bennet's* second
8  requirement.") (citation and quotation omitted).

9  There is no dispute that ATF's alleged violations of the PACT Act carry with
10 it not only substantial civil penalties for the Tribe, but both civil and criminal
11 penalties for common or contract carries who do business with the Tribe. For
12 example, 15 U.S.C. § 377(b)(1)(A) establishes civil penalties of $5,000 for the first,
13 and $10,000 for each subsequent violation of the Act in addition to penalty of 2
14 percent of the gross sales of all cigarettes sold during the preceding year. Section
15 337(b)(2) authorizes equitable relief in the form of unpaid taxes in addition to any
16 civil or criminal penalty authorized by Section 377(b)(1). Because ATF's Decision
17 Letter subjects the Tribe and those who do business with it to substantial civil and
18 criminal penalties, it was the final agency action under section 704 of the APA.

19 Defendants' claim to the contrary is based on the assertion that legal
20 consequences only attached to Decision Letter upon the execution of a settlement
21 agreement between ATF and NWS. For the reasons set forth above, this is untrue,
22 particularly when the Tribe is not a party to the settlement and Defendants present no
23 argument as to what legal relationship arose from the settlement which was not
24 established in the Decision Letter. As demonstrated by the November 2, 2023, email
25 cited by Defendants and the rest of the documents in the Amended Administrative
26 Record, the discussions between ATF and the Tribe subsequent to the Decision Letter
27 were solely aimed at establishing an efficient, mutually agreeable process for
28 initiating litigation through which the Tribe would challenge the Decision Letter.

## CONCLUSION

For the foregoing reasons, Twenty-Nine Palms respectfully requests the Court grant its Motion to Strike.

Dated: September 6, 2024         Respectfully Submitted,

/s/ *Jesse D. Heibel*
Jesse D. Heibel
BARNHOUSE KEEGAN
SOLIMON & WEST LLP
7424 4th Street NW
Los Ranchos de Albuquerque, NM  87107
Phone: (505) 842-6123
Email:  jheibel@indiancountrylaw.com

Teri T. Pham, Esq.
ENENSTEIN PHAM
GLASS & RABBAT LLP
3200 Bristol Street, Suite 500
Costa Mesa, CA 92626
Phone: 714-292-0262
Email: tpham@epgrlawyers.com

*Counsel for Plaintiff Twenty-Nine Palms Band of Mission Indians*

CERTIFICATION

The undersigned, counsel of record for Defendants, certifies that this brief contains 2,042 words, which complies with the word limit of Local Rule 11-6.1.

/s/ *Jesse D. Heibel*
Jesse D. Heibel (*pro hac vice*)
BARNHOUSE KEEGAN SOLIMON & WEST LLP
7424 4th Street NW
Los Ranchos de Albuquerque, NM  87107
Phone: (505) 842-6123
Email: jheibel@indiancountrylaw.com
*Counsel for Plaintiff Twenty-Nine Palms Band of Mission Indians*